# EXHIBIT A



February 3, 2023

Transcontinental Gas Pipe Line Company, LLC
c/o Joseph Dean
2800 Post Oak Blvd
Level 11
Houston, TX 77056

Re:    Erosion and Sediment Control (E&S) Permit Issuance
       Regional Energy Access Expansion Project
       E&S Permit No. ESG830021002-00
       APS No. 1036787; AUTH ID No. 1350583
       Buck Township, Bear Creek Township, Plains Township, Jenkins Township, Kingston
       Township, Dallas Township, Wyoming Borough, West Wyoming Borough, &
       Laflin Borough, Luzerne County
       Ross Township, Chestnuthill Township, & Tunkhannock Township, Monroe County
       Lower Mount Bethel Township, Northampton County
       Lower Makefield Township, Bucks County
       East Whiteland Township, Chester County

Dear Mr. Dean:

Under the authority of Pennsylvania's Clean Streams Law, the Department of Environmental
Protection (DEP) approves your application and issues the attached Erosion and Sediment Control
Permit for Earth Disturbance Associated with Oil and Gas Exploration, Production, Processing, or
Treatment Operations or Transmission Facilities ("E&S Permit"). The latest versions of the permit
application and all supporting documents, including the Erosion and Sediment Control (E&S) Plan
and Post-Construction Stormwater Management (PCSM) Plan, are incorporated into this approval,
including the following plan drawings:

- The E&S Plan drawings for:

    o Soil Erosion & Sediment Control and Site Restoration Plan Regional
      Energy Access Expansion Project Regional Energy Lateral dated March 31,
      2021 and last revised July 8, 2022;
    o Soil Erosion & Sediment Control and Site Restoration Plan Regional
      Energy Access Expansion Project Effort Loop dated March 31, 2021 and
      last revised July 8, 2022;
    o Soil Erosion & Sediment Control Plan Regional Energy Access Expansion
      Project Compressor Station 200 dated March 31, 2021 and last revised
      March 1, 2022;

Transcontinental Gas Pipe       - 2 -       February 3, 2023
Line Company, LLC

- o Soil Erosion & Sediment Control Plan Regional Energy Access Expansion Project Compressor Station 515 dated March 31, 2021 and last revised March 1, 2022;
- o Soil Erosion & Sediment Control and Site Restoration Plan Regional Energy Access Expansion Project Delaware River Regulator dated March 32, 2021;
- o Soil Erosion & Sediment Control and Site Restoration Plan Regional Energy Access Expansion Project Mainline A Regulator dated March 31, 2021 and last revised March 1, 2022;

- The PCSM Plan drawings for:

- o Post Construction Stormwater Management Plan, MLV-515RA20 Main Line Valve Site Plan, dated March 31, 2021 and last revised July 8, 2022;
- o Post Construction Stormwater Management Plan, MLV-515RA30 Wyoming Avenue Main Line Valve Site Plan, dated March 31, 2021 and last revised March 1, 2022;
- o Post Construction Stormwater Management Plan, Carverton Tie-In Site Plan, dated March 31, 2021 and last revised March 1, 2022;
- o Post Construction Stormwater Management Plan, Hildebrandt Tie-In/MLV-515RA40 and Lower Demunds REL Tie-In Site Plan, dated March 31, 2021 and last revised March 1, 2022;
- o Post Construction Stormwater Management Plan,S5-T5/S6-T6 and S4A-T5/S4-T5 Stream Stabilization, dated March 31, 2021 and last revised March 1, 2022;
- o Post Construction Stormwater Management Plan, MLV-505LD86 Sugar Hollow Mainline Valve Yard, dated March 31, 2021 and last revised July 8, 2022;
- o Post Construction Stormwater Management Plan, Regional Energy Access Expansion Project Compressor Station 200, dated March 31, 2021 and last revised March 1, 2022;
- o Post Construction Stormwater Management Plan, Regional Energy Access Expansion Project Compressor Station 515, dated March 31, 2021 and last revised March 1, 2022;

Your E&S Permit, which has been assigned E&S Permit No. ESG830021002-00, is effective on **February 3, 2023** and will expire on **February 2, 2028**. If stormwater discharges associated with earth disturbance activities are expected to continue beyond the expiration date of the E&S Permit, you must apply to renew your permit at least 180 days prior to the expiration date, unless otherwise approved by DEP.

Please review the enclosed E&S Permit and the referenced online attachments carefully and contact this office if you have any questions. Please pay particular attention to the following requirements of the permit:

Transcontinental Gas Pipe                    - 3 -                    February 3, 2023
Line Company, LLC

- Operators who are not the permittee shall be co-permittees.  Following approval of coverage, the permittee shall require any operator, as defined in this permit, that was not identified on the application for permit coverage to complete and sign the Co-Permittee Acknowledgement for Chapter 102 Permits form (3800-FM-BCW0271a) prior to commencing earth disturbance activities covered by this permit.  The permittee shall complete and sign the Co-Permittee Acknowledgement form, retain the form for a period no less than three (3) years, and submit the form to the Department or conservation district prior to the operator engaging in earth disturbance activities.

- For earth disturbance activities authorized by this permit, at least one pre-construction meeting is required.  The permittee shall contact DEP to schedule the pre-construction meeting and provide at least 7 calendar day notice of the pre-construction meeting to all invited attendees by telephone, certified mail or electronic means, unless otherwise approved by the Department in writing.  The notification must include the project type, target date for earth disturbance, permit number, site name, Township, County and point of contact for the operator.  Permittees, co- permittees, operators, and licensed professionals, or designees responsible for earth disturbance activity, including implementation of E&S, PCSM and PPC Plans and critical stages of implementation of the approved PCSM Plan, shall attend the pre-construction meeting(s).  Permittees, co-permittees, operators and licensed professionals are responsible for ensuring that all activities on the site comply with the requirements of the permit.

- The permittee shall visually inspect the project site weekly, at a minimum, and within 24 hours each stormwater event throughout the duration of construction and until the receipt and acknowledgement of the NOT by the Department or conservation district.  The visual site inspections shall be completed by qualified personnel, trained and experienced in erosion and sediment control, to ascertain that E&S BMPs are properly constructed and maintained to effectively minimize pollution to waters of the Commonwealth.

- The permittee shall document all visual inspection on DEP's Chapter 102 Visual Site Inspection Report (3800-FM-BCW0271d).  All information on the Visual Site Inspection Report must be completed.  The report shall be completed by qualified personnel, trained and experienced in erosion and sediment control.  Visual inspection reports shall be submitted to the Department or conservation district upon request.  All visual inspection reports shall be made available on the project site for review by the Department or conservation district.

- For any property containing a PCSM BMP, the permittee shall record an instrument with the recorder of deeds which will assure disclosure of the PCSM/SR BMP and the related obligations in the ordinary course of a title search of the subject property.  The recorded instrument must identify the PCSM/SR BMP, provide for necessary access related to long-term operation and maintenance for PCSM/SR BMPs and provide notice that the responsibility for long-term operation and maintenance of the PCSM/SR BMP is a

Transcontinental Gas Pipe                    - 4 -                    February 3, 2023
Line Company, LLC

covenant that runs with the land that is binding upon and enforceable by subsequent grantees, and provide proof of filing with the NOT under 25 Pa. Code § 102.7(b)(5).

Unless a later date is approved by the Department in writing, the permittee shall record an instrument as required under 25 Pa. Code § 102.8(m)(2) within 45 calendar days from the date of issuance of this permit or authorization. Unless the Department authorizes a different procedure, the long-term operation and maintenance plan shall be recorded along with the instrument. Unless a later date in approved by the Department, in writing, the permittee shall provide the Department or conservation district with the date and place of recording along with a reference to the docket, deed book or other record, within 90 calendar days from the date of issuance of this permit or authorization.

- Upon permanent stabilization of earth disturbance activity under § 102.22(a)(2) (relating to permanent stabilization) and installation of BMPs in accordance with the authorized plan prepared and implemented in accordance with §§ 102.4 and 102.8 (related to erosion and sediment control requirements; and PCSM requirements), the permittee shall submit a NOT to the Department or conservation district.

  Until the permittee has received written authorization of the NOT, the permittee will remain responsible for compliance with the permit terms and conditions, including long term operation and maintenance of all PCSM BMPs on the project site in accordance with 25 Pa. Code § 102.8(m) (relating to PCSM long-term operation and maintenance requirements). The Department or conservation district will conduct a final inspection and approve or deny the NOT within 30 calendar days of receipt in accordance with 25 Pa. Code § 102.7(c) (relating to permit termination).

Any person aggrieved by this action may challenge it in an appropriate legal forum. The state and federal courts are currently split on whether the proper forum to challenge a Department permit, authorization or approval for a facility or activity subject to the Federal Natural Gas Act, 15 U.S.C. §§ 717 *et seq.*, is the United States Court of Appeals for the Third Circuit or the Pennsylvania Environmental Hearing Board. *See Delaware Riverkeeper Network v. Sec'y, Dep't of Envtl. Prot.*, 833 F.3d 360 (3d Cir. 2016); *Delaware Riverkeeper Network v. Sec'y, Dep't of Envtl. Prot.*, 903 F.3d 65 (3d Cir. 2018), *cert. denied,* 139 S. Ct. 1648, 203 L. Ed. 899 (2019) and *Cole v. Dep't of Envtl. Prot.,* 1577 C.D. 2019 WL 2420667 (Pa. Cmwlth Ct. June 15, 2021) (Pet. for Allowance of Appeal pending); *West Rockhill Twp. v. Dep't of Envtl. Prot.*, No. 1595 C.D. 2019 WL 2426014 (Pa. Cmwlth. June 15, 2021) (Pet. for Allowance of Appeal pending).

You should promptly consult with a lawyer on the steps to take if you wish to challenge this action and how to best protect your interests.

IMPORTANT LEGAL RIGHTS ARE AT STAKE. YOU SHOULD SHOW THIS DOCUMENT TO A LAWYER AT ONCE.

Transcontinental Gas Pipe       - 5 -       February 3, 2023
Line Company, LLC

If you have additional questions, please contact Michael Luciani by e-mail at mluciani@pa.gov or by telephone at 570-826-2597 and refer to Permit No. ESG830021002-00.

Sincerely,

Domenic Rocco, P.E.
Director
Regional Permit Coordination Office

Enclosures:      E&S Permit
               Visual Site Inspection Report Form and Instructions (online)
               Co-Permittee Acknowledgement Form and Instructions (online)
               Notice of Termination Form (online)
               Riparian Forest Buffer Reporting Form (online)

cc:      Kevin C. Clark, P.E., BAI Group, LLC (by email)
        Luzerne Conservation District (by email)
        Monroe County Conservation District (by email)
        Northampton County Conservation District (by email)
        Bucks County Conservation District (by email)
        Chester County Conservation District (by email)
        York County Conservation District (by email)
        Buck Township (by email)
        Bear Creek Township (by email)
        Plains Township (by email)
        Jenkins Township (by email)
        Laflin Borough (by email)
        Wyoming Borough (by email)
        West Wyoming Borough (by email)
        Kingston Township (by email)
        Dallas Township (by email)
        Ross Township (by email)
        Chestnuthill Township (by email)
        Tunkhannock Township (by email)
        Lower Mount Bethel Township (by email)
        Lower Makefield Township (by email)
        East Whiteland Township (by email)
        Northeast Regional Waterways and Wetlands PM (by email)
        Southeast Regional Waterways and Wetlands PM (by email)
        Southcentral Regional Waterways and Wetlands PM (by email)

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF ENVIRONMENTAL PROTECTION**
**REGIONAL PROGRAM COORDINATION OFFICE**



**EROSION AND SEDIMENT CONTROL (E&S) PERMIT FOR EARTH DISTURBANCE ASSOCIATED WITH OIL AND GAS EXPLORATION, PRODUCTION, PROCESSING, OR TREATMENT OPERATIONS OR TRANSMISSION FACILITIES**

**E&S PERMIT NO:** <u>ESG830021002-00</u>

In compliance with the provisions of Pennsylvania's Clean Streams Law, as amended, 35 P.S. Section 691.1 *et seq.*, 58 Pa.C.S. §§ 3201-3274 (2012 Oil and Gas Act) and the regulations promulgated thereto, including 25 Pa. Code Chapters 78a and 102, and Sections 1905-A and 1917-A of the Administrative Code of 1929, 71 P.S. Sections 510-5, 510-17 and 510-20,

| Permittee | Project Site |
|---|---|
| **Transcontinental Gas Pipe Line Company, LLC**<br>**2800 Post Oak Blvd**<br>**Level 11**<br>**Houston, TX 77056** | **Regional Energy Access Expansion Project**<br>**Luzerne, Northampton, Monroe, Chester & Bucks**<br>**Counties**<br>**Earth Disturbance: 689.8 acres** |

is authorized to discharge from earth disturbance activities associated with oil and gas activities to <u>Abrahams Creek (CWF, MF), tributaries to Abrahams Creek (CWF, MF), tributaries to Gardner Creek (CWF), Gardner Creek (CWF, MF), Susquehanna River (WWF, MF), tributary to Susquehanna River (CWF, MF), Trout Brook (CWF, MF), tributary to Trout Brook (CWF, MF), tributaries to Toby Creek (CWF, MF), Stony Run (HQ-CWF, MF), Shades Creek (HQ-CWF, MF), tributaries to Shades Creek (HQ-CWF, MF), Little Shades Creek (HQ-CWF, MF), tributaries to Little Shades Creek (HQ-CWF, MF), Snider Run (HQ-CWF, MF), tributary to Meadow Run (HQ-CWF, MF), Meadow Run (HQ-CWF, MF), Bear Creek (HQ-CWF, MF), tributary to Little Bear Creek (HQ-CWF, MF), Mill Creek (HQ-CWF, MF), tributary to Mill Creek (HQ-CWF, MF), Lake Creek (HQ-CWF, MF), Princess Run (CWF, MF), Weir Creek (CWF, MF), tributary to Weir Creek (CWF, MF), tributary to McMichael Creek (EV, MF), tributary to McMichael Creek (HQ-CWF, MF), tributary to Pohopoco Creek (HQ-CWF, MF), Sugar Hollow Creek (HQ-CWF, MF), Poplar Creek (EV, MF), tributary to Poplar Creek (EV, MF), tributary to Mud Run (HQ-CWF, MF), Mud Run (HQ-CWF, MF) Mud Pond Run (EV, MF), Tunkhannock Creek (HQ-CWF, MF), tributary to Tunkhannock Creek (HQ-CWF, MF), Valley Creek (EV, MF), Shades Creek (HQ-CWF, MF), & Stony Run (HQ-CWF, MF)</u> in accordance with the application submitted to the Department of Environmental Protection (Department) and accompanying plans and additional information, as revised, subject to the requirements specified herein.

THIS PERMIT SHALL BECOME EFFECTIVE ON    <u>February 3, 2023</u>

THIS PERMIT SHALL EXPIRE AT MIDNIGHT ON    <u>February 2, 2028</u>

The authority granted by this permit is subject to the following further qualifications:

1. This permit is issued for earth disturbances associated with oil and gas activities subject to the use of erosion and sediment control (E&S) and post-construction stormwater management (PCSM) best management practices (BMPs) to control discharges composed entirely of stormwater to surface waters identified in the application. Authorization to discharge is subject to implementation of the plans and additional information submitted as part of the application. The permit incorporates by reference the application and any other attachments, reports, plans, plan drawings, supplements, and other materials submitted by the applicant, as revised.

2. The permittee and co-permittee(s) must comply with all terms and conditions of this permit. Any permit noncompliance constitutes a violation of The Clean Streams Law and is grounds for enforcement action; for permit termination, revocation, reissuance, or modification, or for denial of a permit or permit renewal.

**REGIONAL PERMIT COORDINATION OFFICE**

**ISSUANCE DATE:**

**February 3, 2023**

Domenic Reese, P.E.
**Director**
**Regional Permit Coordination Office**

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF ENVIRONMENTAL PROTECTION**                                   Permit No. ESG830021002-00

### PART A – EFFLUENT LIMITATIONS, RECORDKEEPING AND REPORTING REQUIREMENTS

I.      **DEFINITIONS**

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF ENVIRONMENTAL PROTECTION**                                   Permit No. ESG830021002-00

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF ENVIRONMENTAL PROTECTION**                                    **Permit No. ESG830021002-00**

r

d

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF ENVIRONMENTAL PROTECTION**                                    **Permit No. ESG830021002-00**

## II.    EFFLUENT LIMITATIONS

## III.   MONITORING, INSPECTION and REPORTING

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF ENVIRONMENTAL PROTECTION**                                             **Permit No. ESG830021002-00**

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF ENVIRONMENTAL PROTECTION**                    **Permit No. ESG830021002-00**

**IV. RECORD RETENTION**

**V. SIGNATORY REQUIREMENTS**

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF ENVIRONMENTAL PROTECTION**                                                    **Permit No. ESG830021002-00**

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF ENVIRONMENTAL PROTECTION**                     **Permit No. ESG830021002-00**

## PART B – STANDARD CONDITIONS

**I.   MANAGEMENT REQUIREMENTS**

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF ENVIRONMENTAL PROTECTION**                                   **Permit No. ESG830021002-00**

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF ENVIRONMENTAL PROTECTION**                                      **Permit No. ESG830021002-00**

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF ENVIRONMENTAL PROTECTION**                                    **Permit No. ESG830021002-00**

## II. COMPLIANCE RESPONSIBILITIES

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF ENVIRONMENTAL PROTECTION**                                  **Permit No. ESG830021002-00**

## III. OPERATING CONDITIONS

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF ENVIRONMENTAL PROTECTION**                    Permit No. ESG830021002-00

## PART C – SPECIAL CONDITIONS

**I. DISCHARGES CONSISTENT WITH TERMS AND CONDITIONS OF THE PERMIT**

**II. PROHIBITED DISCHARGES**

**III.    PRE-CONSTRUCTION MEETING AND NOTIFICATION**

**IV.    E&S PLANS**

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF ENVIRONMENTAL PROTECTION**                                          **Permit No. ESG830021002-00**

r        r        M                    r

M

**V.    SITE RESTORATION/POST-CONSTRUCTION STORMWATER (PCSM) PLANS**

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF ENVIRONMENTAL PROTECTION**                                   **Permit No. ESG830021002-00**

VI.    **PREPAREDNESS, PREVENTION, AND CONTINGENCY (PPC) PLANS**

VII.   **SPOIL OR BORROW AREAS**

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF ENVIRONMENTAL PROTECTION**                           **Permit No. ESG830021002-00**

**VIII.   STABILIZATION**

**IX.    LONG-TERM OPERATION AND MAINTENANCE OF PCSM BMPs**

_____

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF ENVIRONMENTAL PROTECTION**                                      **Permit No. ESG830021002-00**

**X.    TRAINING**

**XI.    ARCHAEOLOGICAL SPECIMENS**

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF ENVIRONMENTAL PROTECTION**                                    Permit No. ESG830021002-00

**XII.   HABITAT CONSERVATION PLANS AND THREATENED AND ENDANGERED SPECIES PROTECTION**

**XIII.   WETLAND PROTECTION**

**XIV.   INFILTRATION BMPS**

                                                                                    r          r

        M                    r           M

**XV.   ANTIDEGRADATION REQUIREMENTS**

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF ENVIRONMENTAL PROTECTION**                                    **Permit No. ESG830021002-00**

**XVI.  RIPARIAN AREA REPLANTING**

**XVII.  GEOLOGIC HAZARDS**

**XVIII. DISCHARGES TO NON-SURFACE WATER**

**XIX. WATER SUPPLY NOTIFICATION**

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF ENVIRONMENTAL PROTECTION**                                    **Permit No. ESG830021002-00**



February 3, 2023

Transcontinental Gas Pipe Line Company, LLC
c/o Mr. Joseph Dean
2800 Post Oak Blvd
Level 11
Houston TX 77056

Re:    Water Obstruction and Encroachment Permit (WOEP) Issuance
       Regional Energy Access Expansion Project

       DEP Permit No. E4083221-006 (Luzerne County)
       APS ID No. 1036224; AUTH ID No. 1349631
       Buck Township, Bear Creek Township, Plains Township, Jenkins Township, Kingston
       Township, Dallas Township, Wyoming Borough, West Wyoming Borough, Laflin
       Borough; Luzerne County

       DEP Permit No. E4583221-002 (Monroe County)
       APS ID No. 1036240; AUTH ID No. 1349660
       Ross Township, Chestnuthill Township, Tunkhannock Township; Monroe County


Dear Mr. Dean:

Enclosed are copies of your State Water Obstruction and Encroachment Permits (WOEP). Please
review these permits so that you are aware of the extent of authorization and the conditions that
apply to the authorizations.

Please be advised that Federal authorization for this project is required prior to starting your
project. In accordance with procedures established with the U.S. Army Corps of Engineers, you
will be contacted directly by the Corps regarding Federal Authorization.

In addition to the above-referenced permit authorizations, the permittee has additional
responsibilities:

1.  **The WOEP is not effective until a copy of the Acknowledgment of Apprisal of
    Permit Conditions, signed by you, is received by the Department. Any work
    conducted prior to the Department's receipt of the signed Acknowledgment of
    Apprisal of Permit Conditions is a violation of the Dam Safety and
    Encroachments Act and the Clean Streams Law, and you may be subject to
    fines and penalties.**

2.  A copy of the Permit, Acknowledgment of Apprisal of Permit Conditions, the
    Erosion and Sediment Control plan, this Issuance Letter, and any other applicable
    State and Federal authorizations, must be maintained on site during construction

Transcontinental Gas Pipe Line Company, LLC     -2-                    February 3, 2023

and available at the work site for inspection upon request by any officer or agent of
the Department or any other Federal, State, County or Municipal agency.

3. A Completion Report must be submitted to this office within 30 days of completion
   of the approved project.  The Completion Report form must be signed by you and
   the supervising engineer indicating that the work has been completed as approved.

Any person aggrieved by this action may challenge it in an appropriate legal forum.  The state and
federal courts are currently split on whether the proper forum to challenge a Department permit,
authorization or approval for a facility or activity subject to the Federal Natural Gas Act, 15 U.S.C.
§§ 717 *et seq.*, is the United States Court of Appeals for the Third Circuit or the Pennsylvania
Environmental Hearing Board.  *See Delaware Riverkeeper Network v. Sec'y, Dep't of Envtl. Prot.*,
833 F.3d 360 (3d Cir. 2016); *Delaware Riverkeeper Network v. Sec'y, Dep't of Envtl. Prot.*, 903
F.3d 65 (3d Cir. 2018), *cert. denied*, 139 S. Ct. 1648, 203 L. Ed. 899 (2019) and *Cole v. Dep't of
Envtl. Prot.,* 1577 C.D. 2019 WL 2420667 (Pa. Cmwlth Ct. June 15, 2021) (Pet. for Allowance of
Appeal pending); *West Rockhill Twp. v. Dep't of Envtl. Prot*., No. 1595 C.D. 2019 WL 2426014
(Pa. Cmwlth. June 15, 2021) (Pet. for Allowance of Appeal pending).

You should promptly consult with a lawyer on the steps to take if you wish to challenge this action
and how to best protect your interests.

IMPORTANT LEGAL RIGHTS ARE AT STAKE.  YOU SHOULD SHOW THIS DOCUMENT
TO A LAWYER AT ONCE.

If you have additional questions, please contact Michael Luciani at 570-826-2597 or
mluciani@pa.gov.


Sincerely,


Domenic Rocco, P.E.
Director
Regional Permit Coordination Office


Attachments:   WOEP
               Acknowledgement of Apprisal of Permit Conditions
               Completion Form

cc:    Ryan Nelson, WHM Consulting, LLC (by email)
       U.S. Army Corps of Engineers, Baltimore District (by email)
       U.S. Army Corps of Engineers, Philadelphia District (by email)
       PA Fish & Boat Commission, Division of Environmental Services (by email)
       Northeast Regional ARD (by email)
       Northeast Regional Waterways and Wetlands (by email)

Transcontinental Gas Pipe Line Company, LLC      -3-                              February 3, 2023

Luzerne County Conservation District (by email)
Buck Township (by email)
Bear Creek Township (by email)
Plains Township (by email)
Jenkins Township (by email)
Kingston Township (by email)
Dallas Township (by email)
Wyoming Borough (by email)
West Wyoming Borough (by email)
Laflin Borough (by email)
Monroe County Conservation District (by email)
Ross Township (by email)
Chestnuthill Township (by email)
Tunkhannock Township (by email)

PERMIT NO. E4083221-006

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF ENVIRONMENTAL PROTECTION**
**REGIONAL PERMIT COORDINATION OFFICE**

**WATER OBSTRUCTION AND ENCROACHMENT PERMIT**

The Department of Environmental Protection "Department", established by the Act of December 3, 1970, P.L. 834 (71 P.S. §§ 510.1 *et seq*.) and empowered to exercise certain powers and perform certain duties under and by virtue of the Act of November 26, 1978, P.L. 1375, as amended by the Act of October 23, 1979, P.L. 204 (32 P.S. §§ 693.1 *et seq*.) known as the "Dam Safety and Encroachments Act"; Act of October 4, 1978, P.L. 851, (32 P.S. §§679.101 *et seq*.) known as the "Flood Plain Management Act"; Act of June 22, 1937, P.L. 1987, (35 P.S. §§ 691.1 *et seq*.), known as "The Clean Streams Law"; and the Administrative Code, Act of April 9, 1929, P.L. 177, as amended, which empowers the Department to exercise certain powers and perform certain duties by law vested in and imposed upon the Water Supply Commission of Pennsylvania and the Water and Power Resources Board, hereby issues this permit to:

**Transcontinental Gas Pipe Line Company, LLC**
**2800 Post Oak Blvd**
**Level 11**
**Houston, TX 77056**

giving its consent to:

**construct, operate and maintain water obstructions and encroachments associated with the Luzerne County portion of the Regional Energy Access Expansion Project. The Luzerne County portion consists of 22.2 miles of 30-inch diameter pipeline and associated appurtenant structures.  The proposed impacts in Luzerne County include 2,418 feet of temporary impacts and 2,803 feet of permanent impacts to tributaries to Shades Creek (HQ-CWF, MF), Shades Creek (HQ-CWF, MF), Little Shades Creek (HQ-CWF, MF), tributary to Meadow Run (HQ-CWF, MF), Meadow Run (HQ-CWF, MF), tributaries to Bear Creek (HQ-CWF, MF), Bear Creek (HQ-CWF, MF), tributaries to Little Bear Creek (HQ-CWF, MF), tributaries to Mill Creek (HQ-CWF, MF), Mill Creek (HQ-CWF, MF), tributary to Gardner Creek (CWF, MF), Gardner Creek (CWF, MF), tributaries to Susquehanna River (WWF, MF), Susquehanna River (WWF, MF), Abrahams Creek (CWF, MF), tributaries to Abrahams Creek (CWF, MF), tributaries to Toby Creek (CWF, MF), tributaries to Trout Brook (CWF, MF), Trout Brook (CWF, MF); 13.41 acres of temporary impacts and 6.72 acres of permanent impacts to floodway; 5.25 acres of temporary impacts and 8.07 acres of permanent impacts to Palustrine Emergent (PEM), Palustrine Scrub-Shrub (PSS), Palustrine Forested (PFO), and Palustrine Open Water (POW).  5.20 acres of permanent wetlands impacts are to exceptional value wetlands.**

**The permittee is required to compensate for the functional conversion of PFO and PSS wetlands associated with the proposed project impacts by providing 6.73 acres of successful compensatory wetland mitigation (Permittee-Responsible Mitigation)**

-1-

**PERMIT NO. E4083221-006**

**through wetland enhancement at the Grajweski Property Mitigation Site (Latitude: 41° 11' 42"; Longitude: -76° 12' 30") in Huntington Township, Luzerne County and at the Perin Property Mitigation Site (Latitude: 40° 50' 41"; Longitude: -75° 14' 11") in Plainfield Township, Northampton County.**

**The Luzerne County portion of the proposed project starts at the existing Compressor Station 515, approximately 0.20 mile northeast of State Route 0115 (Latitude: 41° 10' 24"; Longitude: -75° 40' 18") in Buck Township and extends to the existing Hildebrandt Interconnect in Dallas Township, approximately 0.23 miles southeast of Hildebrandt Road (Latitude: 41° 20' 49"; Longitude: -75° 56' 47"). The Regional Energy Lateral is located in Buck Township, Bear Creek Township, Plains Township, Jenkins Township, Laflin Borough, Wyoming Borough, West Wyoming Borough, Kingston Township and Dallas Township, Luzerne County.**

If this work authorized by this permit is not completed on or before **December 31, 2027**, this permit, if not previously revoked or specifically extended by the Department in writing, shall become void without further notification.

This permit is issued in response to an application filed with the Department of Environmental Protection on **April 9, 2021**, and with the understanding that the work shall be performed in accordance with the maps, plans, profiles and specifications filed with and made a part of the application on **March 7, 2022, August 11, 2022, September 1, 2022 and October 28, 2022** subject to the provisions of the Dam Safety and Encroachments Act, the Flood Plain Management Act, the Clean Streams Law, the Administrative Code, the rules and regulations promulgated thereunder and the following conditions and restrictions:

1. The permittee shall sign the Acknowledgement of Apprisal of Permit Conditions thereby expressly certifying the permittee's acceptance of, and agreement to comply with, the terms and conditions of this permit. The permittee shall return a signed copy of the Acknowledgement of Apprisal of Permit Conditions to the Department. Unless the Acknowledgement of Apprisal of Permit Conditions form is completed and filed with the Department, this permit is void.

2. **Work may not commence until a signed copy of the Acknowledgement of Apprisal of Permit Conditions is received by the Department.** Any work authorized by this permit conducted prior to the Department's receipt of a signed copy of the Acknowledgement of Apprisal of Permit Conditions is a violation of the Dam Safety and Encroachments Act and the Clean Streams Law, and you may be subject to fines and penalties pursuant to those Acts.

3. The Department, in issuing this permit, has relied on the information and data which the permittee has provided in connection with this permit application. If, subsequent to the issuance of this permit, such information and data prove to be false, incomplete or inaccurate, this permit may be modified, suspended, or revoked, in whole or in part, and the Department may, in addition, institute appropriate legal proceedings.

PERMIT NO. E4083221-006

4. This permit does not give any property rights, either in real estate or material, nor any exclusive privileges, nor shall it be construed to grant or confer any right, title, easement, or interest in, to, or over any land belonging to the Commonwealth of Pennsylvania; neither does it authorize any injury to private property or invasion of private rights, nor any infringement of Federal, State, or Local laws or regulations; nor does it obviate the necessity of obtaining Federal assent when necessary.

5. The work shall at all times be subject to supervision and inspection by representatives of the Department, and no changes in the maps, plans, profiles, and specifications as approved shall be made except with the written consent of the Department. The Department, however, reserves the right to require such changes or modifications in the maps, plans, profiles, and specifications as may be considered necessary. The Department further reserves the right to suspend or revoke this permit if in its opinion the best interest of the Commonwealth will be subserved thereby.

6. This permit authorizes the construction, operation, maintenance and normal repair of the permitted structures conducted within the original specifications for the water obstruction or encroachment, and in accordance with the regulations of the Department and terms and conditions of this permit. Any repairs or maintenance involving modifications of the water obstruction or encroachment from its original specifications, and any repairs or reconstruction involving a substantial portion of the structure as defined by regulations of the Department shall require the prior written approval and permit of the Department.

7. All construction debris, excavated material, brush, rocks, and refuse incidental to this work shall be removed entirely from the stream channel and placed either on shore above the influence of flood waters, or at such dumping ground as may be approved by the Department.

8. There shall be no unreasonable interference with the free discharge of the river or stream or navigation during construction.

9. If future operations by the Commonwealth of Pennsylvania require modification of the structure or work, or if, in the opinion of the Department, the structure or work shall cause unreasonable obstruction to the free passage of floodwaters or navigation, the permittee shall, upon due notice remove or alter the structures, work or obstructions caused thereby, without expense to the Commonwealth of Pennsylvania, so as to increase the flood carrying capacity of the channel or render navigation reasonably free, easy, and unobstructed, in such manner as the Department may require. No claim shall be made against the Commonwealth of Pennsylvania on account of any such removal or alteration.

10. The permittee shall notify the Department, in writing, of the proposed time for commencement of work at least 15 days prior to the commencement of construction.

11. If construction work has not been completed within the time specified in this permit and the time limit specified in this permit has not been extended in writing by the Department or if this permit has been revoked for any reason, the permittee shall, at his own expense and in

a manner that the Department may prescribe, remove all or any portion of the work as the Department requires and restore the watercourse and floodplain to their former condition.

12. The permittee shall fully inform the engineer or contractor, responsible for the supervision and conduct of the work, of the terms, conditions, restrictions and covenants of this permit. Prior to the commencement of construction, the permittee shall file with the Department in writing, on a form provided by the Department, a statement signed by the permittee and an individual responsible for the supervision or conduct of the work acknowledging and accepting the general and special conditions contained in this permit. Unless the acknowledgment and acceptance have been filed, this permit is void. A copy of this permit and the acknowledgment shall be available at the work site for inspection upon request by an officer or agent of the Department or another Federal, State, County or Municipal Agency.

13. The permittee shall operate and maintain the structure or work authorized herein in a safe condition in accordance with the permit terms and conditions and the approved maps, plans, profiles and specifications.

14. This permit may not be transferred without prior written approval from the Department, such approval being considered upon receipt of the properly executed "Application for Transfer of Permit" form.

15. If and when the permittee desires to discontinue use or abandon the activity authorized herein, the permittee must remove all or part of the structure or work authorized and take other actions as are necessary to protect safety and the environment in accordance with a permit issued by the Department.

16. If the use of explosives in any waterways is required, the permittee shall secure the prior written permit from the Pennsylvania Fish and Boat Commission, pursuant to the Pennsylvania Fish and Boat Code, Act 1980-175 Title 30 Pennsylvania Consolidated Statutes, Section 2906. Requests should be directed to the Pennsylvania Fish and Boat Commission, Division of Environmental Services, 595 East Rolling Ridge Drive, Bellefonte, PA 16823-9685, telephone 814.359.5250.

17. Permittee shall implement and monitor an Erosion and Sedimentation Control Plan prepared in accordance with 25 Pa. Code Chapter 102 so as to minimize erosion and prevent excessive sedimentation into the receiving watercourse or body of water.

18. The project site shall at all times be available for inspection by authorized officers and employees of the Pennsylvania Fish and Boat Commission. Prior to commencement and upon completion of the work authorized by this permit, the permittee shall notify the Pennsylvania Fish and Boat Commission s Northeast Regional Office, 5566 Main Road, Sweet Valley, PA 18656, Telephone: (570) 477-5717.

19. The project site shall at all times be available for inspection by authorized officers and employees of the County Conservation District. Prior to commencement and upon

completion of the work authorized by this permit, the permittee shall notify the Luzerne Conservation District, 325 Smiths Pond Road, Shavertown PA 18708, 570-674-7991.

20. **SPECIAL CONDITIONS:** Permittee shall be responsible for compliance with each of the following special conditions.

**Water Supplies:**

A. If the project results in a pollution event or other adverse impact to any public or private water supplies, the permittee shall immediately notify the Department and the potentially affected public or private water supplies of the pollution event.

B. In the event that the permittee's work related to this authorization causes adverse impacts to a public or private water supply source, the permittee shall address the restoration or replacement of the impacted water supply and mitigate and/or remediate any pollution resulting from the project in accordance with applicable legal requirements.

C. At least 72 hours in advance of  beginning construction of a pipeline stream crossing, the permittee shall notify all identified users of private water supply wells within 150-ft of pipeline construction.

D. If the Department determines that the project adversely affects a public or private water supply, the permittee shall restore or replace the affected water supply with an alternate source of water adequate in quantity or quality for the purposes served by the supply.

E. At least 72 hours in advance of beginning construction of a pipeline stream crossing, the permittee shall notify all users of surface water intakes within one mile downstream of the crossing.  These include but are not limited to, drinking water users, industrial, and commercial users that may be impacted by turbidity or water quality changes.

F. The permittee shall notify such downstream water users immediately of any pollution event or incident at its site that may endanger downstream users.  The permittee shall also immediately implement its approved contingency plan to prevent further adverse impacts and remediate all adverse impacts as a result of the pollution event or incident.

G. If a public or private drinking water source not previously identified by the permittee is discovered by the permittee during construction, the permittee shall immediately notify the Department of the identified water source and shall notify that source of the permittee's construction activities.

**Historic, Cultural, or Archaeological Resources:**

H. The permittee and its agents shall visually inspect for historic, cultural, and archaeological resources that may be encountered during construction of the project and shall immediately cease earth disturbance activities in the vicinity of the archaeological artifacts upon encountering such potential artifacts.

**PERMIT NO. E4083221-006**

I.  If potential historic, cultural, or archaeological resources are discovered, the permittee shall immediately notify the Pennsylvania Historical and Museum Commission (PHMC) at P.O. Box 1026, Harrisburg, PA  17120-1026, telephone 717.783.8947, and shall concurrently notify the Department.

J.  The permittee shall not adversely impact any historic, cultural, and archaeological resources that are identified by the latest published version of the Pennsylvania Inventory of Historical Places and the National Register of Historical Places.

**Submerged Lands License Agreements:**

K.  The permittee shall comply with all terms and conditions of the Submerged Lands License Agreement entered into between the Department and the permittee for the natural gas pipeline crossing of the Susquehanna River, which is incorporated herein by reference.

**Temporary Road Crossings:**

L.  All temporary road crossings of streams and wetlands must meet all of the following conditions:

1.  The permittee shall restore and stabilize all temporary crossing sites immediately after termination of its permitted use.

2.  The permittee shall ensure that all culverts associated with temporary stream crossings provide a waterway area sufficient to adequately discharge the normal flow of the watercourse or stream, and that culverts are of sufficient length to extend beyond the toe of the clean rock fill.

3.  The permittee shall ensure that culverts are installed in such manner that overtopping of the roadway will occur within the stream channel.  This can be accomplished by providing a depressed roadway embankment.

4.  The permittee shall minimize excessive fill and excavation of stream banks by utilizing culverts with as large a diameter as possible.  The minimum diameter size of a culvert to be used shall be no less than 12 inches.

5.  Road and causeway embankments shall only consist of clean rock material to prevent stream channel sedimentation during placement, removal, and periods of overtopping.

6.  Bridges must be structurally stable and shall be single span from top of bank to top of bank, unless approved by the Department.

7.  Approach roads to temporary road crossings shall utilize original grades.  However, clean rock material or gravel to a depth of six inches above original grade can be utilized for approaches, as necessary.

8.  The waterway opening of the temporary road crossings shall be kept open and functioning at all times by maintaining the crossings free of debris and other obstructions.

9.  The permittee shall promptly repair any damage resulting from increased backwater caused by a temporary road crossing.  When warranted, in advance of major storms, the permittee shall remove temporary road crossings in the event of high waters to prevent increased backwater.

10. All wetland crossing sites shall be stabilized by appropriate means, including, but not limited to, using removable, temporary mats, pads, or other similar devices to ensure minimization of impact on the ecology of the wetland.

11. The permittee shall remove all or any portion of a temporary road crossing upon written notification to the permittee from the Department in the event the project is causing an adverse impact on public health, safety, or the environment or in any other manner violates the requirements of the Pennsylvania Clean Streams Law, the Pennsylvania Dam Safety and Encroachments Act, and/or  25 Pa. Code Chapter 105.

**Site Field Verification, Restoration, and Monitoring:**

M.  All wetlands within the project area shall be appropriately demarcated per the approved plans prior to the start of construction activities and shall remain demarcated until earth disturbance activities are completed, and the site has been stabilized.  An acceptable means of demarcation of wetlands includes, but not limited to, the use of an orange construction safety fence and/or flags.

N.  The permittee shall prepare and maintain a detailed record of pre-construction and post-construction conditions of each stream and wetland crossing, which shall include sufficient photographs to compare pre-construction and post-construction conditions.  The permittee shall submit this documentation to the Department within ninety (90) days after completion of work under the respective permit.

O.  Excess fill from disturbed areas and construction activities shall be located outside of the floodway, floodplain, or other bodies of water.  The permittee is responsible for stabilizing any excess materials spoiled onsite or offsite, whether the permittee owns the site or others own the site.

P.  Wetland excavation shall include the segregation of the soil horizons, unless written approval is received from the Department.  Soil horizons shall be replaced to match pre-construction conditions.  In areas where bore pits are proposed in or adjacent to wetlands, or if a restrictive layer, including but not limited to clay or fragipans, is encountered during the trench excavation, the permittee shall have knowledgeable personnel with appropriate technical expertise on-site to oversee backfilling of the trench and installation of trench plugs, to ensure that wetland hydrology is maintained.

.  Backfilled trenches shall not create the formation of a permanent ridge in a streambed or wetland.

R.  Rock riprap shall only be used in the stream bed when written approval is received from the Department.

S.  Upon completion of final earthmoving activities, the permittee shall restore all disturbed wetland areas to original contours and replant with indigenous wetland vegetation in accordance with the restoration plans as presented in the permit application .

T.  Wetland disturbances shall be minimized and stabilized within four (4) calendar days of final earthmoving activities.

U.  Streambank disturbance shall be minimized and stabilized with indigenous vegetation immediately upon completion of final earthmoving activities.

V.  Stream pipeline crossings shall be restored and properly stabilized upon completion of work.  Restored streams shall use a minimum of six (6) inches of native stream bed material.  For streams where riprap is necessary to prevent scour, the riprap shall be depressed sufficiently to allow six (6) inches of native stream bed material over the riprap.  The restored streambed elevation shall not exceed the pre-existing streambed elevation.

W.  All Palustrine Scrub-Shrub (PSS) and Palustrine Forested (PFO) wetlands within the temporary right-of-way (ROW) shall be replanted with woody species that are similar to those species present in the wetland prior to the permittee conducting construction activities.

X.  The Permittee shall ensure at least an eighty-five percent (85   ) survival rate of wetland plantings during the five (5) year monitoring period.  Additional wetland plantings and/or reports in subsequent years beyond the initial five (5) years may be required if an eighty-five percent (85   ) survivability of planted species is not achieved.

Y.  For a period of up to five (5) years following construction, the permittee shall monitor the stream and wetlands in the project area.  Monitoring reports shall be submitted to the Department in the spring (May 15) and fall (November 15) for the first two (2) calendar years following construction and annually (November 15) for three (3) years thereafter.

1.  All wetland monitoring reports shall contain information describing the wetland sites at the time of inspection, documented indicators of wetland hydrology, hydric soils, an inventory of the plant species and percent aerial coverage, and photographs of the wetland sites with plans showing the location and orientation of each of the photographs.  The monitoring reports shall demonstrate that the existing wetlands on-site are maintaining pre-construction wetland conditions and delineated acreages.  If the wetlands on-site are not maintaining pre-construction wetland conditions and delineated acreages, a written plan shall be submitted to correct any deficiencies identified during the monitoring phase.

2. All stream monitoring reports shall contain information describing the stream at the time of inspection and demonstrating that the existing streams on-site are maintaining pre-construction conditions and hydrology.

3. Monitoring may be terminated or extended by the Department upon written request by the permittee.

. For a period of up to five (5) years following construction, the permittee shall monitor for secondary impacts to hydrology, i.e., the loss of hydrology, to all watercourses with a drainage area of less than 100 acres, including those watercourses that originate within the project ROW.  Reports shall be submitted to the Department in the spring and fall for the first two (2) calendar years following construction and annually for three (3) years thereafter.

1. The monitoring reports shall contain information describing the presence or absence of hydrology at the time of inspection, a narrative comparison to hydrology present in the watercourse during pre-permitting field investigation(s), and photographs of the watercourse.

2. If the monitoring identifies a diminution or complete loss of hydrology, the permittee shall evaluate whether the activities authorized by this Permit caused the loss of hydrology and submit this evaluation to the Department for review.

3. If the Department determines that the activities authorized by this Permit are contributing to the loss of hydrology, the permittee shall prepare a written plan to correct the loss of hydrology to the watercourse.  Within thirty (30) days of the Department informing permittee about its determination that authorized activities contributed to the loss of hydrology, the permittee shall submit a plan to address the loss of hydrology to the Department for review and approval.  If the Department identifies any deficiencies with permittee's plan, then the permittee shall provide the Department a written response to address the stated deficiencies within fifteen (15) days of receiving written notice of the Department-identified deficiencies, unless the Department extends that timeframe in writing.

4. The permittee shall implement the Department-approved plan within ninety (90) days of receiving written approval from the Department, unless the Department extends that timeframe in writing.

5. In the event that loss of hydrology from activities conducted under this Permit cannot be restored, the permittee shall submit a mitigation plan to the Department that sets forth the manner in which full loss of hydrology and associated water will be compensated for.  If the Department identifies any deficiencies with the permittee's mitigation plan, then the permittee shall provide the Department a written response to address the stated deficiencies within fifteen (15) days of receiving written notice of the Department-identified deficiencies, unless the Department extends that timeframe in writing.  The permittee shall implement the Department-approved mitigation plan

within ninety (90) days of receiving written approval from the Department, unless the Department extends that timeframe in writing.

6. Based upon the monitoring results, the Department may terminate monitoring upon written request by the permittee and may extend the monitoring period by providing written notice to the permittee.

**Compensatory Mitigation and Monitoring:**

AA. The permittee shall provide copies of the recorded deed restrictions or conservation easements for the compensatory mitigation sites to the Department within sixty (60) days after permit issuance.

BB. In accordance with Requirement L-5, Environmental Assessment, Module 4, Appendix S4-3 Compensatory Offsite Wetland Mitigation Plan, the following compensatory mitigation shall commence prior to or concurrently with wetland impacts requiring compensation as authorized by this permit and be completed within one (1) growing season thereafter:

1. The permittee is required to compensate for the functional conversion of Palustrine Forested (PFO) and Palustrine Scrub-Shrub (PSS) wetlands associated with the proposed project impacts by providing 6.73 acres of successful compensatory wetland mitigation (Permittee-Responsible Mitigation) through wetland enhancement at the Grajweski Property Mitigation Site in Huntington Township, Luzerne County and at the Perin Property Mitigation Site in Plainfield Township, Northampton County (collectively, "Compensatory Mitigation Sites").

CC. For at least five (5) years after the Compensatory Mitigation Sites restoration activities are completed, the permittee shall monitor the Compensatory Mitigation Sites. Within sixty (60) days of completing the Compensatory Mitigation Sites, permittee shall submit as-built drawings to the Department for the Compensatory Mitigation Sites. Monitoring reports shall be submitted to the Department at a frequency of every six (6) months for the first two (2) years after mitigation site construction and annually for three (3) years thereafter.

1. The monitoring reports shall contain information describing the success of the Compensatory Mitigation Sites at the time of inspection, an inventory of the surviving plant species and percent aerial coverage, photographs of each site with plans showing the location and orientation of each of the photographs, and a written plan to correct any deficiencies identified during the monitoring phase.

2. If the Compensatory Mitigation Sites have not achieved design objectives within the monitoring period, the permittee will undertake remedial work to assure establishment of functional wetland habitats.

3. Based upon the monitoring results, the Department may terminate monitoring upon written request by the permittee and may extend the monitoring period by providing written notice to the permittee.

DD. For at least five (5) years after the on-site wetland restoration and riparian reforestation activities are completed, the permittee shall monitor the activities. Within sixty (60) days of completing wetland restoration and riparian reforestation activities, permittee shall submit as-built drawings to the Department for the activities. Monitoring reports shall be submitted to the Department at a frequency of every six (6) months for the first three (3) years after mitigation site construction and annually for two (2) years thereafter.

1. The monitoring reports shall contain information describing the success of the on-site wetland restoration and riparian reforestation activities at the time of inspection, an inventory of the surviving plant species and percent aerial coverage, photographs of each site with plans showing the location and orientation of each of the photographs, and a written plan to correct any deficiencies identified during the monitoring phase.

2. If the on-site wetland restoration and riparian reforestation activities have not achieved design objectives within the monitoring period, the permittee will undertake remedial work to assure establishment of functional wetland habitats.

3. Based upon the monitoring results, the Department may terminate monitoring upon written request by the permittee and may extend the monitoring period by providing written notice to the permittee.

**Trenchless Technology (TT) Aquatic Resource Crossings:**

EE. This Permit does not authorize the removal of woody vegetation for the purposes of operation and maintenance of the pipeline in wetland and riparian areas that are proposed to be crossed using trenchless methodology.

FF. The permittee shall construct and operate the TT crossings at wetlands, streams, and floodways in a manner to prevent a release of drilling fluid to "waters of the Commonwealth," as that term is defined in Section 1 of The Clean Streams Law, 35 P.S. § 691.1. The permittee shall immediately notify the Department in the event of an Inadvertent Return and immediately activate and implement the Pollution Prevention Control Plans (PPC Plans) including the Inadvertent Returns (IR) and the Geological Hazard Assessment and Mitigation Plan to prevent any impacts to waters of the Commonwealth and other natural resources.

GG. In accordance with the PPC Plan, the permittee shall take measures to avoid drilling activities in the vicinity of mine voids and utilities.

HH. In accordance with the PPC Plan, the permittee shall visually monitor the ground surface and waters of the Commonwealth that are located within the vicinity of the TT while drilling operations are occurring. This monitoring shall include walking, wading, and use of a boat, as necessary, to effectively observe and monitor for the return of materials associated with TT activities to the surface or to waters of the Commonwealth. If loss of circulation of drilling fluid occurs or drilling fluid pressure is lost, the permittee shall immediately investigate the drilling pathway and surrounding area for an inadvertent return. If an inadvertent return is discovered, drilling shall immediately cease.

-11-

II.  If an inadvertent return occurs within regulated waters of the Commonwealth, the TT shall only resume after:

   1.  A Registered Professional Geologist or Registered Professional Engineer inspects and evaluates the site for the likelihood of another inadvertent return; and

   2.  The permittee consults with and receives written approval from the Department.

JJ.  For those TT sites that experience an inadvertent return and do not have an approved contingency crossing method, the permittee shall submit a permit modification to the Department for review and approval prior to commencing an alternate crossing method.

KK. Inadvertent returns that impact or discharge to streams, floodways, or wetlands during the TT operations shall be remediated in compliance with the PPC Plan.  If clean-up operations differ from the submitted plans, prior approval from the Department will be necessary for any modifications to the TT Plan for additional mitigation.

LL.  TT additives which are certified for conformance with ANSI/NSF Standard 60 (Drinking Water Treatment Chemicals - Health Effects) are deemed acceptable to the Department, when used in the manner indicated in the certification of the additive.  All conditions included as part of the additive s certification should be followed.  A current listing of certified drilling fluids is maintained by NSF at http://www.nsf.org/Certified/PwsChemicals/Listings.asp?ProductFunction=Drilling_Fluid &. Use of drilling additives certified for conformance with ANSI/NSF Standard 60 does not relieve operators from the requirement to obtain the necessary permits to conduct TT operations.  Use of certified additives does not relieve the operator of liability should an inadvertent return or other pollution of the waters of the Commonwealth occur as a result of drilling operations.

MM. To prevent impacts to water quality from TT operations, it is recommended that: 1) an environmental inspector be on site for the duration of the crossing operation, and 2) a vac truck be available within three (3) hours to respond to inadvertent returns/releases.  In the event of an inadvertent return or release of sediment into a body of water, PFBC Bureau of Law Enforcement Regional Office must be notified within 24 hours.

**Open Trench Aquatic Resource Crossings:**

NN. The permittee shall construct open trench pipeline crossings of streams in dry conditions by constructing during periods of no water flow and/or by installing stream flow bypass systems (flumed or pumped) through the affected area. Bypass systems must stay in use until streambeds and banks are adequately stabilized. Downstream flow must be maintained during the construction.

OO. Each stream crossing shall be conducted in an uninterrupted process in the shortest period of time possible.  Impacts to waters of the Commonwealth shall be avoided, to the extent

practicable, and if not practicable, then minimized in accordance with the permittee's approved plans.

PP.  The permittee may cross dry channels, dry swales, and dry intermittent streams without the use of stream flow bypass systems if the channel has no flow and the stream crossing and stabilization can be completed in dry conditions and within twenty-four (24) hours, unless approved in writing by the Department.  Standby sandbag dams and pumps shall be located on-site and installed in the event of precipitation resulting in channel flow.

.  The permittee shall implement procedures that take into account the weather forecast and current conditions prior to commencing stream crossing installations to ensure that weather and stream conditions will not result in a pollution event.  Such procedures could include a sign-off sheet documenting that the Environmental Inspector, Foreman, and any other responsible individual agree that the crossing can be constructed during that specific time.

**Habitat Conservation Plans and Threatened and Endangered Species Protection:**

RR.  Prior to conducting any future maintenance activities on the pipeline or right of way which involves disturbance, the permittee shall conduct a current Pennsylvania Natural Diversity Inventory search, shall obtain clearance(s) for any species or resource where a potential impact is identified, provide the avoidance and mitigation plan to the Department prior to initiating such maintenance work and shall implement, and adhere to all avoidance measures outlined in such clearance(s).

SS.  The permittee shall comply with and implement all Avoidance Measures, Conservation Measures, and other recommendations identified by the jurisdictional resource agencies for the protection of any federal or state threatened or endangered species or species of special concern, including:

1.  Restrictions and voluntary conservation measures approved by United States Fish & Wildlife Service (USFWS) for the protection of the *Myotis sodalist* (Indiana Bat) and *Myotis septentrionalis* (Northern Long-Eared Bat);

2.  Restrictions approved by Pennsylvania Game Commission (PGC) and those found within the most recent Bat Restriction Summary Table for the protection of the *Myotis lucifugus* (Little Brown Bat), *Perimyotis subflavus* (Tri-Colored Bat), and *Myotis leibii* (Eastern Small-footed Bat);

3.  Requested measures set forth by the Department of Conservation and Natural Recourses (DCNR) for the protection of the *Galium latifolium* (Purple Bedstraw) populations;

4.  Precautions set forth by and Mitigation Measures approved by the Pennsylvania Fish and Boat Commission (PFBC) for the protection of the Timber Rattlesnake *Crotalus horridus* (Timber Rattlesnake).

**Seasonal Restrictions:**

TT. The permittee shall not perform any in-stream work in waters listed by the Pennsylvania Fish and Boat Commission as **Class A wild trout fishery streams** and their tributaries between October 1 and April 1 without the prior written approval of the Pennsylvania Fish & Boat Commission's Division of Environmental Services, 450 Robinson Lane, Bellefonte, PA  16823-9620; telephone 814.359.5147.  This applies to the watersheds of Shades Creek and Mill Creek.

UU. The permittee shall not perform any in-stream work in waters listed by the Pennsylvania Fish and Boat Commission as **other wild trout streams** or their tributaries between October 1 and December 31 without the prior written approval of the Pennsylvania Fish and Boat Commission's Division of Environmental Services, 450 Robinson Lane, Bellefonte, PA  16823-9620; telephone 814.359.5147.  This applies to all streams except Gardner Creek and its Unnamed Tributaries, Abrahams Creek (downstream of Shoemaker Ave.), and the North Branch Susquehanna River.

VV. If construction or blasting occurs between April 15 and October 15, the permittee shall comply with all protocols set forth by the Pennsylvania Fish and Boat Commission (PFBC) for protection of the Timber Rattlesnake *Crotalus horridus* (Timber Rattlesnake).

WW. To minimize the potential for impact to state or federally listed bat species, the permittee shall conduct pipeline construction activities involving ground disturbance (i.e., trenching, grading, mechanized tree felling, and pipeline installation) between April 1 and November 15 within the specified buffers as described in Transco's August 19, 2022 Bat Restriction Summary Table.

XX. To minimize the potential for impact to state or federally listed bat species, the permittee shall conduct tree cutting between November 16 and March 31 within the specified buffers as described in Transco's August 19, 2022 Bat Restriction Summary Table.

**Miscellaneous:**

YY. Pollution of any waterway with harmful chemicals, fuels, oils, greases, bituminous material, acid, or other harmful or polluting materials, is prohibited.

. Herbicide spraying of wetlands is not authorized by this Permit.  Additionally, with the exception of a 10-foot wide area centered over the pipeline, maintenance mowing of wetlands is not authorized by this Permit.  The permittee shall place and maintain signs or other demarcation around the boundary of each wetland to clearly delineate the areas where this maintenance is not authorized.  The permittee shall place the signs or other demarcations when all restoration work is completed and prior to permit termination.

AAA. This permit does not convey any real property rights or interests or authorization to trespass on privately-owned riparian land.  By accepting this Permit, the permittee certifies that he/she holds title, easement, right, or other real interest in the riparian land.  Any dispute over property ownership and/or right of legal access is solely a matter for private litigation.

PERMIT NO. E4083221-006

BBB. Riprap and stone used throughout the project, including the construction of causeways and coffer dams, shall be free of fines and silts, or other non-erodible material.

CCC. All temporary water withdrawal intake structures and all appurtenant works shall be removed from the watercourse, body of water, floodway, and floodplains as prescribed within the permit application. Deviations from the approved permit application shall require prior written approval from the Department.

DDD. In accordance with the Erosion and Sediment Control Plan, trench plugs shall be placed at each of the following locations:

1. At ten (10) feet from the top of each bank of a stream
2. At fifty (50) feet from the top of each bank of a stream
3. At ten (10) feet from the edge of a wetland
4. At fifty (50) feet from the edge of a wetland

EEE. Place a minimum of one (1) trench plug at a maximum spacing of 100 feet between trench plugs within a wetland. Wetland crossings less than fifty (50) feet do not require an internal trench plug.

FFF. If the permittee encounters a groundwater seep during excavation, the permittee shall place a trench plug at ten (10) feet from each side of the seep.

GGG. Any french drains installed as part of temporary de-watering for construction activities shall be removed or otherwise rendered inoperable prior to final site restoration.

HHH. Water pumped from any construction area shall be directed through a sediment trap, basin, or a filter bag discharging into an appropriate vegetated filter area to prevent a discharge of sediment into any waters of the Commonwealth.

III. The permittee shall implement the approved Aids to Navigation (ATON) Plan as received under the Fish and Boat Code, 30 Pa C.S. §§ 5121-5124, and 58 Pa. Code § 113.1 *et seq.*

JJJ. This permit authorizes only those impacts to waters of the Commonwealth that were specifically described in the approved permit application(s) and revisions. Any additional impacts to waters of the Commonwealth from water obstruction or encroachment activities including, but not limited to, temporary access roads, lay-down areas, staging areas, or temporary work spaces, that have not been specifically identified in the approved permit application are not authorized. Any proposed changes regarding the specific impacts will require a permit amendment.

KKK. No deviation in the construction methodology or project design shown on the approved drawings is authorized unless approved through an amendment of this Permit by the Department in writing. If the specific resource crossing has pre-approved primary, secondary, or tertiary methods, the permittee shall send a written notification to the Department and the respective county conservation district prior to the change in method.

PERMIT NO. E4083221-006

LLL. This permit does not relieve the permittee of the obligation of complying with all Federal, interstate compact, State laws, regulations and standards, and local ordinances applicable to the construction, operation or maintenance of the water obstruction or encroachment.

MMM. The permittee shall follow the measures specified in the Preparedness, Prevention, and Contingency (PPC) Plan during construction.  The permittee shall maintain a copy of the PPC Plan on-site at all times during construction, train all staff to use and implement this plan, and have this plan available to provide at the request of any Department inspector.

NNN. In accordance with the Erosion and Sediment Control Plan, all synthetic erosion control features (e.g. silt fencing, netting, mats), which are intended for temporary use during construction, will be completely removed and properly disposed in a timely manner.  Only natural fiber materials which will degrade over time will be used as permanent erosion control measures, or if used temporarily, may be abandoned in place.

OOO. A copy of the Permit, Acknowledgment of Apprisal of Permit Conditions, the Erosion and Sediment Control Plans, and any other applicable plans or State and Federal authorizations, must be maintained on site during construction and available at the work site for inspection upon request by any officer or agent of the Department or any other Federal, State, County or Municipal agency.

DEPARTMENT OF ENVIRONMENTAL PROTECTION

02/03/2023

Domenic Rocco, P.E.                                              Issue Date
Director
Regional Permit Coordination Office

Permit No. E4083221-006

## ACKNOWLEDGMENT OF APPRISAL OF PERMIT CONDITIONS

I,  _____

(Permittee name)

and  _____

(Name address and telephone of individual responsible for supervision of work)

_____

acknowledge and accept the general and special conditions of Permit No. E4083221-006, issued to

**Transcontinental Gas Pipe Line Company, LLC**
**2800 Post Oak Blvd**
**Level 11**
**Houston, TX 77056**

which authorizes the permittee to:

**construct, operate and maintain water obstructions and encroachments associated with the Luzerne County portion of the Regional Energy Access Expansion Project. The Luzerne County portion consists of 22.2 miles of 30-inch diameter pipeline and associated appurtenant structures. The proposed impacts in Luzerne County include 2,418 feet of temporary impacts and 2,803 feet of permanent impacts to tributaries to Shades Creek (HQ-CWF, MF), Shades Creek (HQ-CWF, MF), Little Shades Creek (HQ-CWF, MF), tributary to Meadow Run (HQ-CWF, MF), Meadow Run (HQ-CWF, MF), tributaries to Bear Creek (HQ-CWF, MF), Bear Creek (HQ-CWF, MF), tributaries to Little Bear Creek (HQ-CWF, MF), tributaries to Mill Creek (HQ-CWF, MF), Mill Creek (HQ-CWF, MF), tributary to Gardner Creek (CWF, MF), Gardner Creek (CWF, MF), tributaries to Susquehanna River (WWF, MF), Susquehanna River (WWF, MF), Abrahams Creek (CWF, MF), tributaries to Abrahams Creek (CWF, MF), tributaries to Toby Creek (CWF, MF), tributaries to Trout Brook (CWF, MF), Trout Brook (CWF, MF); 13.41 acres of temporary impacts and 6.72 acres of permanent impacts to floodway; 5.25 acres of temporary impacts and 8.07 acres of permanent impacts to Palustrine Emergent (PEM), Palustrine Scrub-Shrub (PSS), Palustrine Forested (PFO), and Palustrine Open Water (POW). 5.20 acres of permanent wetlands impacts are to exceptional value wetlands.**

**The permittee is required to compensate for the functional conversion of PFO and PSS wetlands associated with the proposed project impacts by providing 6.73 acres of successful compensatory wetland mitigation (Permittee-Responsible Mitigation) through wetland enhancement at the Grajweski Property Mitigation Site (Latitude: 41° 11' 42"; Longitude: -76° 12' 30") in Huntington Township, Luzerne County and**

**at the Perin Property Mitigation Site (Latitude: 40° 50' 41"; Longitude: -75° 14' 11") in Plainfield Township, Northampton County.**

**The Luzerne County portion of the proposed project starts at the existing Compressor Station 515, approximately 0.20 mile northeast of State Route 0115 (Latitude: 41° 10' 24"; Longitude: -75° 40' 18") in Buck Township and extends to the existing Hildebrandt Interconnect in Dallas Township, approximately 0.23 miles southeast of Hildebrandt Road (Latitude: 41° 20' 49"; Longitude: -75° 56' 47"). The Regional Energy Lateral is located in Buck Township, Bear Creek Township, Plains Township, Jenkins Township, Laflin Borough, Wyoming Borough, West Wyoming Borough, Kingston Township and Dallas Township, Luzerne County.**

_____          _____
(Permittee signature)                                              (Date)


_____          _____
(Signature of individual responsible                    (Date)
 for supervision of work)

Return To:

Department of Environmental Protection
Regional Permit Coordination Office
Rachel Carson State Office Building
P.O. Box 69206
Harrisburg, PA 17105
RA-EPREGIONALPERMIT@pa.gov

Permit No. E4083221-006

## WATER OBSTRUCTION AND ENCROACHMENT PERMIT
## COMPLETION REPORT

Project Location:

County          _____

Municipality    _____

I (We) hereby certify that the _____ work authorized by the above referenced permit _____

_____

_____

_____

was completed on _____ in accordance with the plans approved and that all
                          (Date)

unauthorized obstructions have been removed.

Name:      _____
                     (Typed or printed)

Signature: _____

Title:     _____

Firm:      _____

Date:      _____

Return To:

Department of Environmental Protection
Regional Permit Coordination Office
Rachel Carson State Office Building
P.O. Box 69206
Harrisburg, PA 17105
RA-EPREGIONALPERMIT@pa.gov

**PERMIT NO. E4583221-002**

## COMMONWEALTH OF PENNSYLVANIA
## DEPARTMENT OF ENVIRONMENTAL PROTECTION
## REGIONAL PERMIT COORDINATION OFFICE

### WATER OBSTRUCTION AND ENCROACHMENT PERMIT

The Department of Environmental Protection "Department", established by the Act of December 3, 1970, P.L. 834 (71 P.S. §§ 510.1 *et seq*.) and empowered to exercise certain powers and perform certain duties under and by virtue of the Act of November 26, 1978, P.L. 1375, as amended by the Act of October 23, 1979, P.L. 204 (32 P.S. §§ 693.1 *et seq*.) known as the "Dam Safety and Encroachments Act"; Act of October 4, 1978, P.L. 851, (32 P.S. §§ 679.101 *et seq*.) known as the "Flood Plain Management Act"; Act of June 22, 1937, P.L. 1987, (35 P.S. §§ 691.1 *et seq*.), known as "The Clean Streams Law"; and the Administrative Code, Act of April 9, 1929, P.L. 177, as amended, which empowers the Department to exercise certain powers and perform certain duties by law vested in and imposed upon the Water Supply Commission of Pennsylvania and the Water and Power Resources Board, hereby issues this permit to:

**Transcontinental Gas Pipe Line Company, LLC**
**2800 Post Oak Blvd**
**Level 11**
**Houston, TX 77056**

giving its consent to:

**construct, operate and maintain water obstructions and encroachments associated with the Monroe County portion of the Regional Energy Access Expansion Project. The Monroe County portion consists of 13.8 miles of 42-inch diameter pipeline and associated appurtenant structures.  The proposed impacts in Monroe County include 205 feet of temporary impacts and 226 feet of permanent impacts to tributary to Pohopoco Creek (HQ-CWF, MF), Sugar Hollow Creek (HQ-CWF, MF), tributaries to McMichael Creek (HQ-CWF, MF), tributaries to Poplar Creek (EV, MF), tributaries to Tunkhannock Creek (HQ-CWF, MF), and tributary to Mud Run (HQ-CWF, MF); 0.69 acres of temporary impacts and 0.82 acres of permanent impacts to floodway; 1.21 acres of temporary impacts and 1.62 acres of permanent impacts to Palustrine Emergent (PEM), Palustrine Scrub-Shrub (PSS), Palustrine Forested (PFO), and Palustrine Open Water (POW).  1.58 acres of permanent wetlands impacts are to exceptional value wetlands.**

**The permittee is required to compensate for the functional conversion of PFO and PSS wetlands associated with the proposed project impacts by providing 1.17 acres of successful compensatory wetland mitigation (Permittee-Responsible Mitigation) through wetland enhancement at the Perin Property Mitigation Site (Latitude: 40° 50' 41"; Longitude: -75° 14' 11") in Plainfield Township, Northampton County.**

**The Monroe County portion of the proposed project starts approximately 0.27 mile north of Rolling Hills Road (T-378) ( Latitude: 40° 53' 48"; Longitude: -75° 22' 14") in Ross Township and extends to Long Pond Road (State Route 4002) ( Latitude:**

-1-

PERMIT NO. E4583221-002

**41° 03' 12"; Longitude: -75° 31' 34") in Tunkhannock Township.  The Effort Loop is located in Ross Township, Chestnuthill Township, and Tunkhannock Township, Monroe County.**

If this work authorized by this permit is not completed on or before **December 31, 2027**, this permit, if not previously revoked or specifically extended by the Department in writing, shall become void without further notification.

This permit is issued in response to an application filed with the Department of Environmental Protection on **April 9, 2021** , and with the understanding that the work shall be performed in accordance with the maps, plans, profiles and specifications filed with and made a part of the application on **March 7, 2022, August 11, 2022, September 1, 2022 and October 28, 2022** subject to the provisions of the Dam Safety and Encroachments Act, the Flood Plain Management Act, the Clean Streams Law, the Administrative Code, the rules and regulations promulgated thereunder and the following conditions and restrictions:

1.  The permittee shall sign the Acknowledgement of Apprisal of Permit Conditions thereby expressly certifying the permittee's acceptance of, and agreement to comply with, the terms and conditions of this permit.  The permittee shall return a signed copy of the Acknowledgement of Apprisal of Permit Conditions to the Department.  Unless the Acknowledgement of Apprisal of Permit Conditions form is completed and filed with the Department, this permit is void.

2.  **Work may not commence until a signed copy of the Acknowledgement of Apprisal of Permit Conditions is received by the Department.**  Any work authorized by this permit conducted prior to the Department's receipt of a signed copy of the Acknowledgement of Apprisal of Permit Conditions is a violation of the Dam Safety and Encroachments Act and the Clean Streams Law, and you may be subject to fines and penalties pursuant to those Acts.

3.  The Department, in issuing this permit, has relied on the information and data which the permittee has provided in connection with this permit application.  If, subsequent to the issuance of this permit, such information and data prove to be false, incomplete or inaccurate, this permit may be modified, suspended, or revoked, in whole or in part, and the Department may, in addition, institute appropriate legal proceedings.

4.  This permit does not give any property rights, either in real estate or material, nor any exclusive privileges, nor shall it be construed to grant or confer any right, title, easement, or interest in, to, or over any land belonging to the Commonwealth of Pennsylvania; neither does it authorize any injury to private property or invasion of private rights, nor any infringement of Federal, State, or Local laws or regulations; nor does it obviate the necessity of obtaining Federal assent when necessary.

5.  The work shall at all times be subject to supervision and inspection by representatives of the Department, and no changes in the maps, plans, profiles, and specifications as approved shall be made except with the written consent of the Department.  The Department,

however, reserves the right to require such changes or modifications in the maps, plans, profiles, and specifications as may be considered necessary.  The Department further reserves the right to suspend or revoke this permit if in its opinion the best interest of the Commonwealth will be subserved thereby.

6.  This permit authorizes the construction, operation, maintenance and normal repair of the permitted structures conducted within the original specifications for the water obstruction or encroachment, and in accordance with the regulations of the Department and terms and conditions of this permit.  Any repairs or maintenance involving modifications of the water obstruction or encroachment from its original specifications, and any repairs or reconstruction involving a substantial portion of the structure as defined by regulations of the Department shall require the prior written approval and permit of the Department.

7.  All construction debris, excavated material, brush, rocks, and refuse incidental to this work shall be removed entirely from the stream channel and placed either on shore above the influence of flood waters, or at such dumping ground as may be approved by the Department.

8.  There shall be no unreasonable interference with the free discharge of the river or stream or navigation during construction.

9.  If future operations by the Commonwealth of Pennsylvania require modification of the structure or work, or if, in the opinion of the Department, the structure or work shall cause unreasonable obstruction to the free passage of floodwaters or navigation, the permittee shall, upon due notice remove or alter the structures, work or obstructions caused thereby, without expense to the Commonwealth of Pennsylvania, so as to increase the flood carrying capacity of the channel or render navigation reasonably free, easy, and unobstructed, in such manner as the Department may require.  No claim shall be made against the Commonwealth of Pennsylvania on account of any such removal or alteration.

10.  The permittee shall notify the Department, in writing, of the proposed time for commencement of work at least 15 days prior to the commencement of construction.

11.  If construction work has not been completed within the time specified in this permit and the time limit specified in this permit has not been extended in writing by the Department or if this permit has been revoked for any reason, the permittee shall, at his own expense and in a manner that the Department may prescribe, remove all or any portion of the work as the Department requires and restore the watercourse and floodplain to their former condition.

12.  The permittee shall fully inform the engineer or contractor, responsible for the supervision and conduct of the work, of the terms, conditions, restrictions and covenants of this permit. Prior to the commencement of construction, the permittee shall file with the Department in writing, on a form provided by the Department, a statement signed by the permittee and an individual responsible for the supervision or conduct of the work acknowledging and accepting the general and special conditions contained in this permit.  Unless the acknowledgment and acceptance have been filed, this permit is void.  A copy of this permit and the acknowledgment shall be available at the work site for inspection upon request by

an officer or agent of the Department or another Federal, State, County or Municipal Agency.

13. The permittee shall operate and maintain the structure or work authorized herein in a safe condition in accordance with the permit terms and conditions and the approved maps, plans, profiles and specifications.

14. This permit may not be transferred without prior written approval from the Department, such approval being considered upon receipt of the properly executed "Application for Transfer of Permit" form.

15. If and when the permittee desires to discontinue use or abandon the activity authorized herein, the permittee must remove all or part of the structure or work authorized and take other actions as are necessary to protect safety and the environment in accordance with a permit issued by the Department.

16. If the use of explosives in any waterways is required, the permittee shall secure the prior written permit from the Pennsylvania Fish and Boat Commission, pursuant to the Pennsylvania Fish and Boat Code, Act 1980-175 Title 30 Pennsylvania Consolidated Statutes, Section 2906. Requests should be directed to the Pennsylvania Fish and Boat Commission, Division of Environmental Services, 595 East Rolling Ridge Drive, Bellefonte, PA 16823-9685, telephone 814.359.5250.

17. Permittee shall implement and monitor an Erosion and Sedimentation Control Plan prepared in accordance with 25 Pa. Code Chapter 102 so as to minimize erosion and prevent excessive sedimentation into the receiving watercourse or body of water.

18. The project site shall at all times be available for inspection by authorized officers and employees of the Pennsylvania Fish and Boat Commission. Prior to commencement and upon completion of the work authorized by this permit, the permittee shall notify the Pennsylvania Fish and Boat Commission s Northeast Regional Office, 5566 Main Road, Sweet Valley, PA 18656, Telephone: (570) 477-5717.

19. The project site shall at all times be available for inspection by authorized officers and employees of the County Conservation District. Prior to commencement and upon completion of the work authorized by this permit, the permittee shall notify the, Monroe County Conservation District, 8050 Running Valley Road, Stroudsburg, PA 18360, 570-629-3060.

20. **SPECIAL CONDITIONS:** Permittee shall be responsible for compliance with each of the following special conditions.

**Water Supplies:**

A. If the project results in a pollution event or other adverse impact to any public or private water supplies, the permittee shall immediately notify the Department and the potentially affected public or private water supplies of the pollution event.

**PERMIT NO. E4583221-002**

B. In the event that the permittee's work related to this authorization causes adverse impacts to a public or private water supply source, the permittee shall address the restoration or replacement of the impacted water supply and mitigate and/or remediate any pollution resulting from the project in accordance with applicable legal requirements.

C. At least 72 hours in advance of beginning construction of a pipeline stream crossing, the permittee shall notify all identified users of private water supply wells within 150-ft of pipeline construction.

D. If the Department determines that the project adversely affects a public or private water supply, the permittee shall restore or replace the affected water supply with an alternate source of water adequate in quantity or quality for the purposes served by the supply.

E. At least 72 hours in advance of beginning construction of a pipeline stream crossing, the permittee shall notify all users of surface water intakes within one mile downstream of the crossing. These include but are not limited to, drinking water users, industrial, and commercial users that may be impacted by turbidity or water quality changes.

F. The permittee shall notify such downstream water users immediately of any pollution event or incident at its site that may endanger downstream users. The permittee shall also immediately implement its approved contingency plan to prevent further adverse impacts and remediate all adverse impacts as a result of the pollution event or incident.

G. If a public or private drinking water source not previously identified by the permittee is discovered by the permittee during construction, the permittee shall immediately notify the Department of the identified water source and shall notify that source of the permittee's construction activities.

**Historic, Cultural, or Archaeological Resources:**

H. The permittee and its agents shall visually inspect for historic, cultural, and archaeological resources that may be encountered during construction of the project and shall immediately cease earth disturbance activities in the vicinity of the archaeological artifacts upon encountering such potential artifacts.

I. If potential historic, cultural, or archaeological resources are discovered, the permittee shall immediately notify the Pennsylvania Historical and Museum Commission (PHMC) at P.O. Box 1026, Harrisburg, PA  17120-1026, telephone 717.783.8947, and shall concurrently notify the Department.

J. The permittee shall not adversely impact any historic, cultural, and archaeological resources that are identified by the latest published version of the Pennsylvania Inventory of Historical Places and the National Register of Historical Places.

**Temporary Road Crossings:**

K.  All temporary road crossings of streams and wetlands must meet all of the following conditions:

1.  The permittee shall restore and stabilize all temporary crossing sites immediately after termination of its permitted use.

2.  The permittee shall ensure that all culverts associated with temporary stream crossings provide a waterway area sufficient to adequately discharge the normal flow of the watercourse or stream, and that culverts are of sufficient length to extend beyond the toe of the clean rock fill.

3.  The permittee shall ensure that culverts are installed in such manner that overtopping of the roadway will occur within the stream channel.  This can be accomplished by providing a depressed roadway embankment.

4.  The permittee shall minimize excessive fill and excavation of stream banks by utilizing culverts with as large a diameter as possible.  The minimum diameter size of a culvert to be used shall be no less than 12 inches.

5.  Road and causeway embankments shall only consist of clean rock material to prevent stream channel sedimentation during placement, removal, and periods of overtopping.

6.  Bridges must be structurally stable and shall be single span from top of bank to top of bank, unless approved by the Department.

7.  Approach roads to temporary road crossings shall utilize original grades.  However, clean rock material or gravel to a depth of six inches above original grade can be utilized for approaches, as necessary.

8.  The waterway opening of the temporary road crossings shall be kept open and functioning at all times by maintaining the crossings free of debris and other obstructions.

9.  The permittee shall promptly repair any damage resulting from increased backwater caused by a temporary road crossing.  When warranted, in advance of major storms, the permittee shall remove temporary road crossings in the event of high waters to prevent increased backwater.

10. All wetland crossing sites shall be stabilized by appropriate means, including, but not limited to, using removable, temporary mats, pads, or other similar devices to ensure minimization of impact on the ecology of the wetland.

11. The permittee shall remove all or any portion of a temporary road crossing upon written notification to the permittee from the Department in the event the project is causing an adverse impact on public health, safety, or the environment or in any other manner violates the requirements of the Pennsylvania Clean Streams Law, the Pennsylvania Dam Safety and Encroachment Act, and/or 25 Pa. Code Chapter 105.

**Site Field Verification, Restoration, and Monitoring:**

L.  All wetlands within the project area shall be appropriately demarcated per the approved plans prior to the start of construction activities and shall remain demarcated until earth disturbance activities are completed, and the site has been stabilized.  An acceptable means of demarcation of wetlands includes, but not limited to, the use of an orange construction safety fence and/or flags.

M.  The permittee shall prepare and maintain a detailed record of pre-construction and post-construction conditions of each stream and wetland crossing, which shall include sufficient photographs to compare pre-construction and post-construction conditions.  The permittee shall submit this documentation to the Department within ninety (90) days after completion of work under the respective permit.

N.  Excess fill from disturbed areas and construction activities shall be located outside of the floodway, floodplain, or other bodies of water.  The permittee is responsible for stabilizing any excess materials spoiled onsite or offsite, whether the permittee owns the site or others own the site.

O.  Wetland excavation shall include the segregation of the soil horizons, unless written approval is received from the Department.  Soil horizons shall be replaced to match pre-construction conditions.  In areas where bore pits are proposed in or adjacent to wetlands, or if a restrictive layer, including but not limited to clay or fragipans, is encountered during the trench excavation, the permittee shall have knowledgeable personnel with appropriate technical expertise on-site to oversee backfilling of the trench and installation of trench plugs, to ensure that wetland hydrology is maintained.

P.  Backfilled trenches shall not create the formation of a permanent ridge in a streambed or wetland.

.   Rock riprap shall only be used in the stream bed when written approval is received from the Department.

R.  Upon completion of final earthmoving activities, the permittee shall restore all disturbed wetland areas to original contours and replant with indigenous wetland vegetation in accordance with the restoration plans as presented in the permit.

S.  Wetland disturbances shall be minimized and stabilized within four (4) calendar days of final earthmoving activities.

T.  Streambank disturbance shall be minimized and stabilized with indigenous vegetation immediately upon completion of final earthmoving activities.

U.  Stream pipeline crossings shall be restored and properly stabilized upon completion of work.  Restored streams shall use a minimum of six (6) inches of native stream bed material.  For streams where riprap is necessary to prevent scour, the riprap shall be

depressed sufficiently to allow six (6) inches of native stream bed material over the riprap. The restored streambed elevation shall not exceed the pre-existing streambed elevation.

V. All Palustrine Scrub-Shrub (PSS) and Palustrine Forested (PFO) wetlands within the temporary right-of-way (ROW) shall be replanted with woody species that are similar to those species present in the wetland prior to the permittee conducting construction activities.

W. The Permittee shall ensure at least an eighty-five percent (85  ) survival rate of wetland plantings during the five (5) year monitoring period.  Additional wetland plantings and/or reports in subsequent years beyond the initial five (5) years may be required if an eighty-five percent (85  ) survivability of planted species is not achieved.

X. For a period of up to five (5) years following construction, the permittee shall monitor the stream and wetlands in the project area.  Monitoring reports shall be submitted to the Department in the spring (May 15) and fall (November 15) for the first two (2) calendar years following construction and annually (November 15) for three (3) years thereafter.

    1. All wetland monitoring reports shall contain information describing the wetland sites at the time of inspection, documented indicators of wetland hydrology, hydric soils, an inventory of the plant species and percent aerial coverage, and photographs of the wetland sites with plans showing the location and orientation of each of the photographs.  The monitoring reports shall demonstrate that the existing wetlands on-site are maintaining pre-construction wetland conditions and delineated acreages.  If the wetlands on-site are not maintaining pre-construction wetland conditions and delineated acreages, a written plan shall be submitted to correct any deficiencies identified during the monitoring phase.

    2. All stream monitoring reports shall contain information describing the stream at the time of inspection and demonstrating that the existing streams on-site are maintaining pre-construction conditions and hydrology.

    3. Monitoring may be terminated or extended by the Department upon written request by the permittee.

Y. For a period of up to five (5) years following construction, the permittee shall monitor for secondary impacts to hydrology, i.e., the loss of hydrology, to all watercourses with a drainage area of less than 100 acres, including those watercourses that originate within the project ROW.  Reports shall be submitted to the Department in the spring and fall for the first two (2) calendar years following construction and annually for three (3) years thereafter.

    1. The monitoring reports shall contain information describing the presence or absence of hydrology at the time of inspection, a narrative comparison to hydrology present in the watercourse during pre-permitting field investigation(s), and photographs of the watercourse.

2.  If the monitoring identifies a diminution or complete loss of hydrology, the permittee shall evaluate whether the activities authorized by this Permit caused the loss of hydrology and submit this evaluation to the Department for review.

3.  If the Department determines that the activities authorized by this Permit are contributing to the loss of hydrology, the permittee shall prepare a written plan to correct the loss of hydrology to the watercourse.  Within thirty (30) days of the Department informing permittee about its determination that authorized activities contributed to the loss of hydrology, the permittee shall submit a plan to address the loss of hydrology to the Department for review and approval.  If the Department identifies any deficiencies with permittee's plan, then the permittee shall provide the Department a written response to address the stated deficiencies within fifteen (15) days of receiving written notice of the Department-identified deficiencies, unless the Department extends that timeframe in writing.

4.  The permittee shall implement the Department-approved plan within ninety (90) days of receiving written approval from the Department, unless the Department extends that timeframe in writing.

5.  In the event that loss of hydrology from activities conducted under this Permit cannot be restored, the permittee shall submit a mitigation plan to the Department that sets forth the manner in which full loss of hydrology and associated water will be compensated for.  If the Department identifies any deficiencies with the permittee's mitigation plan, then the permittee shall provide the Department a written response to address the stated deficiencies within fifteen (15) days of receiving written notice of the Department-identified deficiencies, unless the Department extends that timeframe in writing.  The permittee shall implement the Department-approved mitigation plan within ninety (90) days of receiving written approval from the Department, unless the Department extends that timeframe in writing.

6.  Based upon the monitoring results, the Department may terminate monitoring upon written request by the permittee and may extend the monitoring period by providing written notice to the permittee.

**Compensatory Mitigation and Monitoring:**

.  The permittee shall provide copies of the recorded deed restrictions or conservation easements for the compensatory mitigation sites to the Department within sixty (60) days after permit issuance.

AA.  In accordance with Requirement L-5, Environmental Assessment Module 4, Appendix S4-3 Compensatory Offsite Wetland Mitigation Plan, the following compensatory mitigation shall commence prior to or concurrently with wetland impacts requiring compensation as authorized by this permit and be completed within one (1) growing season thereafter:

1.  The permittee is required to compensate for the functional conversion of Palustrine Forested (PFO) and Palustrine Scrub-Shrub (PSS) wetlands associated with the

-9-

proposed project impacts by providing 1.17 acres of successful compensatory wetland mitigation (Permittee-Responsible Mitigation) through wetland enhancement at the Perin Property Mitigation Site in Plainfield Township, Northampton County.

BB.   For at least five (5) years after the Compensatory Mitigation Site restoration activities are completed, the permittee shall monitor the Compensatory Mitigation Site.  Within sixty (60) days of completing the planting plan, the permittee shall submit revised plans to the Department if as-built conditions are significantly different from the original approved plans.  Monitoring reports shall be submitted to the Department at a frequency of every six (6) months for the first two (2) years after mitigation site construction and annually for three (3) years thereafter.

1.   The monitoring reports shall contain information describing the success of the Compensatory Mitigation Site at the time of inspection, an inventory of the surviving plant species and percent aerial coverage, photographs of each site with plans showing the location and orientation of each of the photographs, and a written plan to correct any deficiencies identified during the monitoring phase.

2.   If the Compensatory Mitigation Sites have not achieved design objectives within the monitoring period, the permittee will undertake remedial work to assure establishment of functional wetland habitats.

3.   Based upon the monitoring results, the Department may terminate monitoring upon written request by the permittee and may extend the monitoring period by providing written notice to the permittee.

CC.   For at least five (5) years after the on-site wetland restoration and riparian reforestation activities are completed, the permittee shall monitor the activities.  Within sixty (60) days of completing wetland restoration and riparian reforestation activities, permittee shall submit as-built drawings to the Department for the activities.  Monitoring reports shall be submitted to the Department at a frequency of every six (6) months for the first three (3) years after mitigation site construction and annually for two (2) years thereafter.

1.   The monitoring reports shall contain information describing the success of the on-site wetland restoration and riparian reforestation activities at the time of inspection, an inventory of the surviving plant species and percent aerial coverage, photographs of each site with plans showing the location and orientation of each of the photographs, and a written plan to correct any deficiencies identified during the monitoring phase.

2.   If the on-site wetland restoration and riparian reforestation activities have not achieved design objectives within the monitoring period, the permittee will undertake remedial work to assure establishment of functional wetland habitats.

3.   Based upon the monitoring results, the Department may terminate monitoring upon written request by the permittee and may extend the monitoring period by providing written notice to the permittee.

**Trenchless Technology (TT) Aquatic Resource Crossings:**

DD.  This Permit does not authorize the removal of woody vegetation for the purposes of operation and maintenance of the pipeline in wetland and riparian areas that are proposed to be crossed using trenchless methodology.

EE.  The permittee shall construct and operate the TT crossings at wetlands, streams, and floodways in a manner to prevent a release of drilling fluid to "waters of the Commonwealth," as that term is defined in Section 1 of The Clean Streams Law, 35 P.S. § 691.1.  The permittee shall immediately notify the Department in the event of an Inadvertent Return and immediately activate and implement the Pollution Prevention Control Plans (PPC Plans) including the Inadvertent Returns (IR) and the Geological Hazard Assessment and Mitigation Plan to prevent any impacts to waters of the Commonwealth and other natural resources.

FF.  In accordance with the PPC Plan, the permittee shall take measures to avoid drilling activities in the vicinity of mine voids and utilities.

GG.  In accordance with the PPC Plan, the permittee shall visually monitor the ground surface and waters of the Commonwealth that are located within the vicinity of the TT while drilling operations are occurring.  This monitoring shall include walking, wading, and use of a boat, as necessary, to effectively observe and monitor for the return of materials associated with TT activities to the surface or to waters of the Commonwealth.  If loss of circulation of drilling fluid occurs or drilling fluid pressure is lost, the permittee shall immediately investigate the drilling pathway and surrounding area for an inadvertent return.  If an inadvertent return is discovered, drilling shall immediately cease.

HH.  If an inadvertent return occurs within regulated waters of the Commonwealth, the TT shall only resume after:

1.  A Registered Professional Geologist or Registered Professional Engineer inspects and evaluates the site for the likelihood of another inadvertent return; and

2.  The permittee consults with and receives written approval from the Department.

II.  For those TT sites that experience an inadvertent return and do not have an approved contingency crossing method, the permittee shall submit a permit modification to the Department for review and approval prior to commencing an alternate crossing method.

JJ.  Inadvertent returns that impact or discharge to streams, floodways, or wetlands during the TT operations shall be remediated in compliance with the PPC Plan.  If clean-up operations differ from the submitted plans, prior approval from the Department will be necessary for any modifications to the TT Plan for additional mitigation.

KK.  TT additives which are certified for conformance with ANSI/NSF Standard 60 (Drinking Water Treatment Chemicals - Health Effects) are deemed acceptable to the Department, when used in the manner indicated in the certification of the additive.  All conditions

included as part of the additive s certification should be followed.  A current listing of certified drilling fluids is maintained by NSF at http://www.nsf.org/Certified/PwsChemicals/Listings.asp?ProductFunction=Drilling_Fluid &.  Use of drilling additives certified for conformance with ANSI/NSF Standard 60 does not relieve operators from the requirement to obtain the necessary permits to conduct TT operations.  Use of certified additives does not relieve the operator of liability should an inadvertent return or other pollution of the waters of the Commonwealth occur as a result of drilling operations.

LL. To prevent impacts to water quality from TT operations, it is recommended that: 1) an environmental inspector be on site for the duration of the crossing operation, and 2) a vac truck be available within three (3) hours to respond to inadvertent returns/releases.  In the event of an inadvertent return or release of sediment into a body of water, PFBC Bureau of Law Enforcement Regional Office must be notified within 24 hours.

**Open Trench Aquatic Resource Crossings:**

MM. The permittee shall construct open trench pipeline crossings of streams in dry conditions by constructing during periods of no water flow and/or by installing stream flow bypass systems (flumed or pumped) through the affected area.  Bypass systems must stay in use until streambeds and banks are adequately stabilized.  Downstream flow must be maintained during the construction.

NN. Each stream crossing shall be conducted in an uninterrupted process in the shortest period of time possible.  Impacts to waters of the Commonwealth shall be avoided, to the extent practicable, and if not practicable, then minimized in accordance with the permittee's approved plans.

OO. The permittee may cross dry channels, dry swales, and dry intermittent streams without the use of stream flow bypass systems if the channel has no flow and the stream crossing and stabilization can be completed in dry conditions and within twenty-four (24) hours, unless approved in writing by the Department.  Standby sandbag dams and pumps shall be located on-site and installed in the event of precipitation resulting in channel flow.

PP. The permittee shall implement procedures that take into account the weather forecast and current conditions prior to commencing stream crossing installations to ensure that weather and stream conditions will not result in a pollution event.  Such procedures could include a sign-off sheet documenting that the Environmental Inspector, Foreman, and any other responsible individual agree that the crossing can be constructed during that specific time.

**Habitat Conservation Plans and Threatened and Endangered Species Protection:**

. Prior to conducting any future maintenance activities on the pipeline or right of way which involves disturbance, the permittee shall conduct a current Pennsylvania Natural Diversity Inventory search, shall obtain clearance(s) for any species or resource where a potential impact is identified, provide the avoidance and mitigation plan to the Department prior to

initiating such maintenance work and shall implement, and adhere to all avoidance measures outlined in such clearance(s).

RR. The permittee shall comply with and implement all Avoidance Measures, Conservation Measures, and other recommendations identified by the jurisdictional resource agencies for the protection of any federal or state threatened or endangered species or species of special concern, including:

1. Restrictions and voluntary conservation measures approved by United States Fish & Wildlife Service (USFWS) for the protection of the *Myotis sodalist* (Indiana Bat) and *Myotis septentrionalis* (Northern Long-Eared Bat);

2. Restrictions approved by Pennsylvania Game Commission (PGC) and those found within the most recent Bat Restriction Summary Table for the protection of the *Myotis lucifugus* (Little Brown Bat) and *Perimyotis subflavus* (Tri-Colored Bat);

3. Requested measures set forth by the Department of Conservation and Natural Recourses (DCNR) for the protection of the *Glyceria obtusa* (Blunt Manna-grass), *olidago speciosa* (Showy Goldenrod), and *Platanthera blephariglottis* (White Fringed Orchid) populations;

**Seasonal Restrictions:**

SS. The permittee shall not perform any in-stream work in waters listed by the Pennsylvania Fish and Boat Commission as **Class A wild trout fishery streams** and their tributaries between October 1 and April 1 without the prior written approval of the Pennsylvania Fish & Boat Commission's Division of Environmental Services, 450 Robinson Lane, Bellefonte, PA  16823-9620; telephone 814.359.5147.  This applies to Pohopoco Creek (Poplar Creek through linkage), Sugar Hollow Creek, and UNT to Pohopoco Creek (RM 22.92), and their watersheds.

TT. The permittee shall not perform any in-stream work in waters listed by the Pennsylvania Fish and Boat Commission as **other wild trout streams** or their tributaries between October 1 and December 31 without the prior written approval of the Pennsylvania Fish and Boat Commission's Division of Environmental Services, 450 Robinson Lane, Bellefonte, PA  16823-9620; telephone 814.359.5147.  This applies to all impacted streams in Monroe county.

UU. To minimize the potential for impact to state or federally listed bat species, the permittee shall conduct pipeline construction activities involving ground disturbance (i.e., trenching, grading, mechanized tree felling, and pipeline installation) between April 1 and November 15 within the specified buffers as described in Transco's August 19, 2022 Bat Restriction Summary Table.

VV. To minimize the potential for impact to state or federally listed bat species, the permittee shall conduct tree cutting between November 16 and March 31 within the specified buffers as described in Transco's August 19, 2022 Bat Restriction Summary Table.

**Miscellaneous:**

WW. Pollution of any waterway with harmful chemicals, fuels, oils, greases, bituminous material, acid, or other harmful or polluting materials, is prohibited.

XX. Herbicide spraying of wetlands is not authorized by this Permit.  Additionally, with the exception of a 10-foot wide area centered over the pipeline, maintenance mowing of wetlands is not authorized by this Permit.  The permittee shall place and maintain signs or other demarcation around the boundary of each wetland to clearly delineate the areas where this maintenance is not authorized.  The permittee shall place the signs or other demarcations when all restoration work is completed and prior to permit termination.

YY. This permit does not convey any real property rights or interests or authorization to trespass on privately-owned riparian land.  By accepting this Permit, the permittee certifies that he/she holds title, easement, right, or other real interest in the riparian land.  Any dispute over property ownership and/or right of legal access is solely a matter for private litigation.

. Riprap and stone used throughout the project, including the construction of causeways and coffer dams, shall be free of fines and silts, or other non-erodible material.

AAA. All temporary water withdrawal intake structures and all appurtenant works shall be removed from the watercourse, body of water, floodway, and floodplains as prescribed within the permit application.  Deviations from the approved permit application shall require prior written approval from the Department.

BBB. In accordance with the Erosion and Sediment Control Plan, trench plugs shall be placed at each of the following locations:

1. At ten (10) feet from the top of each bank of a stream
2. At fifty (50) feet from the top of each bank of a stream
3. At ten (10) feet from the edge of a wetland
4. At fifty (50) feet from the edge of a wetland

CCC. Place a minimum of one (1) trench plug at a maximum spacing of 100 feet between trench plugs within a wetland.  Wetland crossings less than fifty (50) feet do not require an internal trench plug.

DDD. If the permittee encounters a groundwater seep during excavation, the permittee shall place a trench plug at ten (10) feet from each side of the seep.

EEE. Any french drains installed as part of temporary de-watering for construction activities shall be removed or otherwise rendered inoperable prior to final site restoration.

FFF. Water pumped from any construction area shall be directed through a sediment trap, basin, or a filter bag discharging into an appropriate vegetated filter area to prevent a discharge of sediment into any waters of the Commonwealth.

GGG. This permit authorizes only those impacts to waters of the Commonwealth that were specifically described in the approved permit application(s) and revisions. Any additional impacts to waters of the Commonwealth from water obstruction or encroachment activities including, but not limited to, temporary access roads, lay-down areas, staging areas, or temporary work spaces, that have not been specifically identified in the approved permit application are not authorized. Any proposed changes regarding the specific impacts will require a permit amendment.

HHH. No deviation in the construction methodology or project design shown on the approved drawings is authorized unless approved through an amendment of this Permit by the Department in writing. If the specific resource crossing has pre-approved primary, secondary, or tertiary methods, the permittee shall send a written notification to the Department and the respective county conservation district prior to the change in method.

III. This permit does not relieve the permittee of the obligation of complying with all Federal, interstate compact, State laws, regulations and standards, and local ordinances applicable to the construction, operation or maintenance of the water obstruction or encroachment.

JJJ. The permittee shall follow the measures specified in the Preparedness, Prevention, and Contingency (PPC) Plan during construction. The permittee shall maintain a copy of the PPC Plan on-site at all times during construction, train all staff to use and implement this plan, and have this plan available to provide at the request of any Department inspector.

KKK. In accordance with the Erosion and Sediment Control Plan, all synthetic erosion control features (e.g. silt fencing, netting, mats), which are intended for temporary use during construction, will be completely removed and properly disposed in a timely manner. Only natural fiber materials which will degrade over time will be used as permanent erosion control measures, or if used temporarily, may be abandoned in place.

LLL. A copy of the Permit, Acknowledgment of Apprisal of Permit Conditions, the Erosion and Sediment Control Plans, and any other applicable plans or State and Federal authorizations, must be maintained on site during construction and available at the work site for inspection upon request by any officer or agent of the Department or any other Federal, State, County or Municipal agency.

DEPARTMENT OF ENVIRONMENTAL PROTECTION

02/03/2023

Domenic Rocco, P.E.                                                Issue Date
Director
Regional Permit Coordination Office

-15-

Permit No. E4583221-002

## ACKNOWLEDGMENT OF APPRISAL OF PERMIT CONDITIONS

I, _____

(Permittee name)

and _____

(Name address and telephone of individual responsible for supervision of work)

_____

acknowledge and accept the general and special conditions of Permit No. 4583221-002, issued to

**Transcontinental Gas Pipe Line Company, LLC**
**2800 Post Oak Blvd**
**Level 11**
**Houston, TX 77056**

which authorizes the permittee to:

**construct, operate and maintain water obstructions and encroachments associated with the Monroe County portion of the Regional Energy Access Expansion Project. The Monroe County portion consists of 13.8 miles of 42-inch diameter pipeline and associated appurtenant structures. The proposed impacts in Monroe County include 205 feet of temporary impacts and 226 feet of permanent impacts to tributary to Pohopoco Creek (HQ-CWF, MF), Sugar Hollow Creek (HQ-CWF, MF), tributaries to McMichael Creek (HQ-CWF, MF), tributaries to Poplar Creek (EV, MF), tributaries to Tunkhannock Creek (HQ-CWF, MF), and tributary to Mud Run (HQ-CWF, MF); 0.69 acres of temporary impacts and 0.82 acres of permanent impacts to floodway; 1.21 acres of temporary impacts and 1.62 acres of permanent impacts to Palustrine Emergent (PEM), Palustrine Scrub-Shrub (PSS), Palustrine Forested (PFO), and Palustrine Open Water (POW). 1.58 acres of permanent wetlands impacts are to exceptional value wetlands.**

**The permittee is required to compensate for the functional conversion of PFO and PSS wetlands associated with the proposed project impacts by providing 1.17 acres of successful compensatory wetland mitigation (Permittee-Responsible Mitigation) through wetland enhancement at the Perin Property Mitigation Site (Latitude: 40° 50' 41"; Longitude: -75° 14' 11") in Plainfield Township, Northampton County.**

**The Monroe County portion of the proposed project starts approximately 0.27 mile north of Rolling Hills Road (T-378) ( Latitude: 40° 53' 48"; Longitude: -75° 22' 14") in Ross Township and extends to Long Pond Road (State Route 4002) ( Latitude: 41° 03' 12"; Longitude: -75° 31' 34") in Tunkhannock Township. The Effort Loop is located in Ross Township, Chestnuthill Township, and Tunkhannock Township, Monroe County.**

_____          _____
 (Permittee signature)                                                  (Date)


_____          _____
 (Signature of individual responsible                                   (Date)
  for supervision of work)

Return To:

Department of Environmental Protection
Regional Permit Coordination Office
Rachel Carson State Office Building
P.O. Box 69206
Harrisburg, PA 17105
RA-EPREGIONALPERMIT@pa.gov

**Permit No. 4583221-002**

## WATER OBSTRUCTION AND ENCROACHMENT PERMIT
## COMPLETION REPORT

Project Location:

County        _____

Municipality   _____

I (We) hereby certify that the _____ work authorized by the above referenced permit _____

_____

_____

_____

was completed on _____ in accordance with the plans approved and that all
                           (Date)

unauthorized obstructions have been removed.

Name:      _____
                     (Typed or printed)

Signature: _____

Title:      _____

Firm:      _____

Date:      _____


Return To:

Department of Environmental Protection
Regional Permit Coordination Office
Rachel Carson State Office Building
P.O. Box 69206
Harrisburg, PA 17105
RA-EPREGIONALPERMIT@pa.gov