# EXHIBIT B



# ENVIRONMENTAL HEARING BOARD
## 2nd Floor, Rachel Carson State Office Building
## 400 Market Street, Post Office Box 8457
## Harrisburg, Pennsylvania 17105-8457

| | |
|---|---|
| CITIZENS FOR PENNSYLVANIA'S FUTURE and DELAWARE RIVERKEEPER NETWORK,<br>    Appellants,<br>v.<br><br>COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF ENVIRONMENTAL PROTECTION,<br>    Appellee,<br><br>*and*<br><br>TRANSCONTINENTAL GAS PIPE LINE COMPANY, LLC,<br>    Permittee. | EHB Docket No._____<br><br><br>ELECTRONICALLY FILED |

## NOTICE OF APPEAL

## APPEAL INFORMATION

1. Name, address, telephone number, and email address (if available) of Appellants:

    Citizens for Pennsylvania's Future
    1429 Walnut Street, Suite 701
    Philadelphia, PA 19102
    297-838-9154
    bast@pennfuture.org
    oneill@pennfuture.org

    Maya K. van Rossum, the Delaware Riverkeeper
    Delaware Riverkeeper Network
    Canal Street, Suite 3701
    Bristol, PA 19007
    215-369-1188 x115
    kacy@delawareriverkeeper.org

2. Describe the subject of your appeal:

1



(a) What action of the Department do you seek review?

(NOTE: If you received written notification of the action, you must attach a copy of the action to this form.)

> Citizens for Pennsylvania's Future ("PennFuture"), Delaware Riverkeeper Network, and Maya K. van Rossum, the Delaware Riverkeeper (collectively, "DRN") seek review of the Department of Environmental Protections ("Department's") issuance of E&S Permit No. ESG830021002-00, DEP Permit No. E4083221-006, and DEP Permit No. E4583221-002 (together, the "Permits") to the Transcontinental Gas Pipe Line Company, LLC ("Transco" or "Permittee") for the Regional Energy Access Expansion Project ("the Project"). Copies of the Permits are attached to this Notice of Appeal as Exhibit A and B, respectively.

(b) Which Department official took the action?

> Domenic Rocco, P.E., Director, Regional Permit Coordination Office

(c) What is the location of the operation or activity which is the subject of the Department's action (municipality, county)?

> The permits apply to the Permittee's activities in Buck Township, Bear Creek Township, Plains Township, Jenkins Township, Kingston Township, Dallas Township, Wyoming Borough, West Wyoming Borough, Laflin Borough in Luzerne County; Ross Township, Chestnuthill Township, Tunkhannock Township in Monroe County; Lower Mount Bethel Township in Northampton County; Lower Makefield Township in Bucks County; and East Whiteland Township in Chester County.

(d) How, and on what date, did you receive notice of the Department's action?

> Notice of the permits' issuance was published in the Pennsylvania Bulletin on Saturday, February 18, 2023 at 53 Pa. B. 948 (Feb. 18, 2023).  Appellants received actual notice of the permits' issuance on February 15, 2023 through a filing Permittee made before the Federal Energy Regulatory Commission requesting authorization to fell trees.

3. Describe your objections to the Department's action in separate, numbered paragraphs.

(NOTE: The objections may be factual or legal and must be specific. If you fail to state an objection here, you may be barred from raising it later in your appeal. Attach additional sheets if necessary.)

> See attachment titled "Objections."

4. Specify any related appeal(s) now pending before the Board. If you are aware of any such appeal(s) provide that information.

> Appellants are unaware of any related appeals at this time.



E-FILED
03/14/2023
PENNSYLVANIA ENVIRONMENTAL HEARING BOARD

Dated: March 14, 2023                    Respectfully submitted,


/s/ Emma H. Bast_____                    /s/ Kacy C. Manahan_____
Emma H. Bast                              Kacy C. Manahan
Pa. I.D. No. 330854                       Pa. I.D. No. 329031
bast@pennfuture.org
                                          Delaware Riverkeeper Network
/s/ Jessica R. O'Neill___                 Canal Street, Suite 3701
Jessica R. O'Neill                        Bristol, PA 19007
Pa. I.D. No. 205934                       215-369-1188 x115
oneill@pennfuture.org                     kacy@delawareriverkeeper.org


Citizens for Pennsylvania's               *Counsel for Appellants*
Future                                    *Delaware Riverkeeper Network*
1429 Walnut Street, Suite 701             *and Maya K. van Rossum, the*
Philadelphia, PA 19102                    *Delaware Riverkeeper*
297-838-9154


*Counsel for Appellant Citizens*
*for Pennsylvania's Future*



## **OBJECTIONS**

1.  The Department's issuance of the Permits was in error because the Permits' terms allow degradation of designated Exceptional Value stream Poplar Creek (EV, MF), and Tunkhannock Creek (EV, MF), their tributaries, and adjacent wetlands in violation of 25 Pa. Code § 93.4a(d).

    a.  The Department's issuance of the Permits was further in error because it was technically deficient by not properly considering the more protective existing use designation of Exceptional Value for Tunkhannock Creek in Monroe County.

2.  The Department's issuance of the Permit was in error because the Permit's terms allow degradation of designated High Quality streams tributary to Pohopoco Creek (HQ-CWF, MF), Sugar Hollow Creek (HQ-CWF, MF), McMichael Creek (HQ-CWF, MF), tributaries to Poplar Creek (EV, MF), Mud Run (HQ-CWF, MF), Shades Creek (HQ-CWF, MF), Little Shades Creek (HQ-CWF, MF), Meadow Run (HQ-CWF, MF), Bear Creek (HQ-CWF, MF), Bear Creek (HQ-CWF, MF), Little Bear Creek (HQ-CWF, MF), Mill Creek (HQ-CWF, MF), or their tributaries, and adjacent wetlands, without adequately establishing that the lower water quality is necessary to accommodate an important economic or social development. 25 Pa. Code §§ 93.4a(c), 93.4c(b)(1)(iii).

3.  The Department's issuance of the Permit was in error because the Permit's terms allow degradation of and permanent impact to designated Exceptional Value wetlands Palustrine Emergent (PEM), Palustrine Scrub-Shrub (PSS), Palustrine Forested (PFO), and Palustrine Open Water (POW) in violation of the antidegradation requirements of 25 Pa. Code § 93.4a.

E-FILED
03/14/2023
PENNSYLVANIA ENVIRONMENTAL HEARING BOARD

4.      The Department acted contrary to law and abused its discretion by issuing the Permits because Transco failed to demonstrate that its proposed erosion and sediment control ("E&S") and post construction stormwater management ("PCSM") BMPs will prevent thermal impacts, prevent sedimentation to the water bodies affected by the project, prevent an increase in the rate of stormwater runoff; minimize the increase in the volume of runoff; maximize the protection of existing drainage features and existing vegetation; minimize soil compaction. 25 Pa. Code § 102.11(a)(2); 25 Pa. Code § 102.8(b). Consequently, Transco failed to demonstrate that the water quality of the affected Exceptional Value and High Quality waters, their tributaries and adjacent wetlands, and designated Exceptional Value Wetlands, will be maintained and protected consistent with the antidegradation requirements of the Pennsylvania Code. 25 Pa. Code §§ 93.4a–93.4c; 25 Pa. Code § 105.17(1)(iii); 25 Pa. Code § 105.18(a)(2).

5.      The Department acted contrary to law and abused its discretion by issuing the Permits because the Permits' terms lack monitoring and documentation requirements sufficient to ensure that the water quality of the water bodies affected by the Project will be maintained and protected consistent with the antidegradation requirements of the Pennsylvania Code. 25 Pa. Code §§ 93.4a–93.4c; 25 Pa. Code § 105.17(1)(iii); 25 Pa. Code § 105.18(a)(2).

6.      The Department acted contrary to law, abused its discretion, and failed to discharge its duties as a trustee under Article 1, § 27 (the "Environmental Rights Amendment" or "ERA") of the Pennsylvania Constitution by issuing the Permits because the Permits will allow for the degradation, diminution, or depletion of the natural resources contained in the public trust protected by the ERA. Pa. Const. Art. I, § 27; *Robinson Township v. Commonwealth*, 83 A.3d 901 (Pa. 2013).

7.   Appellants reserve the right to amend this Notice of Appeal to include additional objections

that may arise during further investigations and discovery in this matter.



## SIGNATURE PAGE

By filing this Notice of Appeal with the Environmental Hearing Board, I hereby certify that the information submitted is true and correct to the best of my information and belief. Additionally, I certify that a copy of this Notice of Appeal was served upon each of the individuals indicated in the Certificate of Service on the date below.

Dated: March 14, 2023

*/s/ Emma H. Bast*___
Emma H. Bast
Pa. I.D. No. 330854
Citizens for Pennsylvania's Future
1429 Walnut Street, Suite 701
Philadelphia, PA 19102
267-838-9154
bast@pennfuture.org

Jessica. R. O'Neill
oneill@pennfuture.org
Pa. I.D. No. 205934

*Counsel for Appellant Citizens for Pennsylvania's Future*

*/s/ Kacy C. Manahan*___
Kacy C. Manahan
Pa. I.D. No. 329031
Delaware Riverkeeper Network
925 Canal Street, Suite 3701
Bristol, PA 19007
215-369-1188 x115
kacy@delawareriverkeeper.org

*Counsel for Appellants Delaware Riverkeeper Network and Maya K. van Rossum, the Delaware Riverkeeper*



# COMMONWEALTH OF PENNSYLVANIA
## BEFORE THE ENVIRONMENTAL HEARING BOARD

| | |
|---|---|
| CITIZENS FOR PENNSYLVANIA'S FUTURE and DELAWARE RIVERKEEPER NETWORK,<br>      Appellants,<br>v. | EHB Docket No._____ |
| COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF ENVIRONMENTAL PROTECTION,<br>      Appellee, | ELECTRONICALLY FILED |
| *and* | |
| TRANSCONTINENTAL GAS PIPE LINE COMPANY, LLC,<br>      Permittee. | |

## CERTIFICATE OF SERVICE

      I, the undersigned, certify that a true and correct copy of the foregoing Notice of Appeal was filed with the Pennsylvania Environmental Hearing Board and was served on the following on the date listed below:

*Via Certified Mail*

Department of Environmental Protection
Office of Chief Counsel
Rachel Carson State Office Building, 16th Fl.
400 Market Street
P.O. Box 8464
Harrisburg, PA  17105-8464

*Via Certified Mail*

Transcontinental Gas Pipe Line Company, LLC
c/o Joseph Dean
2800 Post Oak Blvd
Level 11
Houston, TX 77056

Date:   March 14, 2023

      */s/ Emma H. Bast_____*
      Emma H. Bast
      Pa. I.D. No. 330854

      *Counsel for Appellant Citizens for Pennsylvania's Future*



# Exhibit A

 

**pennsylvania**
DEPARTMENT OF ENVIRONMENTAL
PROTECTION

February 3, 2023

Transcontinental Gas Pipe Line Company, LLC
c/o Joseph Dean
2800 Post Oak Blvd
Level 11
Houston, TX 77056

Re:  Erosion and Sediment Control (E&S) Permit Issuance
     Regional Energy Access Expansion Project
     E&S Permit No. ESG830021002-00
     APS No. 1036787; AUTH ID No. 1350583
     Buck Township, Bear Creek Township, Plains Township, Jenkins Township, Kingston
     Township, Dallas Township, Wyoming Borough, West Wyoming Borough, &
     Laflin Borough, Luzerne County
     Ross Township, Chestnuthill Township, & Tunkhannock Township, Monroe County
     Lower Mount Bethel Township, Northampton County
     Lower Makefield Township, Bucks County
     East Whiteland Township, Chester County

Dear Mr. Dean:

Under the authority of Pennsylvania's Clean Streams Law, the Department of Environmental
Protection (DEP) approves your application and issues the attached Erosion and Sediment Control
Permit for Earth Disturbance Associated with Oil and Gas Exploration, Production, Processing, or
Treatment Operations or Transmission Facilities ("E&S Permit").  The latest versions of the permit
application and all supporting documents, including the Erosion and Sediment Control (E&S) Plan
and Post-Construction Stormwater Management (PCSM) Plan, are incorporated into this approval,
including the following plan drawings:

- The E&S Plan drawings for:

  o Soil Erosion & Sediment Control and Site Restoration Plan Regional
    Energy Access Expansion Project Regional Energy Lateral dated March 31,
    2021 and last revised July 8, 2022;
  o Soil Erosion & Sediment Control and Site Restoration Plan Regional
    Energy Access Expansion Project Effort Loop dated March 31, 2021 and
    last revised July 8, 2022;
  o Soil Erosion & Sediment Control Plan Regional Energy Access Expansion
    Project Compressor Station 200 dated March 31, 2021 and last revised
    March 1, 2022;



Transcontinental Gas Pipe Line Company, LLC   - 2 -   February 3, 2023

  o Soil Erosion & Sediment Control Plan Regional Energy Access Expansion Project Compressor Station 515 dated March 31, 2021 and last revised March 1, 2022;

  o Soil Erosion & Sediment Control and Site Restoration Plan Regional Energy Access Expansion Project Delaware River Regulator dated March 32, 2021;

  o Soil Erosion & Sediment Control and Site Restoration Plan Regional Energy Access Expansion Project Mainline A Regulator dated March 31, 2021 and last revised March 1, 2022;

- The PCSM Plan drawings for:

  o Post Construction Stormwater Management Plan, MLV-515RA20 Main Line Valve Site Plan, dated March 31, 2021 and last revised July 8, 2022;

  o Post Construction Stormwater Management Plan, MLV-515RA30 Wyoming Avenue Main Line Valve Site Plan, dated March 31, 2021 and last revised March 1, 2022;

  o Post Construction Stormwater Management Plan, Carverton Tie-In Site Plan, dated March 31, 2021 and last revised March 1, 2022;

  o Post Construction Stormwater Management Plan, Hildebrandt Tie-In/MLV-515RA40 and Lower Demunds REL Tie-In Site Plan, dated March 31, 2021 and last revised March 1, 2022;

  o Post Construction Stormwater Management Plan,S5-T5/S6-T6 and S4A-T5/S4-T5 Stream Stabilization, dated March 31, 2021 and last revised March 1, 2022;

  o Post Construction Stormwater Management Plan, MLV-505LD86 Sugar Hollow Mainline Valve Yard, dated March 31, 2021 and last revised July 8, 2022;

  o Post Construction Stormwater Management Plan, Regional Energy Access Expansion Project Compressor Station 200, dated March 31, 2021 and last revised March 1, 2022;

  o Post Construction Stormwater Management Plan, Regional Energy Access Expansion Project Compressor Station 515, dated March 31, 2021 and last revised March 1, 2022;

Your E&S Permit, which has been assigned E&S Permit No. ESG830021002-00, is effective on **February 3, 2023** and will expire on **February 2, 2028**. If stormwater discharges associated with earth disturbance activities are expected to continue beyond the expiration date of the E&S Permit, you must apply to renew your permit at least 180 days prior to the expiration date, unless otherwise approved by DEP.

Please review the enclosed E&S Permit and the referenced online attachments carefully and contact this office if you have any questions. Please pay particular attention to the following requirements of the permit:



Transcontinental Gas Pipe                    - 3 -                    February 3, 2023
Line Company, LLC

- Operators who are not the permittee shall be co-permittees.  Following approval of coverage, the permittee shall require any operator, as defined in this permit, that was not identified on the application for permit coverage to complete and sign the Co-Permittee Acknowledgement for Chapter 102 Permits form (3800-FM-BCW0271a) prior to commencing earth disturbance activities covered by this permit.  The permittee shall complete and sign the Co-Permittee Acknowledgement form, retain the form for a period no less than three (3) years, and submit the form to the Department or conservation district prior to the operator engaging in earth disturbance activities.

- For earth disturbance activities authorized by this permit, at least one pre-construction meeting is required.  The permittee shall contact DEP to schedule the pre-construction meeting and provide at least 7 calendar day notice of the pre-construction meeting to all invited attendees by telephone, certified mail or electronic means, unless otherwise approved by the Department in writing.  The notification must include the project type, target date for earth disturbance, permit number, site name, Township, County and point of contact for the operator.  Permittees, co- permittees, operators, and licensed professionals, or designees responsible for earth disturbance activity, including implementation of E&S, PCSM and PPC Plans and critical stages of implementation of the approved PCSM Plan, shall attend the pre-construction meeting(s).  Permittees, co-permittees, operators and licensed professionals are responsible for ensuring that all activities on the site comply with the requirements of the permit.

- The permittee shall visually inspect the project site weekly, at a minimum, and within 24 hours each stormwater event throughout the duration of construction and until the receipt and acknowledgement of the NOT by the Department or conservation district.  The visual site inspections shall be completed by qualified personnel, trained and experienced in erosion and sediment control, to ascertain that E&S BMPs are properly constructed and maintained to effectively minimize pollution to waters of the Commonwealth.

- The permittee shall document all visual inspection on DEP's Chapter 102 Visual Site Inspection Report (3800-FM-BCW0271d).  All information on the Visual Site Inspection Report must be completed.  The report shall be completed by qualified personnel, trained and experienced in erosion and sediment control.  Visual inspection reports shall be submitted to the Department or conservation district upon request.  All visual inspection reports shall be made available on the project site for review by the Department or conservation district.

- For any property containing a PCSM BMP, the permittee shall record an instrument with the recorder of deeds which will assure disclosure of the PCSM/SR BMP and the related obligations in the ordinary course of a title search of the subject property.  The recorded instrument must identify the PCSM/SR BMP, provide for necessary access related to long-term operation and maintenance for PCSM/SR BMPs and provide notice that the responsibility for long-term operation and maintenance of the PCSM/SR BMP is a



covenant that runs with the land that is binding upon and enforceable by subsequent grantees, and provide proof of filing with the NOT under 25 Pa. Code § 102.7(b)(5).

Unless a later date is approved by the Department in writing, the permittee shall record an instrument as required under 25 Pa. Code § 102.8(m)(2) within 45 calendar days from the date of issuance of this permit or authorization. Unless the Department authorizes a different procedure, the long-term operation and maintenance plan shall be recorded along with the instrument. Unless a later date in approved by the Department, in writing, the permittee shall provide the Department or conservation district with the date and place of recording along with a reference to the docket, deed book or other record, within 90 calendar days from the date of issuance of this permit or authorization.

- Upon permanent stabilization of earth disturbance activity under § 102.22(a)(2) (relating to permanent stabilization) and installation of BMPs in accordance with the authorized plan prepared and implemented in accordance with §§ 102.4 and 102.8 (related to erosion and sediment control requirements; and PCSM requirements), the permittee shall submit a NOT to the Department or conservation district.

  Until the permittee has received written authorization of the NOT, the permittee will remain responsible for compliance with the permit terms and conditions, including long term operation and maintenance of all PCSM BMPs on the project site in accordance with 25 Pa. Code § 102.8(m) (relating to PCSM long-term operation and maintenance requirements). The Department or conservation district will conduct a final inspection and approve or deny the NOT within 30 calendar days of receipt in accordance with 25 Pa. Code § 102.7(c) (relating to permit termination).

Any person aggrieved by this action may challenge it in an appropriate legal forum. The state and federal courts are currently split on whether the proper forum to challenge a Department permit, authorization or approval for a facility or activity subject to the Federal Natural Gas Act, 15 U.S.C. §§ 717 *et seq.*, is the United States Court of Appeals for the Third Circuit or the Pennsylvania Environmental Hearing Board. *See Delaware Riverkeeper Network v. Sec'y, Dep't of Envtl. Prot.*, 833 F.3d 360 (3d Cir. 2016); *Delaware Riverkeeper Network v. Sec'y, Dep't of Envtl. Prot.*, 903 F.3d 65 (3d Cir. 2018), *cert. denied,* 139 S. Ct. 1648, 203 L. Ed. 899 (2019) and *Cole v. Dep't of Envtl. Prot.,* 1577 C.D. 2019 WL 2420667 (Pa. Cmwlth Ct. June 15, 2021) (Pet. for Allowance of Appeal pending); *West Rockhill Twp. v. Dep't of Envtl. Prot.*, No. 1595 C.D. 2019 WL 2426014 (Pa. Cmwlth. June 15, 2021) (Pet. for Allowance of Appeal pending).

You should promptly consult with a lawyer on the steps to take if you wish to challenge this action and how to best protect your interests.

IMPORTANT LEGAL RIGHTS ARE AT STAKE. YOU SHOULD SHOW THIS DOCUMENT TO A LAWYER AT ONCE.



Transcontinental Gas Pipe      - 5 -      February 3, 2023
Line Company, LLC

If you have additional questions, please contact Michael Luciani by e-mail at mluciani@pa.gov or by telephone at 570-826-2597 and refer to Permit No. ESG830021002-00.

Sincerely,

Domenic Rocco, P.E.
Director
Regional Permit Coordination Office

Enclosures:      E&S Permit
           Visual Site Inspection Report Form and Instructions (online)
           Co-Permittee Acknowledgement Form and Instructions (online)
           Notice of Termination Form (online)
           Riparian Forest Buffer Reporting Form (online)

cc:      Kevin C. Clark, P.E., BAI Group, LLC (by email)
       Luzerne Conservation District (by email)
       Monroe County Conservation District (by email)
       Northampton County Conservation District (by email)
       Bucks County Conservation District (by email)
       Chester County Conservation District (by email)
       York County Conservation District (by email)
       Buck Township (by email)
       Bear Creek Township (by email)
       Plains Township (by email)
       Jenkins Township (by email)
       Laflin Borough (by email)
       Wyoming Borough (by email)
       West Wyoming Borough (by email)
       Kingston Township (by email)
       Dallas Township (by email)
       Ross Township (by email)
       Chestnuthill Township (by email)
       Tunkhannock Township (by email)
       Lower Mount Bethel Township (by email)
       Lower Makefield Township (by email)
       East Whiteland Township (by email)
       Northeast Regional Waterways and Wetlands PM (by email)
       Southeast Regional Waterways and Wetlands PM (by email)
       Southcentral Regional Waterways and Wetlands PM (by email)



E-FILED
03/14/2023
PENNSYLVANIA ENVIRONMENTAL HEARING BOARD

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF ENVIRONMENTAL PROTECTION**
**REGIONAL PROGRAM COORDINATION OFFICE**



**pennsylvania**
DEPARTMENT OF ENVIRONMENTAL
PROTECTION

## EROSION AND SEDIMENT CONTROL (E&S) PERMIT FOR EARTH DISTURBANCE ASSOCIATED WITH OIL AND GAS EXPLORATION, PRODUCTION, PROCESSING, OR TREATMENT OPERATIONS OR TRANSMISSION FACILITIES

### E&S PERMIT NO: <u>ESG830021002-00</u>

In compliance with the provisions of Pennsylvania's Clean Streams Law, as amended, 35 P.S. Section 691.1 *et seq.*, 58 Pa.C.S. §§ 3201-3274 (2012 Oil and Gas Act) and the regulations promulgated thereto, including 25 Pa. Code Chapters 78a and 102, and Sections 1905-A and 1917-A of the Administrative Code of 1929, 71 P.S. Sections 510-5, 510-17 and 510-20,

| <u>Permittee</u> | <u>Project Site</u> |
|---|---|
| **Transcontinental Gas Pipe Line Company, LLC**<br>**2800 Post Oak Blvd**<br>**Level 11**<br>**Houston, TX 77056** | **Regional Energy Access Expansion Project**<br>**Luzerne, Northampton, Monroe, Chester & Bucks**<br>**Counties**<br>**Earth Disturbance: 689.8 acres** |

is authorized to discharge from earth disturbance activities associated with oil and gas activities to <u>Abrahams Creek (CWF, MF), tributaries to Abrahams Creek (CWF, MF), tributaries to Gardner Creek (CWF), Gardner Creek (CWF, MF), Susquehanna River (WWF, MF), tributary to Susquehanna River (CWF, MF), Trout Brook (CWF, MF), tributary to Trout Brook (CWF, MF), tributaries to Toby Creek (CWF, MF), Stony Run (HQ-CWF, MF), Shades Creek (HQ-CWF, MF), tributaries to Shades Creek (HQ-CWF, MF), Little Shades Creek (HQ-CWF, MF), tributaries to Little Shades Creek (HQ-CWF, MF), Snider Run (HQ-CWF, MF), tributary to Meadow Run (HQ-CWF, MF), Meadow Run (HQ-CWF, MF), Bear Creek (HQ-CWF, MF), tributary to Little Bear Creek (HQ-CWF, MF), Mill Creek (HQ-CWF, MF), tributary to Mill Creek (HQ-CWF, MF), Lake Creek (HQ-CWF, MF), Princess Run (CWF, MF), Weir Creek (CWF, MF), tributary to Weir Creek (CWF, MF), tributary to McMichael Creek (EV, MF), tributary to McMichael Creek (HQ-CWF, MF), tributary to Pohopoco Creek (HQ-CWF, MF), Sugar Hollow Creek (HQ-CWF, MF), Poplar Creek (EV, MF), tributary to Poplar Creek (EV, MF), tributary to Mud Run (HQ-CWF, MF), Mud Run (HQ-CWF, MF) Mud Pond Run (EV, MF), Tunkhannock Creek (HQ-CWF, MF), tributary to Tunkhannock Creek (HQ-CWF, MF), Valley Creek (EV, MF), Shades Creek (HQ-CWF, MF), & Stony Run (HQ-CWF, MF)</u> in accordance with the application submitted to the Department of Environmental Protection (Department) and accompanying plans and additional information, as revised, subject to the requirements specified herein.

THIS PERMIT SHALL BECOME EFFECTIVE ON <u>  February 3, 2023  </u>

THIS PERMIT SHALL EXPIRE AT MIDNIGHT ON <u>  February 2, 2028  </u>

The authority granted by this permit is subject to the following further qualifications:

1.  This permit is issued for earth disturbances associated with oil and gas activities subject to the use of erosion and sediment control (E&S) and post-construction stormwater management (PCSM) best management practices (BMPs) to control discharges composed entirely of stormwater to surface waters identified in the application. Authorization to discharge is subject to implementation of the plans and additional information submitted as part of the application. The permit incorporates by reference the application and any other attachments, reports, plans, plan drawings, supplements, and other materials submitted by the applicant, as revised.

2.  The permittee and co-permittee(s) must comply with all terms and conditions of this permit. Any permit noncompliance constitutes a violation of The Clean Streams Law and is grounds for enforcement action; for permit termination, revocation, reissuance, or modification, or for denial of a permit or permit renewal.

**REGIONAL PERMIT COORDINATION OFFICE**



E-FILED
03/14/2023
PENNSYLVANIA ENVIRONMENTAL HEARING BOARD

3.  A complete application for renewal of this permit, or notice of intent to cease discharging by the expiration date, must be submitted to the Department at least 180 calendar days prior to the above expiration date (unless permission has been granted by the Department for submission at a later date), using the appropriate E&S permit application form.

    In the event that a timely and complete application for renewal has been submitted and the Department is unable, through no fault of the permittee, to reissue the permit before the above expiration date, the terms and conditions of this permit will be automatically continued and will remain fully effective and enforceable against the discharger until DEP takes final action on the pending permit application.

**ISSUANCE DATE:**

Domenic Rocco, P.E.
**Director**

**February 3, 2023**

**Regional Permit Coordination Office**

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF ENVIRONMENTAL PROTECTION**

Permit No. ESG830021002-00

03/14/2023

E-FILED

### PART A – EFFLUENT LIMITATIONS, RECORDKEEPING AND REPORTING REQUIREMENTS

I.   **DEFINITIONS**

*ABACT* – Antidegradation Best Available Combination of Technologies – Environmentally sound and cost effective treatment, land disposal, pollution prevention and stormwater reuse BMPs that individually or collectively manage the difference in the net change in stormwater volume, rate, and quality for storm events up to and including the 2-year/24-hour storm when compared to the stormwater rate, volume, and quality prior to the earth disturbance activities to maintain and protect the existing quality of the receiving surface waters of this Commonwealth.

*Accelerated Erosion* means the removal of the surface of the land through the combined action of human activities and the natural processes, at a rate greater than would occur because of the natural process alone.

*Act 167* means the Storm Water Management Act (32 P.S. § § 680.1—680.17)

*Best Management Practices* (BMPs) means activities, facilities, measures, planning or procedures used to minimize accelerated erosion and sedimentation and manage stormwater to protect, maintain, reclaim, and restore the quality of waters and the existing and designated uses of waters within this Commonwealth before, during, and after earth disturbance activities.

*Clean Streams Law* means the Act of June 22, 1937, P.L. 1987, No. 394, as amended.

*Conservation District* means a conservation district, as defined in section 3(c) of the Conservation District Law (3 P.S. § 851(c)), which has the authority under a delegation agreement executed with DEP to administer and enforce all or a portion of the erosion, sediment, and stormwater management program in this Commonwealth.

*DEP or Department* means the Pennsylvania Department of Environmental Protection.

*Designated Uses* means those uses specified in 25 Pa. Code §§ 93.4(a) and 93.9a—93.9z for each water body or segment, whether or not they are being attained.

*Disturbed area* means unstabilized land area where an earth disturbance activity is occurring or has occurred.

*Earth Disturbance Activity* means a construction or other human activity which disturbs the surface of the land, including land clearing and grubbing, grading, excavations, embankments, land development, agricultural plowing or tilling, operation of animal heavy use areas, timber harvesting activities, road maintenance activities, oil and gas activities, well drilling, mineral extraction, and the moving depositing, stockpiling, or storing of soil, rock or earth materials.

*Erosion and Sediment Control (E&S) Plan* means a site-specific plan consisting of both drawings and a narrative that identifies BMPs to minimize accelerated erosion and sedimentation before, during and after earth disturbance activities.

*Exceptional Value Waters* means surface waters of high quality which satisfy 25 Pa. Code § 93.4b(b) (relating to antidegradation).

*High Quality Waters* means surface waters having quality which exceeds levels necessary to support propagation of fish, shellfish, and wildlife and recreation in and on the water by satisfying 25 Pa. Code § 93.4b(a).

*Licensed Professional* means professional engineers, landscape architects, geologists and land surveyors licensed to practice in this Commonwealth.

*Municipality* means a county, city, borough, town, township, school district, institution or authority or another public body created by or pursuant to State law. For purposes of this definition, town includes an incorporated town.

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF ENVIRONMENTAL PROTECTION

E-FILED
03/14/2023

Permit No. ESG830021002-00

*Notice of Termination (NOT)* means a request, on a form provided by DEP, to terminate coverage under an Erosion and Sediment Control Permit for Stormwater Discharges Associated with Construction Activities or other permits under Chapter 102.

*Oil and gas activities* means earth disturbance associated with oil and gas exploration, production, processing or treatment operations or transmission facilities.

*Operator* means a person who has one or more of the following: (i) oversight responsibility of earth disturbance activity on a project site or a portion thereof who has the ability to make modifications to the E&S Plan, PCSM Plan or site specifications, (ii) day-to-day operational control over earth disturbance activity on a project site or a portion thereof to ensure compliance with the E&S Plan or PCSM Plan.

*Permanent Stabilization* means long-term protection of soil and water resources from accelerated erosion.

*Permittee* means the person(s) identified in this permit as responsible for the discharges of stormwater associated with construction activity who is jointly and individually responsible together with the co-permittee(s) for compliance with all conditions of this permit and applicable laws.

*Person* means any operator, individual, public or private corporation, partnership, association, municipality or political subdivision of this Commonwealth, institution, authority, firm, trust, estate, receiver, guardian, personal representative, successor, joint venture, joint stock company, fiduciary; department, agency or instrumentality of State, Federal or local government, or an agent or employee thereof; or any other legal entity.

*Pollutant* means any contaminant or other alteration of the physical, chemical, biological or radiological integrity of surface water that causes or has the potential to cause pollution as defined in Section 1 of the Clean Streams Law (35 P.S. § 691.1).

*Post Construction Stormwater* mean stormwater associated with a project site after the earth disturbance activity has been completed and the project site is permanently stabilized.

*Post-Construction Stormwater Management (PCSM) Plan* means a site-specific plan consisting of both drawings and a narrative that identifies BMPs to manage changes in stormwater runoff volume, rate and water quality after earth disturbance activities have ended and the project site is permanently stabilized.

*Preparedness, Prevention and Contingency (PPC) Plan* means a written plan that identifies an emergency response program, material and waste inventory, spill and leak prevention and response, inspection program, housekeeping program, security and external factors, and that is developed and implemented at the construction site to control potential discharges of pollutants other than sediment into waters of this Commonwealth.

*Project site* means the entire area of activity, development, lease or sale including (i) the area of earth disturbance activity, (ii), the area planned for an earth disturbance activity, and (iii) other areas which are not subject to an earth disturbance activity.

*Riparian Buffer* means a BMP that is an area of permanent vegetation along surface waters.

*Riparian Forest Buffer* means a type of riparian buffer that consists of permanent vegetation that is predominantly native trees, shrubs and forbs along surface waters that is maintained in a natural state or sustainably managed to protect and enhance water quality, stabilize stream channels and banks, and separate land use activities from surface waters.

*Stabilization* means the proper placing, grading, constructing, reinforcing, lining, and covering of soil, rock or earth to ensure their resistance to erosion, sliding or other movement.

*Stormwater* means runoff from precipitation, snowmelt, surface runoff and drainage.

*Surface waters* means perennial and intermittent streams, rivers, lakes, reservoirs, ponds, wetlands, springs, natural seeps and estuaries, excluding water at facilities approved for wastewater treatment such as wastewater treatment impoundments, cooling water ponds and constructed wetlands used as part of a wastewater treatment process.

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF ENVIRONMENTAL PROTECTION**                              **Permit No. ESG830021002-00**

*Waters of the Commonwealth* means rivers, streams, creeks, rivulets, impoundments, ditches, water courses, storm sewers, lakes, dammed water, ponds, springs and all other bodies or channels of conveyance of surface and underground water, or parts thereof, whether natural or artificial, within or on the boundaries of this Commonwealth.

*Wetlands* means areas that are inundated or saturated by surface water or groundwater at a frequency and duration sufficient to support, and that under normal circumstances do support, a prevalence of vegetation typically adapted for life in saturated soil conditions, including swamps, marshes, bogs and similar areas.

E-FILED
03/14/2023

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF ENVIRONMENTAL PROTECTION**                    Permit No. ESG830021002-00

II.    **EFFLUENT LIMITATIONS**

A.    Except as required by 25 Pa. Code § 102.11(c), this permit establishes narrative performance-based effluent limitations in the form of BMPs identified in E&S Plans, PCSM Plans, and PPC Plans, which control the volume, rate, and quality of stormwater runoff and associated pollutants from being discharged into surface waters, and which replicate pre-construction infiltration and runoff conditions to the maximum extent practicable.

1.    Operators of all earth disturbance activities shall implement and maintain E&S and PCSM BMPs and other pollution prevention measures required by this permit to minimize accelerated erosion and sedimentation before, during, and after construction activities.

2.    E&S BMPs shall be implemented to meet the standards and specifications identified in the Department's regulations, including 25 Pa. Code § 102.4 (relating to Erosion and Sediment Control requirements) and 102.11 (a)(1) (relating to general requirements), and identified in the Department's Erosion and Sediment Pollution Control Program Manual, Document Number: 363-2134-008, as amended and updated, or an approved alternative that is at least as effective.

3.    PCSM BMPs shall be implemented to meet the standards and specifications identified in the Department's regulations, including 25 Pa. Code § 102.8 (relating to PCSM requirements) and 102.11 (a)(2), and identified in the Department's Pennsylvania Stormwater Best Management Practices Manual, Document Number 363-0300-002, as amended and updated, or an approved alternative that is as at least as effective.

4.    The E&S Plan, PCSM Plan, and PPC Plan shall identify appropriate BMPs that will be implemented to ensure that existing and designated uses of surface waters are protected and maintained.

5.    The permittee shall maintain the E&S Plan, PCSM Plan, PPC Plan, and other documents required by this permit at the project site and shall make these documents available for review by the Department, conservation district, or other authorized local, state, or federal agent or representative.

6.    Discharges to surface waters identified as impaired waters must be managed with non-discharge and/or ABACT BMPs.

B.    Applicable Effluent Limitations

Activities covered under this permit must comply with applicable effluent limitations established in 25 Pa. Code Chapters 91, 93, 96, 102, and 105 and any applicable federal law or regulation.

C.    Water Quality-Based Effluent Limitations

Water quality-based effluent limitations are applicable to activities conducted under this permit when required under applicable state and federal law or regulation to ensure that the water quality standards of the receiving water are attained. Activities conducted under this permit shall not result in a violation of such water quality standards.

III.   **MONITORING, INSPECTION and REPORTING**

A. Monitoring

1.    The Department or conservation district may require additional monitoring of stormwater discharges and/or disturbed soils where an increased risk of potential pollution is present, or pollution is suspected to be occurring from an earth disturbance activity subject to this permit.

2.    The Department or conservation district may require monitoring of stormwater discharges for Total Suspended Solids (TSS) turbidity or other pollutants when DEP suspects the discharge of pollutants from an earth disturbance activity covered by this permit.

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF ENVIRONMENTAL PROTECTION**                              Permit No. ESG830021002-00

3.  The permittee shall commence such monitoring upon notification from the Department or conservation district.  Samples and measurements taken as required herein shall be representative of the volume and nature of the monitored discharge.

B.  Recording the Results

For each measurement or sample taken pursuant to the requirements of this permit, the permittee shall record the following information:

1.  The date, exact place, and time of sampling or measurements.

2.  The individual(s) who performed the sampling or measurements.

3.  The date(s) analyses were performed.

4.  The individual(s) who performed the analyses.

5.  The analytical techniques or methods used.

6.  The results of such analysis.

C.  Visual Inspections

1.  The permittee shall visually inspect the project site weekly, at a minimum, and within 24 hours each stormwater event throughout the duration of construction and until the receipt and acknowledgement of the NOT by the Department or conservation district.  The visual site inspections shall be completed by qualified personnel, trained and experienced in erosion and sediment control, to ascertain that E&S BMPs are properly constructed and maintained to effectively minimize pollution to waters of the Commonwealth.

2.  The permittee shall document all visual inspection on DEP's Chapter 102 Visual Site Inspection Report (3800-FM-BCW0271d).  All information on the Visual Site Inspection Report must be completed.  The report shall be completed by qualified personnel, trained and experienced in erosion and sediment control.  Visual inspection reports shall be submitted to the Department or conservation district upon request.  All visual inspection reports shall be made available on the project site for review by the Department or conservation district.

3.  The permittee or permittee(s) shall prepare a long-term operation and maintenance schedule which provides for inspection of PCSM BMPs, including repair, replacement, or other routine maintenance of the PCSM BMPs to ensure proper function and operation.  The permittee shall document each inspection and all BMP repair and maintenance activities and how access to the PCSM BMPs will be provided.

4.  Each inspection must include an evaluation of E&S, PCSM and PPC BMPs, as applicable, to determine whether the BMPs are adequate and properly implemented in accordance with the terms of this permit or whether additional control measures are needed.  If needed, such measures shall be implemented immediately, and the Department or conservation district shall be notified.

5.  Each inspection must include an evaluation of equipment needed to implement E&S, PCSM, and PPC Plans, such as spill response equipment, as applicable.

6.  If the permittee discovers conditions in the field that pose a threat of pollution to waters of the Commonwealth, the permittee shall immediately implement remedial measures to correct the conditions and cease earth disturbance activities.  Thereafter the permittee shall submit a plan and schedule to the Department or conservation district for review and approval to resume earth disturbance activities.  The permittee shall implement the approved plan.

D.  Licensed Professional Oversight of Critical Stages

E-FILED
03/14/2023

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF ENVIRONMENTAL PROTECTION**                                    Permit No. ESG830021002-00

1.  A licensed professional or a designee shall be present onsite and be responsible during critical stages of implementation of the approved PCSM Plan. Critical stages may include the installation of underground treatment or storage BMPs, structurally engineered BMPs, or other BMPs as deemed appropriate by the Department or conservation district.

2.  The licensed professional or designee shall document findings related to implementation of critical stages of the PCSM Plan. The permittee shall retain this documentation for no less than 3 years from the date of NOT approval and provide it to the Department or conservation district upon request.

E.  Non-Compliance Reporting

Where E&S, PCSM or PPC BMPs are found to be inoperative or ineffective during an inspection or any other time the permittee becomes aware of any incident causing or threatening pollution as described in 25 Pa. Code § 91.33 (relating to incidents causing or threatening pollution), the permittee shall, within 24 hours, contact DEP/CCD, by phone or personal contact, followed by the submission of a written report within 5 calendar days of the initial contact.

Noncompliance reports shall include the following information:

1.  Any condition on the project site which may endanger public health, safety, or the environment, or involve incidents which cause or threaten pollution;

2.  The period of noncompliance, including exact dates and times and/or anticipated time when the activity will return to compliance;

3.  Steps being taken to reduce, eliminate, and prevent recurrence of the noncompliance; and

4.  The date or schedule of dates and identifying remedies for correcting noncompliance conditions.

Additionally, when BMPs are found to be inoperative or ineffective, the licensed professional shall be consulted to ensure BMP adequacy, as designed.

F.  Availability of Reports

Except for data determine to be confidential under Section 607 of the Clean Streams Law, all reports and other information prepared in accordance with the terms of this permit shall be available for public inspection at the appropriate DEP Regional Office or authorized conservation district office.

## IV. RECORD RETENTION

A.  The permittee shall retain all records of monitoring activities and results, copies of all plans and reports required by this permit, and records of all data used to complete the application for this permit, for at least three (3) years from the date of the Notice of Termination (NOT) approval. The permittee shall submit such records to DEP/CCD upon request. This period of retention must be extended during the course of any unresolved compliance, enforcement, or litigation or when requested by the Department or conservation district.

B.  The permittee shall retain a physical or electronic copy of this permit, the application submitted for permit issuance, all attachments to the application, and the E&S Plan, PCSM Plan, and PPC Plan, as applicable, at the project site during earth disturbance activities, and shall make these documents available for review by the Department, conservation district, or other authorized local, state, or federal agent or representative.

## V. SIGNATORY REQUIREMENTS

Documents required, submitted, or maintained under this permit shall be submitted with original signatures and be signed in accordance with the following:

A.  Permits, Transferee/Co-permittee Form, and NOTs.

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF ENVIRONMENTAL PROTECTION**                    Permit No. ESG830021002-00

1.  Corporations: (a) a president, secretary, treasurer, or vice-president of the corporation in charge of a principal business function, or any other person who performs similar policy or decision-making functions for the corporation; or (b) the manager of one or more manufacturing, production, or operating facilities, if authority to sign documents has been assigned or delegated to the manager in accordance with corporate procedures;

2.  Partnerships or sole proprietorships: a general partner or the proprietor, respectively;

3.  Municipalities, State, Federal, or other public agencies: either a principal executive officer or ranking elected official such as: (a) the chief executive officer or secretary of the agency, or (b) a senior executive officer having responsibility for the overall operations of a principal geographic unit of the agency (e.g., Regional Administrators of the U.S. Environmental Protection Agency).

B.  All reports, plans, documents, and other information required by the permit or requested by the Department or conservation district shall be signed by a duly authorized representative of the permittee.

C.  If there is a change in the duly authorized representative of the permittee, the permittee shall notify the Department or conservation district within 30 calendar days of the change.

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF ENVIRONMENTAL PROTECTION

Permit No. ESG830021002-00

03/14/2023

**PART B – STANDARD CONDITIONS**

## I. MANAGEMENT REQUIREMENTS

A.  Permit Modification, Termination, or Revocation and Reissuance

1. If changes to site conditions or the design have the potential to increase runoff, the permittee shall contact the Department or conservation district to evaluate whether a permit modification is required.  The permittee shall manage any increase in stormwater rate, volume or quality by adding appropriate BMPs.

2. This permit may be modified, suspended, revoked, reissued, or terminated during its terms for any of the cause specified in 25 Pa. Code Chapter 102 (relating to erosion and sediment control), or to require compliance with updated effluent limitation guidelines, water quality standards, impaired water listings, or new TMDLs, including but not limited to the following:

a.  Violation of any terms or conditions of the permit.

b.  Obtaining a permit by misrepresentation or failure to discuss fully all relevant facts.

c.  A change in any condition that requires either a temporary or permanent reduction or elimination of the permitted discharge.

3.  The filing or a request by the permittee for a permit modification, revocation and reissuance, termination, or a notification of planned changes or anticipated non-compliance, does not stay any permit condition.

4.  Permit modification or revocation will be conducted according to 25 Pa. Code Chapter 102.

B.  Notice of Termination

1. Termination of Coverage

a.  Upon permanent stabilization of earth disturbance activity under § 102.22(a)(2) (relating to permanent stabilization) and installation of BMPs in accordance with the authorized plan prepared and implemented in accordance with §§ 102.4 and 102.8 (related to erosion and sediment control requirements; and PCSM requirements), the permittee shall submit a NOT to the Department or conservation district.

The NOT must include:

- The facility name, address and location,
- The operator name and address,
- The permit number,
- The reason for the permit termination, and
- Identification of the persons who have agreed to and will be responsible for the long-term operation and maintenance of PCSM BMPs.

b.  Until the permittee has received written authorization of the NOT, the permittee will remain responsible for compliance with the permit terms and conditions, including long term operation and maintenance of all PCSM BMPs on the project site in accordance with 25 Pa. Code § 102.8(m) (relating to PCSM long-term operation and maintenance requirements). The Department or conservation district will conduct a final inspection and approve or deny the NOT within 30 calendar days of receipt in accordance with 25 Pa. Code § 102.7(c) (relating to permit termination).

2. Final Certification

a.  The permittee shall enclose with the NOT "Record Drawings" with a final, signed certification statement from a licensed professional, which reads as follows:

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF ENVIRONMENTAL PROTECTION**                                        Permit No. ESG830021002-00

E-FILED
03/14/2023

"I (name), do hereby certify pursuant to the penalties of 18 Pa.C.S.A. § 4904 to the best of my knowledge, information, and belief, that the accompanying record drawings accurately reflect the as-built conditions, are true and correct, and are in conformance with Chapter 102 of the rules and regulations of the Department of Environmental Protection and that the project site was constructed in accordance with the authorized PCSM plan or Site Restoration plan, all authorized plan changes and accepted construction practices."

  b.  The permittee shall retain a copy of the record drawings as part of the authorized PCSM plan. The permittee shall also provide a copy of the record drawings as part of the authorized PCSM plan to the persons identified as responsible for the long-term operation and maintenance of PCSM BMPs. The permittee shall also provide copies of both the record drawings and the long-term operation and maintenance plan to the Department, conservation district and municipality.

C.  Duty to Provide Information

  1.  The permittee shall furnish to the Department or conservation district within 30 calendar days of the date of the request any information which the Department or conservation district may request to determine whether cause exists for modifying, revoking and reissuing, or terminating coverage under this permit, or to determine compliance with this permit.

  2.  The permittee shall furnish to the Department or conservation district, upon request, copies of records required to be kept by this permit.

  3.  When the permittee becomes aware that they failed to submit any relevant facts or submitted incorrect information in the permit application, E&S Plan, PCSM/SR Plan, or PPC Plan or in any other report to the Department or conservation district, the permittee shall within 24 hours of becoming aware of the deficiency submit or correct such facts or information.

  4.  The permittee shall give seven (7) calendar days advance notice to the Department or conservation district by telephone, certified mail or electronic means of the intent to commence earth disturbance activities. The notification must include the project type, target date for earth disturbance, permit number, Site name, Township, County and point of contact for the operator and notification may occur prior to receipt of coverage under this permit.

  5.  The permittee shall give 30 calendar days advance notice to the Department or conservation district of any planned physical alterations or additions to the permitted facility which could, in any way, substantially affect the quality and/or quantity of stormwater discharged from the activity.

D.  Transfer of Ownership or Control

  1.  This permit is not transferable to any person except after notice and acknowledgment by the Department or conservation district.

    a.  In the event of any pending change in control or ownership of facilities, the permittee shall notify the Department or conservation district using the form entitled "Transferee/Co-permittee Application" (8000-PM-OOGM0009) of such pending change at least 30 calendar days prior to the change in ownership or control. If the permittee undergoes a name change, the permit must be reissued under the new name. The permittee, however, is not required to submit the Transferee/Co-permittee Application. Instead, the permittee must submit a copy of its Department of State filings to the Department.

    b.  The transfer application form shall be accompanied by a written agreement between the existing permittee and the new owner or operator stating that the existing permittee shall be liable for violations of the permit up to and until the date of coverage transfer and that the new owner or operator shall be jointly and individually liable for permit violations under the permit from that date on.

    c.  After receipt of an administratively complete and acceptable transfer application form, the Department or conservation district shall notify the existing permittee and the new owner or operator of its decision concerning authorization of the transfer of ownership or control.

E-FILED
03/14/2023

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF ENVIRONMENTAL PROTECTION**

Permit No. ESG830021002-00

    d.   All relevant conditions of any prior permits, decrees or orders issued to the permittee or their predecessor shall be continued in full force and effect unless explicitly superseded by this permit. The provisions of this permit shall apply to the permittee's successors, lessees, heirs, and assigns.  Permit ownership and/or responsibilities may be transferred or shared after written notice to, and upon authorization from the Department or conservation district. The notice shall be provided to the Department or conservation district at least 30 calendar days prior to the effective date of new ownership or permit responsibility.  The transfer does not need to be published in the *Pennsylvania Bulletin*.

2.   For purposes of this permit, operators shall include general contractors. If, prior to construction activities, the owner is the permittee and an operator/general contractor is later identified to become a co-permittee, the owner shall:

    a.   Notify the Department or conservation district by submitting an administratively complete and acceptable Transferee/Co-permittee Application; and

    b   Ensure that monitoring reports and any other information requested under this permit shall reflect all changes to the permittee and the co-permittee name.

3.   After receipt of the documentation described in (b) above, the permit will be considered modified by the Department or conservation district. For the purposes of this permit, this modification is considered to be a minor permit modification.

4.   Upon authorization of a change in ownership or control, the existing permittee shall provide a copy of the permit and authorized plans to the new owner and/or co-permittee.

E.   Co-Permittee Requirements for Operators.

1.   Operators who are not the permittee shall be co-permittees.  Following approval of coverage, the permittee shall require any operator, as defined in this permit, that was not identified on the application for permit coverage to complete and sign the Co-Permittee Acknowledgement for Chapter 102 Permits form (3800-FM-BCW0271a) prior to commencing earth disturbance activities covered by this permit.  The permittee shall complete and sign the Co-Permittee Acknowledgement form, retain the form for a period no less than three (3) years, and submit the form to the Department or conservation district prior to the operator engaging in earth disturbance activities.

2.   If an operator completes its job responsibilities, the operator may elect to terminate its responsibilities under the permit, prior to submission of a NOT by the permittee, by completing and signing a Co-Permittee Liability Release form (3800-FM-BCW0271).  These forms shall be signed by the permittee, retained by the permittee for a period no less than three (3) years, and submitted to DEP/CCD.

F.   Removed Substances

Solids, sediments, and other pollutants removed in the course of treatment or control of stormwater shall be disposed in accordance with federal and state law and regulations, in order to prevent any pollutant in such materials from adversely affecting the environment.

G.   BMP Construction, Operation, and Maintenance

The permittee is responsible for the design, installation, operation, and maintenance of the BMPs identified in the E&S Plan, PCSM Plan, and PPC Plan.

H.   Adverse Impact

The permittee shall take all reasonable steps to prevent, minimize, or cease any discharge in violation of this permit.

I.   Reduction, Loss, or Failure of BMP

Upon reduction, loss, or failure of any BMP, the permittee shall take immediate action to restore, repair, replace the BMP or provide an alternative method of treatment.  Such restored BMP or alternative treatment shall be at least as effective as the original BMP when properly installs.  These actions should be undertaken to ensure

that there are no pollution discharges to the waters of the Commonwealth.  This requirement is applicable in situations where the BMP is rendered ineffective, whether the cause or source of the reduction, loss or failure is within or beyond the control of the permittee.

## II. COMPLIANCE RESPONSIBILITIES

A.   Duty to Comply

The permittee must comply with all terms and conditions of this permit.  Any permit noncompliance constitutes a violation of the Pennsylvania Clean Streams Law and is grounds for enforcement action; for permit termination, revocation, reissuance, or modification; or denial of a permit or permit renewal.

B.   Penalties for Violation of Permit Conditions

Any person who violates a permit condition, fails to take corrective active to abate violations or falsifies report or other documents may be subject to criminal and/or civil penalties or other appropriate action for violations of the terms and conditions of this permit under Section 602 and 605 of the Clean Streams Law (35 P.S. §§ 691.602 and 691.605), which are incorporated by reference.

C.   Need to Halt or Reduce Activity Not a Defense.

The permittee may not use as a defense in an enforcement action that it would have been necessary to halt or reduce the permitted activity to maintain compliance with the conditions of this permit.

D.   Penalties and Liability

Nothing in this permit shall be construed to preclude the institution of a legal action or relieve the permittee from any responsibilities, liabilities, or penalties to which the permittee is or may be subject.

E.   Property Rights.

This permit does not convey any property rights of any sort, not any exclusive privileges, nor does it authorize any injury to private property nor any invasion or personal rights, not any infringement of federal, state, or local laws or regulations.

F.   Severability

The provisions in this permit are severable; and if any provision of this permit, or the application of any provision of this permit to any circumstance, is held invalid, the application of such provision to other circumstances and the remainder of this permit shall not be affected thereby.

G.   Penalties for Falsification of Reports

Any person who knowingly makes any false material statement, representation, or certification in any record of other document submitted or required to be maintained under this permit, including reports or compliance or noncompliance is subject to criminal sanctions as set forth for false swearing and unsworn falsification at 18 Pa. C.S. §§ 4903-4904 and Section 611 of the Clean Streams Law (35 P.S. § 691.611).

H.   Incorporation of Application.

This permit granted based, in part, on information provided by the applicant in the application.  The information provided by the applicant, including all attachments, plans and supporting documentation, are incorporated by reference as part of the approval and are enforceable as a condition of the approval.  If there is any conflict between the permit and the application, including any attachments, plans, and other supporting documentation, the more protective provision applies.

E-FILED
03/14/2023

I.   Right of Entry.

Pursuant to the Pennsylvania Clean Streams Law 35 P.S. §§ 691.5(b) and 691.305, 25 Pa. Code Chapter 92a, and § 1917-A of the Administrative Code, the permittee shall allow an authorized representative of the Department, conservation district, or, in the case of a facility which discharges to a municipal separate storm sewer, an authorized representative of the municipal operator or the separate storm sewer receiving the discharge, upon the presentation of credentials and other documents, as may be required by law, to:

1.  Enter upon the permittee's premises where a regulated facility or activity is located or conducted or where records must be kept under the conditions of this permit;

2.  Have access to and copy, at reasonable times, any records that must be kept under the terms and conditions of this permit;

3.  Inspect any facilities or equipment (including monitoring and control equipment); and

4. Observe or sample any discharge of stormwater.

J.   Other Laws.

No condition of this permit releases the permittee from any responsibility, requirement, or liability under federal or Pennsylvania statutes or regulations or any local ordinance.

## III. OPERATING CONDITIONS

A.  Solids, sediments, and other pollutants removed in the course of treatment or control of stormwater shall be disposed in accordance with Federal and State law and regulations in order to prevent any pollutant in such materials from adversely affecting the environment.

B.  All building materials and wastes must be removed from the site and recycled or disposed, in accordance with the Department's Regulations at 25 Pa. Code Chapters 78, 78a, 260, 271, and 287. Procedures which ensure that the proper disposal or recycling of materials associated with or from the project site will be undertaken in an environmentally safe manner and in accordance with Federal and State law and regulations shall be implemented. No waste or material shall be disposed, buried, dumped, or discharged at the project site unless it is in accordance with Federal and State law and regulations.

C.  The permittee shall contact the plan preparer for clarification of any requirements contained in the E&S Plan, PCSM/SR Plan, PPC Plan, or other documents related to this permit. If additional clarification is necessary, the permittee shall contact the Department or conservation district.

D.  Where infiltration BMPs are being utilized, the permittee must ensure that soil compaction is avoided or minimized in those areas. If the areas planned for infiltration BMPs are compromised, additional soil testing must be performed to verify that the BMP will perform as planned.

E.  Upon final completion of an earth disturbance activity or any stage or phase of an activity the project site shall be immediately stabilized in accordance with the requirements of 25 Pa. Code § 102.22(a). E&S BMPs shall be implemented and maintained until permanent stabilization is completed. Once permanent stabilization has been established the temporary E&S BMPs shall be removed. Any areas disturbed in the act of removing temporary E&S BMPs shall be permanently stabilized upon completion of the temporary E&S BMP removal activity.

F.  Upon temporary cessation of the earth disturbance activity, or completion of any stage or phase of an activity where the cessation of earth disturbance will exceed 4 calendar days the project site shall be immediately stabilized in accordance with the requirements of 25 Pa. Code § 102.22(a). E&S BMPs shall be implemented and maintained until permanent stabilization is completed. Once permanent stabilization has been established the temporary E&S BMPs shall be removed. Any areas disturbed in the act of removing temporary E&S BMPs shall be permanently stabilized upon completion of the temporary E&S BMP removal activity.



**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF ENVIRONMENTAL PROTECTION**                                    Permit No. ESG830021002-00

## PART C – SPECIAL CONDITIONS

### I. DISCHARGES CONSISTENT WITH TERMS AND CONDITIONS OF THE PERMIT

The permittee must comply with all terms and conditions of this permit. Any permit non-compliance constitutes a violation of The Clean Streams Law and 25 Pa Code Chapter 102 and is grounds for enforcement action or suspension of authorization: revocation, modification, and reissuance, or denial of a under permit. The permittee may be subject to criminal and/or civil penalties for violations of the terms and conditions of this permit under Sections 602 and 605 of The Clean Streams Law, 35 P.S. §§ 691.602 and 691.605.

### II. PROHIBITED DISCHARGES

A.  All discharges covered by this permit shall be comprised entirely of stormwater.  Discharges of substances other than stormwater must be in compliance, when required, with an NPDES permit (other than this permit) issued for the discharge.  Discharges of sewage or industrial waste to waters of the Commonwealth or a BMP is not permitted.

B.  The permittee may not discharge floating materials, oil, grease, scum, foam, sheen, and substances which: produce odor, taste, or turbidity or settle to form deposits in concentrations or amounts sufficient to be, or create a danger or being, inimical to the water uses to be protected or human, animal, plant or aquatic life.

### III.  PRE-CONSTRUCTION MEETING AND NOTIFICATION

For earth disturbance activities authorized by this permit, at least one pre-construction meeting is required. The permittee shall contact DEP to schedule the pre-construction meeting and provide at least 7 calendar day notice of the pre-construction meeting to all invited attendees by telephone, certified mail or electronic means, unless otherwise approved by the Department in writing. The notification must include the project type, target date for earth disturbance, permit number, site name, Township, County and point of contact for the operator.  Permittees, co- permittees, operators, and licensed professionals, or designees responsible for earth disturbance activity, including implementation of E&S, PCSM and PPC Plans and critical stages of implementation of the approved PCSM Plan, shall attend the pre-construction meeting(s). Permittees, co-permittees, operators and licensed professionals are responsible for ensuring that all activities on the site comply with the requirements of the permit.

### IV.  E&S PLANS

A.  The permittee shall implement its approved E&S Plan, including all BMPs contained therein.  The E&S Plan is incorporated into this permit.

B.  E&S Plans required under this permit are considered reports that shall be available to the public under Section 607 of the Clean Streams Law (35 P.S. § 691.607).  The owner or operator of a facility with stormwater discharges covered by this permit shall make E&S Plans available to the public upon request.

C.  The staging of earth disturbance activities and maintenance requirements contained in the approved E&S Plan must be followed.

D.  After installation or stabilization of all perimeter sediment control BMPs, the Department or conservation district shall be notified at least 3 calendar days prior to proceeding with the bulk earth disturbance activities. Bulk earth disturbance activities are defined as any earth disturbance for construction purposes other than the minimum amount of disturbance required for installation of perimeter sediment control BMPs. Notification to the Department or conservation district shall be made by telephone, certified mail or electronic means and include the project type, target date for bulk earth disturbance, permit number, site name, Township, County and point of contact for the operator.

E.  All manufactured BMPs, including erosion control matting and water quality devices, shall be installed and maintained in accordance with manufacturer's recommendations.

F.  General site clearing, grubbing and topsoil stripping shall not commence in any stage or phase of the project until the E&S BMPs specified by the E&S Plan for that stage or phase have been installed and are functioning as described in the E&S Plan.

G. Stripped topsoil to be used for site stabilization (temporary or permanent) and site restoration must be stockpiled separately from the subsoil.

H. Regardless of slope, erosion control blankets shall be used for all seeded areas within 100 feet of a High Quality or Exceptional Value surface water. For all slopes that are 3H:1V or steeper or where potential exists for sediment pollution to receiving waters, erosion control blankets shall be used for all seeded areas within 50 feet of a surface water.

I. In accordance with the E&S and Site Restoration Plans, measures shall be taken to ensure that proper soil de-compaction occurs for all areas of site restoration for the project. The permittee shall implement such measures in accordance with the guidance on soil restoration in *Pennsylvania Stormwater Best Management Practices Manual*, Document Number: 363-0300-002, as amended and updated. *See* BMP 6.7.3, Chapter 6, page 221. For areas where stone and/or timber mats were used for temporary stabilization and/or access de-compaction must be done by aggressively fracturing (lateral and vertical fracturing of the exposed and compacted subsoil, down and through, to the bottom) the subsoil to a depth of the affected thickness of the subsoil but no less than 16 inches below the surface of the subsoil with the appropriate "heavy duty" agricultural grade deep ripper. In all otl1er areas, aggressive fracturing of the subsoil must be done to a depth of the affected thickness of the subsoil but no less than 24 inches below the surface of the subsoil.

J. Prior to topsoil application, graded areas will be scarified to depth of 3 to 5 inches minimum to allow for bonding of the topsoil to the surface of tl1e subsoil. Topsoil must be uniformly distributed across the disturbed area to a depth of 4 to 8 inches, minimum.

K. Where compost filter sock is necessary to elevate the pumped water filter bag to an ABACT E&S BMP, the compost filter sock shall be placed to sufficient length to manage all flow from the pumped water filter bag.

L. For all discharges from the project site associated with earth disturbance activities, the permittee shall implement, maintain, repair and if necessary replace BMPs to minimize the potential for accelerated erosion and sedimentation and to protect, maintain, reclaim and restore water quality and existing and designated uses.

M. The Permittee shall backfill the pipe trench within 30 calendar days of excavating.

## V.   SITE RESTORATION/POST-CONSTRUCTION STORMWATER (PCSM) PLANS

A. The permittee shall implement its approved PCSM Plan, including all BMPs contained therein. The PCSM Plan is incorporated into this permit.

B. PCSM Plans required under this permit are considered reports that shall be available to the public under Section 607 of the Clean Streams Law (35 P.S. § 691.607). The owner or operator of a facility with stormwater discharges covered by this permit shall make PCSM Plans available to the public upon request. The PCSM Plans must be made available at the project site at all times.

C. A licensed professional or their designee shall be present on the project site and be responsible for oversight of critical stages of implementation of the approved PCSM Plan. The licensed professional will be responsible to provide a final certification, pursuant to 25 Pa. Code § 102.8(1) along with the required NOT and record drawings, indicating that the project site was constructed in accordance with the approved or modified PCSM Plan.

D. The PCSM Plan must be consistent with the assumptions and requirements of any available WLAs for the discharges as set forth in any applicable TMDLs established for the receiving waters.

E. In accordance with 25 Pa. Code § 102.8(n), the portion of the Site Restoration Plan that identifies PCSM BMPs to manage stormwater from pipelines or other similar utility infrastructure may be used to satisfy the PCSM requirements if the PCSM, reclamation or restoration plan meets the requirements of 25 Pa. Code §§ 102.8(b), (c), (e), (f), (h), (i) and (l), and when applicable, (m).

E-FILED
03/14/2023

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF ENVIRONMENTAL PROTECTION**                    Permit No. ESG830021002-00

F.  All manufactured BMPs, including erosion control matting and water quality devices, shall be installed and maintained in accordance with manufacturer's recommendations.

G.  In accordance with the E&S and Site Restoration Plans, measures shall be taken to ensure that proper soil de-compaction occurs for all areas of site restoration for the project. The permittee shall implement such measures in accordance with the guidance on soil restoration in the Pennsylvania Stormwater Best Management Practices Manual, Document Number: 363-0300-002, as amended and updated. See BMP 6.7.3, Chapter 6, page 221). For areas where stone and/or timber mats were used for temporary stabilization and/or access de-compaction must be done by aggressively fracturing (lateral and vertical fracturing of the exposed and compacted subsoil, down and through, to the bottom) the subsoil to a depth of the affected thickness of the subsoil but no less than 16 inches below the surface of the subsoil with the appropriate "heavy duty" agricultural grade deep ripper. In all other areas, aggressive fracturing of the subsoil must be done to a depth of the affected thickness of the subsoil but no less than 24 inches below the surface of the subsoil.

H.  Prior to topsoil application, graded areas will be scarified to depth of 3 to 5 inches minimum to allow for bonding of the topsoil to the surface of the subsoil. Topsoil must be uniformly distributed across the disturbed area to a depth of 4 to 8 inches, minimum.

I.  In accordance with the E&S and Site Restoration Plans, all areas to be restored must achieve at a minimum meadow in good condition or otherwise incorporate ABACT or nondischarge PCSM BMPs.

J.  Upon reduction, loss, or failure of any PCSM BMP, the permittee shall immediately take measures to prevent pollution to waters of the Commonwealth and adverse impacts to the environment. The permittee shall immediately submit to DEP for review and approval a Corrective Action Plan (CAP) and, if necessary, a permit modification, which shall include a schedule for the repair and/or replacement of the PCSM BMP. Upon DEP's approval of the CAP, the permittee shall implement the CAP

K.  The permittee shall implement PCSM BMPs as detailed in the approved PCSM Plan. Any changes to the PCSM Plan, including the introduction of alternate PCSM BMPs or the elimination of any approved PCSM BMPs, must be approved by DEP prior to the implementation of these changes.

L.  PCSM Plans shall be consistent with any current Department authorized Act 167 Stormwater Management Plan which covers the area where the project is proposed.

## VI.    PREPAREDNESS, PREVENTION, AND CONTINGENCY (PPC) PLANS

The permittee shall prepare and implement a PPC Plan when storing, using or transporting materials including: fuels, chemicals, solvents, pesticides, fertilizers, lime, petrochemicals, wastewater, wash water, core drilling wastewater, cement, sanitary wastes, solid wastes or hazardous materials onto, on or from the project site during earth disturbance activities.  The PPC Plan shall identify areas which may include, but are not limited to, waste management areas, raw material storage areas, fuel storage areas, temporary and permanent spoils storage areas, maintenance areas, and any other areas that may have the potential to cause noncompliance with the terms and conditions of this permit due to the storage, handling, or disposal or any toxic or hazardous substances such as oil, gasoline, pesticides, herbicides, solvents, concrete wastewaters, etc.  BMPs shall be prepared and implemented for each identified area.  The PPC Plan shall be maintained on the project site at all times and shall be made available for review at the request of the Department or conservation district.

## VII.   SPOIL OR BORROW AREAS

A.  An E&S Plan or other authorization meeting the regulatory requirements detailed in 25 Pa. Code § 102.4(b) shall be received and approved by the Department or conservation district and implemented for all spoil and borrow areas, regardless of their locations.

B.  Any person intending to use fill material must adhere to the Department's Management of Fill Policy (Document Number: 258-2182-773).  Prior to the movement of fill to a receiving site, a fill determination, which includes performing adequate environmental due diligence, must be completed.  If fill is known or is suspect to have been affected by a spill or release of a regulated substance, analytical testing must be completed to determine if the fill meets the requirements to be used as clean fill or regulated fill.  If the material meets the requirements

E-FILED
03/14/2023

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF ENVIRONMENTAL PROTECTION**                      Permit No. ESG830021002-00

for clean fill, DEP Form FP-001 (Certification of Clean Fill) must be completed and submitted to DEP electronically on the DEP website at https://www.dep.pa.gov/Business/Land/Waste/SolidWaste/Residual/Pages/default.aspx. Both the donor site and the receiving site are responsible for maintaining copies of the completed Form FP-001 for a period of five (5) years. Fill material meeting the requirements for regulated fill must be managed in accordance with the Department's municipal or residual waste regulations, 25 Pa. Code § 271.2 and § 287.2, respectively, whichever is applicable, and may be beneficially used in accordance with General Permit No. WMGR096.

## VIII.   STABILIZATION

The time period between the trench excavation to the beginning of disturbed area stabilization for the main line pipeline installation shall not exceed 30 calendar days, unless sufficient justification for an extension of time is provided to and approved by the Department in writing. Upon temporary cessation of any earth disturbance activity, including topsoil and soil stockpiles, for which the cessation of the earth disturbance activities will exceed 4 calendar days, the disturbed area shall be temporarily stabilized in accordance with the E&S Plan and with 25 Pa. Code § 102.22(b). Proper E&S BMPs shall be implemented and maintained throughout the entire project until permanent stabilization and Notice of Termination approval.

## IX.   LONG-TERM OPERATION AND MAINTENANCE OF PCSM BMPs

A.   The permittee shall be responsible for long-term operation and maintenance (O&M) of PCSM BMPs unless a different person is identified in the NOT and that person has agreed to long-term operation and maintenance of PCSM BMPs.

B.   For any property containing a PCSM/SR BMP, the permittee shall record an instrument with the recorder of deeds which will assure disclosure of the PCSM/SR BMP and the related obligations in the ordinary course of a title search of the subject property. The recorded instrument must identify the PCSM/SR BMP, provide for necessary access related to long-term operation and maintenance for PCSM/SR BMPs and provide notice that the responsibility for long-term operation and maintenance of the PCSM/SR BMP is a covenant that runs with the land that is binding upon and enforceable by subsequent grantees, and provide proof of filing with the NOT under 25 Pa. Code § 102.7(b)(5).

C.   For Commonwealth owned property, a covenant that runs with the land is not required until the transfer of the land containing a PCSM BMP occurs. Upon transfer of the Commonwealth owned property contains the PCSM BMP, the deed must comply with 25 Pa. Code § 102.8(m)(3). An agency of the federal government shall not be required to make or records a declaration of covenants on its property until transfer of the property to a non-federal or non-commonwealth entity or individual. Upon transfer of the Commonwealth owned or federally owned property containing the PCSM BMP, the deed must comply with 25 Pa. Code § 102.8(m)(3).

D.   The person responsible for performing long-term operation and maintenance may enter into an agreement with another person, including a conservation district, nonprofit organization, municipality, authority, private corporation, or other person, to transfer the responsibility for PCSM BMPs or to perform long-term O&M and provide notice thereof to the Department or conservation district.

E.   A permittee that fails to transfer long-term O&M of the PCSM BMPs or otherwise fails to comply with this requirement, shall remain jointly and severally responsible with the landowner for long-term O&M of the PCSM BMPs located on the property.  (25 Pa. Code § 102.8(m)(5))

F.   Unless a later date is approved by the Department in writing, the permittee shall record an instrument as required under 25 Pa. Code § 102.8(m)(2) within 45 calendar days from the date of issuance of this permit or authorization. Unless the Department authorizes a different procedure, the long-term operation and maintenance plan shall be recorded along with the instrument. Unless a later date in approved by the Department, in writing, the permittee shall provide the Department or conservation district with the date and place of recording along with a reference to the docket, deed book or other record, within 90 calendar days from the date of issuance of this permit or authorization.

G.   Unless an alternative process is approved by the Department or conservation district in writing, upon the sale or other transfer of any parcel, lot, road or other real property included within the permit boundary, the permittee shall notify the purchaser, grantee, or transferee of the long-term PCSM BMP O&M requirements. The

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF ENVIRONMENTAL PROTECTION
Permit No. ESG830021002-00

E-FILED
03/14/2023

permittee shall expressly identify the PCSM BMPs on each property, the schedule for inspection and reporting, the person or entity responsible for long-term operation and maintenance of the PCSM BMPs and how access to the BMPs will be achieved and shall obtain approval from the purchaser grantee or transferee.  Unless a later date is approved by the Department in writing, the permittee shall provide the Department or conservation district with notice of compliance with this section within 45 calendar days from the date of transfer of the property and at the time the permittee files a NOT.

## X.   TRAINING

A.  Prior to commencement of construction activities or commencement of work on the project site, the permittee shall ensure that the following personnel understand the requirements of and their specific responsibilities under this permit:

1.  Personnel responsible for the installation, maintenance, and/or repair of E&S and PCSM BMPs and implementation of the PPC Plan.

2.  Personnel responsible for the application and storage of treatment chemicals (if applicable).

3.  Personnel responsible for conducting inspections.

4.  Personnel responsible for taking corrective actions.

B.  The permittee is responsible for ensuring that all activities on the project site comply with the requirements of this permit.  The permittee and are not required to provide or document formal training for subcontractors or other outside service providers, but the permittee must ensure that personnel understand any requirements of this permit that are relevant to the work they are subcontracted to perform.

C.  At a minimum, the permittee must ensure that personnel understand the following if related to the scope of their job duties (e.g., only personnel responsible for conducting inspections need to understand how to conduct inspections).

1.  When and how to conduct site inspections, record applicable findings, and take correction actions.

2.  The permit deadlines associated with installation, maintenance, removal of stormwater controls, and site stabilization.

3.  The location of all stormwater controls on the project site required by this permit and how they are to be maintained.

4.  The proper procedures to follow with respect to the permit's pollution prevention requirements and when to notify DEP/CCD of potential pollution and changes to earth disturbance activities.

D.  A training log must be kept on-site and made available upon request from EPA, DEP, or CCD staff.

E.  All personnel must have access at all times during earth disturbance activities to an electronic or paper copy of this permit, the approved copies of the E&S, PCSM and PPC Plans, and other relevant documents or information that must be kept with these plans.

## XI.   ARCHAEOLOGICAL SPECIMENS

A.  The permittee and its agents shall visually inspect for archaeological specimens, as the term is defined in the Pennsylvania State History Code (37 Pa. C.S.A., Section 101 *et seq.*), during earth disturbance activities, and shall immediately cease earth disturbance activities upon discovery of archaeological specimens.  Upon discovery the permittee shall immediately notify DEP/CCD and the Pennsylvania Historical and Museum Commission (PHMC) (Phone: (717) 783-8947).

B.  When conducting earth disturbance activities, the permittee shall protect archeological specimens and historic resources in accordance with applicable Federal and State laws.

E-FILED
03/14/2023

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF ENVIRONMENTAL PROTECTION**                              Permit No. ESG830021002-00

## XII.   HABITAT CONSERVATION PLANS AND THREATENED AND ENDANGERED SPECIES PROTECTION

A.   The permittee shall comply with all applicable provisions of the Habitat Conservation Plan submitted and approved by the U.S. Fish and Wildlife Service (USFWS), PA Game Commission (PGC), PA Fish and Boat Commission (PFBC) and PA Department of Conservation and Natural Resources (DCNR) to protect federal and state listed species. The permittee shall provide a copy of the plan to the Department prior to initiation of any work under this permit.

B.   If any potential impact to federal or state threatened or endangered species is identified on the Pennsylvania Natural Diversity Inventory (PNDI) receipt, the permittee shall implement any avoidance/mitigation measures indicated on the PNDI receipt and/or other measures determined necessary by the resource agencies in a clearance letter, determination or other correspondence to resolve potential species impacts and ensure compliance with applicable federal and State laws pertaining to the protection of Federal or state threatened and endangered species.

C.   When conducting earth disturbance activities, the permittee has a continuing obligation to ensure compliance with applicable federal and state laws pertaining to the protection of federal or state threatened and endangered species.

D.   If construction or blasting occurs between April 15 and October 15, the permittee shall comply with all protocols set forth by the Pennsylvania Fish and Boat Commission (PFBC) for protection of the Timber Rattlesnake Crotalus horridus (Timber Rattlesnake).

E.   To minimize the potential for impact to state and federally listed bat species, the permittee shall conduct pipeline construction activities involving ground disturbance (i.e., trenching, grading, mechanized tree felling, and pipeline installation) between April 1 and November 15 within the specified buffers as described in Transco's August 19, 2022 Bat Restriction Summary Table.

F.   To minimize the potential for impact to state and federally listed bat species, the permittee shall conduct tree cutting between November 16 and March 31 within the specified buffers as described in Transco's August 19, 2022 Bat Restriction Summary Table.

G.   Prior to conducting any future maintenance activities on the pipeline or right of way which involves disturbance, the permittee shall conduct a then current Pennsylvania Natural Diversity Inventory search, shall obtain clearance(s) for any species or resource where a potential impact is identified, provide the avoidance and mitigation plan to DEP prior to initiating such maintenance work, and shall implement and adhere to all avoidance measures outlined in such clearance(s).

## XIII.   WETLAND PROTECTION

If hydric soils or other wetland features are present on the project site, the permittee shall conduct a wetland determination in accordance with DEP procedures. A copy of that wetland determination must be provided to DEP/CCD as an attachment to the application, and all wetlands must be identified on the E&S Plan and PCSM Plan. Special precautions must be taken to protect wetlands and other water resources identified in the application, plans, and other supporting documents during earth disturbance activities.

## XIV.   INFILTRATION BMPS

Where infiltration and/or restoration BMPs are being utilized, the permittee must ensure that soil compaction is avoided or minimized in those areas. If the areas planned for infiltration and/or restoration BMPs are compromised through compaction or other means, measures shall be taken to ensure that proper soil de- compaction occurs. The permittee shall implement such measures in accordance with the guidance on soil restoration in the *Pennsylvania Stormwater Best Management Practices Manual*, Document Number: 363-0300-002, as amended and updated.  *See* BMP 6.7.3, Chapter 6, page 221. Additional soil testing must be performed to verify that the BMPs will perform as planned.

## XV.   ANTIDEGRADATION REQUIREMENTS

The permittee shall implement a non-discharge alternative and/or the ABACT E&S and PCSM BMPs identified in Antidegradation Analysis Module 3 (3800-PM-BCW0406c) and the approved E&S and PCSM Plans to satisfy

E-FILED
03/14/2023

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF ENVIRONMENTAL PROTECTION**                                Permit No. ESG830021002-00

antidegradation implementation requirements of 25 Pa. Code §§ 93.4c, 102.4(b)(6) and 102.8(h).

## XVI.   RIPARIAN AREA REPLANTING

A.   Prior to submission of the Notice of Termination, the permittee shall replant forested riparian areas in temporary right of ways along surface waters. Replanting shall be conducted for a minimum distance of fifty (50) feet or the Federal Emergency Management Agency (FEMA) mapped 100-year floodplain, whichever is greater landward from the top of both banks of non-special protection watersheds; and 150 feet from HQ/EV streams. The density of replanted trees shall be similar to the density that existed prior to the permittee conducting construction activities but shall provide no less than 60% uniform canopy cover upon maturation and shall be appropriate to the geographic location. Maintenance and inspections shall ensure survival and growth of plantings and protection from competing plants and animals including noxious weeds and invasive species over a 5-year establishment period to ensure and proper functioning of riparian forest buffers, and shall include measures to repair damage to the buffer from storm events greater than the 2-year/24-hour storm.

B.   Persons that protect, convert or establish a new riparian forest buffer that meets the requirements of § 102.14(b) may qualify for benefits under § 102.14(e)(1) and (2) relating to the antidegradation presumption and trading or offsetting of credits.

C.   The permittee must protect, convert or establish a new riparian forest buffer that meets the requirements of 25 Pa. Code § 102.14 unless otherwise exempted or waived under § 102.14(a) or 102.14(d).

## XVII.  GEOLOGIC HAZARDS

The permittee shall notify the Department or conservation district immediately by phone if a geologic formation or soil condition develops on the project site that has the potential to cause pollution, including coal seams, where earth disturbance activities have the potential to expose acid producing rock or infiltrate stormwater runoff into acid producing rock), radioactive or arsenic bearing formations, surface mines (existing, abandoned and/or reclaimed), deep mines (active, abandoned where the earth disturbance activities have the potential to encounter a mine void), mine spoil dump area, abandoned mine drainage, or abandoned mine drainage treatment systems.

Within 5 calendar days following the notification, the permittee shall submit a plan drawing showing the location of that geologic formation or soil condition, photographs, the method of repair, and how E&S and/or PCSM BMPs will be modified as a result, if applicable.

## XVIII. DISCHARGES TO NON-SURFACE WATER

This permit authorizes proposed discharges of stormwater to non-surface waters.  Discharges to areas that are not surface waters shall not cause accelerated erosion or stormwater damage to down slope or adjacent properties.  These areas that are not surface water shall be maintained to prevent erosion from stormwater flows.

## XIX. WATER SUPPLY NOTIFICATION

A.   If the project results in a pollution event or other adverse impact to any public or private water supplies, the permittee shall immediately notify the Department and the potentially affected public or private water supplies of the pollution event.

B.   In the event that the permittee's work related to this authorization causes adverse impacts to a public or private water supply source, the permittee shall address the restoration or replacement of the impacted water supply and mitigate and/or remediate any pollution resulting from the project in accordance with applicable legal requirements.

C.   At least 72 hours in advance of beginning construction of a pipeline stream crossing, the permittee shall notify all identified users of private water supply wells within 150-ft of pipeline construction.

D.   If the Department determines that the project adversely affects a public or private water supply, the permittee shall restore or replace the affected water supply with an alternate source of water adequate in quantity or quality for the purposes served by the supply.

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF ENVIRONMENTAL PROTECTION**                                    **Permit No. ESG830021002-00**

E.   At least 72 hours in advance of beginning construction of a pipeline stream crossing, the permittee shall notify all users of surface water intakes within one mile downstream of the crossing. These include but are not limited to, drinking water users, industrial, and commercial users that may be impacted by turbidity or water quality changes.

F.   The permittee shall notify such downstream water users immediately of any pollution event or incident at its site that may endanger downstream users. The permittee shall also immediately implement its approved contingency plan to prevent further adverse impacts and remediate all adverse impacts as a result of the pollution event or incident.

G.   If a public or private drinking water source not previously identified by the permittee is discovered by the permittee during construction, the permittee shall immediately notify the Department of the identified water source and shall notify that source of the permittee's construction activities.



# Exhibit B





February 3, 2023

Transcontinental Gas Pipe Line Company, LLC
c/o Mr. Joseph Dean
2800 Post Oak Blvd
Level 11
Houston TX 77056

Re:     Water Obstruction and Encroachment Permit (WOEP) Issuance
        Regional Energy Access Expansion Project

        DEP Permit No. E4083221-006 (Luzerne County)
        APS ID No.  1036224; AUTH ID No.  1349631
        Buck Township, Bear Creek Township, Plains Township, Jenkins Township, Kingston
        Township, Dallas Township, Wyoming Borough, West Wyoming Borough, Laflin
        Borough; Luzerne County

        DEP Permit No. E4583221-002 (Monroe County)
        APS ID No.  1036240; AUTH ID No.  1349660
        Ross Township, Chestnuthill Township, Tunkhannock Township; Monroe County


Dear Mr. Dean:

Enclosed are copies of your State Water Obstruction and Encroachment Permits (WOEP).  Please
review these permits so that you are aware of the extent of authorization and the conditions that
apply to the authorizations.

Please be advised that Federal authorization for this project is required prior to starting your
project.  In accordance with procedures established with the U.S. Army Corps of Engineers, you
will be contacted directly by the Corps regarding Federal Authorization.

In addition to the above-referenced permit authorizations, the permittee has additional
responsibilities:

1.  **The WOEP is not effective until a copy of the Acknowledgment of Appraisal of
    Permit Conditions, signed by you, is received by the Department.  Any work
    conducted prior to the Department's receipt of the signed Acknowledgment of
    Appraisal of Permit Conditions is a violation of the Dam Safety and
    Encroachments Act and the Clean Streams Law, and you may be subject to
    fines and penalties.**

2.  A copy of the Permit, Acknowledgment of Appraisal of Permit Conditions, the
    Erosion and Sediment Control plan, this Issuance Letter, and any other applicable
    State and Federal authorizations, must be maintained on site during construction



and available at the work site for inspection upon request by any officer or agent of
the Department or any other Federal, State, County or Municipal agency.

3. A Completion Report must be submitted to this office within 30 days of completion
   of the approved project.  The Completion Report form must be signed by you and
   the supervising engineer indicating that the work has been completed as approved.

Any person aggrieved by this action may challenge it in an appropriate legal forum.  The state and
federal courts are currently split on whether the proper forum to challenge a Department permit,
authorization or approval for a facility or activity subject to the Federal Natural Gas Act, 15 U.S.C.
§§ 717 *et seq.*, is the United States Court of Appeals for the Third Circuit or the Pennsylvania
Environmental Hearing Board.  *See Delaware Riverkeeper Network v. Sec'y, Dep't of Envtl. Prot.*,
833 F.3d 360 (3d Cir. 2016); *Delaware Riverkeeper Network v. Sec'y, Dep't of Envtl. Prot.*, 903
F.3d 65 (3d Cir. 2018), *cert. denied,* 139 S. Ct. 1648, 203 L. Ed. 899 (2019) and *Cole v. Dep't of
Envtl. Prot.,* 1577 C.D. 2019 WL 2420667 (Pa. Cmwlth Ct. June 15, 2021) (Pet. for Allowance of
Appeal pending); *West Rockhill Twp. v. Dep't of Envtl. Prot*., No. 1595 C.D. 2019 WL 2426014
(Pa. Cmwlth. June 15, 2021) (Pet. for Allowance of Appeal pending).

You should promptly consult with a lawyer on the steps to take if you wish to challenge this action
and how to best protect your interests.

IMPORTANT LEGAL RIGHTS ARE AT STAKE.  YOU SHOULD SHOW THIS DOCUMENT
TO A LAWYER AT ONCE.

If you have additional questions, please contact Michael Luciani at 570-826-2597 or
mluciani@pa.gov.

Sincerely,

Domenic Rocco, P.E.
Director
Regional Permit Coordination Office

Attachments:   WOEP
               Acknowledgement of Apprisal of Permit Conditions
               Completion Form

cc:    Ryan Nelson, WHM Consulting, LLC (by email)
       U.S. Army Corps of Engineers, Baltimore District (by email)
       U.S. Army Corps of Engineers, Philadelphia District (by email)
       PA Fish & Boat Commission, Division of Environmental Services (by email)
       Northeast Regional ARD (by email)
       Northeast Regional Waterways and Wetlands (by email)



Transcontinental Gas Pipe Line Company, LLC      -3-                    February 3, 2023

       Luzerne County Conservation District (by email)
       Buck Township (by email)
       Bear Creek Township (by email)
       Plains Township (by email)
       Jenkins Township (by email)
       Kingston Township (by email)
       Dallas Township (by email)
       Wyoming Borough (by email)
       West Wyoming Borough (by email)
       Laflin Borough (by email)
       Monroe County Conservation District (by email)
       Ross Township (by email)
       Chestnuthill Township (by email)
       Tunkhannock Township (by email)

PERMIT NO. E4083221-006

E-FILED
03/14/2023

# COMMONWEALTH OF PENNSYLVANIA
## DEPARTMENT OF ENVIRONMENTAL PROTECTION
## REGIONAL PERMIT COORDINATION OFFICE

## WATER OBSTRUCTION AND ENCROACHMENT PERMIT

The Department of Environmental Protection "Department", established by the Act of December 3, 1970, P.L. 834 (71 P.S. §§ 510.1 *et seq*.) and empowered to exercise certain powers and perform certain duties under and by virtue of the Act of November 26, 1978, P.L. 1375, as amended by the Act of October 23, 1979, P.L. 204 (32 P.S. §§ 693.1 *et seq*.) known as the "Dam Safety and Encroachments Act"; Act of October 4, 1978, P.L. 851, (32 P.S. §§679.101 *et seq*.) known as the "Flood Plain Management Act"; Act of June 22, 1937, P.L. 1987, (35 P.S. §§ 691.1 *et seq*.), known as "The Clean Streams Law"; and the Administrative Code, Act of April 9, 1929, P.L. 177, as amended, which empowers the Department to exercise certain powers and perform certain duties by law vested in and imposed upon the Water Supply Commission of Pennsylvania and the Water and Power Resources Board, hereby issues this permit to:

**Transcontinental Gas Pipe Line Company, LLC**
**2800 Post Oak Blvd**
**Level 11**
**Houston, TX 77056**

giving its consent to:

**construct, operate and maintain water obstructions and encroachments associated with the Luzerne County portion of the Regional Energy Access Expansion Project. The Luzerne County portion consists of 22.2 miles of 30-inch diameter pipeline and associated appurtenant structures. The proposed impacts in Luzerne County include 2,418 feet of temporary impacts and 2,803 feet of permanent impacts to tributaries to Shades Creek (HQ-CWF, MF), Shades Creek (HQ-CWF, MF), Little Shades Creek (HQ-CWF, MF), tributary to Meadow Run (HQ-CWF, MF), Meadow Run (HQ-CWF, MF), tributaries to Bear Creek (HQ-CWF, MF), Bear Creek (HQ-CWF, MF), tributaries to Little Bear Creek (HQ-CWF, MF), tributaries to Mill Creek (HQ-CWF, MF), Mill Creek (HQ-CWF, MF), tributary to Gardner Creek (CWF, MF), Gardner Creek (CWF, MF), tributaries to Susquehanna River (WWF, MF), Susquehanna River (WWF, MF), Abrahams Creek (CWF, MF), tributaries to Abrahams Creek (CWF, MF), tributaries to Toby Creek (CWF, MF), tributaries to Trout Brook (CWF, MF), Trout Brook (CWF, MF); 13.41 acres of temporary impacts and 6.72 acres of permanent impacts to floodway; 5.25 acres of temporary impacts and 8.07 acres of permanent impacts to Palustrine Emergent (PEM), Palustrine Scrub-Shrub (PSS), Palustrine Forested (PFO), and Palustrine Open Water (POW). 5.20 acres of permanent wetlands impacts are to exceptional value wetlands.**

**The permittee is required to compensate for the functional conversion of PFO and PSS wetlands associated with the proposed project impacts by providing 6.73 acres of successful compensatory wetland mitigation (Permittee-Responsible Mitigation)**

E-FILED
03/14/2023

PERMIT NO. E4083221-006

**through wetland enhancement at the Grajweski Property Mitigation Site (Latitude: 41° 11' 42"; Longitude: -76° 12' 30") in Huntington Township, Luzerne County and at the Perin Property Mitigation Site (Latitude: 40° 50' 41"; Longitude: -75° 14' 11") in Plainfield Township, Northampton County.**

**The Luzerne County portion of the proposed project starts at the existing Compressor Station 515, approximately 0.20 mile northeast of State Route 0115 (Latitude: 41° 10' 24"; Longitude: -75° 40' 18") in Buck Township and extends to the existing Hildebrandt Interconnect in Dallas Township, approximately 0.23 miles southeast of Hildebrandt Road (Latitude: 41° 20' 49"; Longitude: -75° 56' 47"). The Regional Energy Lateral is located in Buck Township, Bear Creek Township, Plains Township, Jenkins Township, Laflin Borough, Wyoming Borough, West Wyoming Borough, Kingston Township and Dallas Township, Luzerne County.**

If this work authorized by this permit is not completed on or before **December 31, 2027**, this permit, if not previously revoked or specifically extended by the Department in writing, shall become void without further notification.

This permit is issued in response to an application filed with the Department of Environmental Protection on **April 9, 2021**, and with the understanding that the work shall be performed in accordance with the maps, plans, profiles and specifications filed with and made a part of the application on **March 7, 2022, August 11, 2022, September 1, 2022 and October 28, 2022** subject to the provisions of the Dam Safety and Encroachments Act, the Flood Plain Management Act, the Clean Streams Law, the Administrative Code, the rules and regulations promulgated thereunder and the following conditions and restrictions:

1. The permittee shall sign the Acknowledgement of Apprisal of Permit Conditions thereby expressly certifying the permittee's acceptance of, and agreement to comply with, the terms and conditions of this permit. The permittee shall return a signed copy of the Acknowledgement of Apprisal of Permit Conditions to the Department. Unless the Acknowledgement of Apprisal of Permit Conditions form is completed and filed with the Department, this permit is void.

2. **Work may not commence until a signed copy of the Acknowledgement of Apprisal of Permit Conditions is received by the Department.** Any work authorized by this permit conducted prior to the Department's receipt of a signed copy of the Acknowledgement of Apprisal of Permit Conditions is a violation of the Dam Safety and Encroachments Act and the Clean Streams Law, and you may be subject to fines and penalties pursuant to those Acts.

3. The Department, in issuing this permit, has relied on the information and data which the permittee has provided in connection with this permit application. If, subsequent to the issuance of this permit, such information and data prove to be false, incomplete or inaccurate, this permit may be modified, suspended, or revoked, in whole or in part, and the Department may, in addition, institute appropriate legal proceedings.

E-FILED
03/14/2023

4. This permit does not give any property rights, either in real estate or material, nor any exclusive privileges, nor shall it be construed to grant or confer any right, title, easement, or interest in, to, or over any land belonging to the Commonwealth of Pennsylvania; neither does it authorize any injury to private property or invasion of private rights, nor any infringement of Federal, State, or Local laws or regulations; nor does it obviate the necessity of obtaining Federal assent when necessary.

5. The work shall at all times be subject to supervision and inspection by representatives of the Department, and no changes in the maps, plans, profiles, and specifications as approved shall be made except with the written consent of the Department. The Department, however, reserves the right to require such changes or modifications in the maps, plans, profiles, and specifications as may be considered necessary. The Department further reserves the right to suspend or revoke this permit if in its opinion the best interest of the Commonwealth will be subserved thereby.

6. This permit authorizes the construction, operation, maintenance and normal repair of the permitted structures conducted within the original specifications for the water obstruction or encroachment, and in accordance with the regulations of the Department and terms and conditions of this permit. Any repairs or maintenance involving modifications of the water obstruction or encroachment from its original specifications, and any repairs or reconstruction involving a substantial portion of the structure as defined by regulations of the Department shall require the prior written approval and permit of the Department.

7. All construction debris, excavated material, brush, rocks, and refuse incidental to this work shall be removed entirely from the stream channel and placed either on shore above the influence of flood waters, or at such dumping ground as may be approved by the Department.

8. There shall be no unreasonable interference with the free discharge of the river or stream or navigation during construction.

9. If future operations by the Commonwealth of Pennsylvania require modification of the structure or work, or if, in the opinion of the Department, the structure or work shall cause unreasonable obstruction to the free passage of floodwaters or navigation, the permittee shall, upon due notice remove or alter the structures, work or obstructions caused thereby, without expense to the Commonwealth of Pennsylvania, so as to increase the flood carrying capacity of the channel or render navigation reasonably free, easy, and unobstructed, in such manner as the Department may require. No claim shall be made against the Commonwealth of Pennsylvania on account of any such removal or alteration.

10. The permittee shall notify the Department, in writing, of the proposed time for commencement of work at least 15 days prior to the commencement of construction.

11. If construction work has not been completed within the time specified in this permit and the time limit specified in this permit has not been extended in writing by the Department or if this permit has been revoked for any reason, the permittee shall, at his own expense and in


E-FILED
03/14/2023

PERMIT NO. E4083221-00

a manner that the Department may prescribe, remove all or any portion of the work as the Department requires and restore the watercourse and floodplain to their former condition.

12. The permittee shall fully inform the engineer or contractor, responsible for the supervision and conduct of the work, of the terms, conditions, restrictions and covenants of this permit. Prior to the commencement of construction, the permittee shall file with the Department in writing, on a form provided by the Department, a statement signed by the permittee and an individual responsible for the supervision or conduct of the work acknowledging and accepting the general and special conditions contained in this permit. Unless the acknowledgment and acceptance have been filed, this permit is void. A copy of this permit and the acknowledgment shall be available at the work site for inspection upon request by an officer or agent of the Department or another Federal, State, County or Municipal Agency.

13. The permittee shall operate and maintain the structure or work authorized herein in a safe condition in accordance with the permit terms and conditions and the approved maps, plans, profiles and specifications.

14. This permit may not be transferred without prior written approval from the Department, such approval being considered upon receipt of the properly executed "Application for Transfer of Permit" form.

15. If and when the permittee desires to discontinue use or abandon the activity authorized herein, the permittee must remove all or part of the structure or work authorized and take other actions as are necessary to protect safety and the environment in accordance with a permit issued by the Department.

16. If the use of explosives in any waterways is required, the permittee shall secure the prior written permit from the Pennsylvania Fish and Boat Commission, pursuant to the Pennsylvania Fish and Boat Code, Act 1980-175 Title 30 Pennsylvania Consolidated Statutes, Section 2906. Requests should be directed to the Pennsylvania Fish and Boat Commission, Division of Environmental Services, 595 East Rolling Ridge Drive, Bellefonte, PA 16823-9685, telephone 814.359.5250.

17. Permittee shall implement and monitor an Erosion and Sedimentation Control Plan prepared in accordance with 25 Pa. Code Chapter 102 so as to minimize erosion and prevent excessive sedimentation into the receiving watercourse or body of water.

18. The project site shall at all times be available for inspection by authorized officers and employees of the Pennsylvania Fish and Boat Commission. Prior to commencement and upon completion of the work authorized by this permit, the permittee shall notify the Pennsylvania Fish and Boat Commission's Northeast Regional Office, 5566 Main Road, Sweet Valley, PA 18656, Telephone: (570) 477-5717.

19. The project site shall at all times be available for inspection by authorized officers and employees of the County Conservation District. Prior to commencement and upon



PERMIT NO. E4083221-006

completion of the work authorized by this permit, the permittee shall notify the Luzerne Conservation District, 325 Smiths Pond Road, Shavertown PA 18708, 570-674-7991.

20. **SPECIAL CONDITIONS:** Permittee shall be responsible for compliance with each of the following special conditions.

**Water Supplies:**

A. If the project results in a pollution event or other adverse impact to any public or private water supplies, the permittee shall immediately notify the Department and the potentially affected public or private water supplies of the pollution event.

B. In the event that the permittee's work related to this authorization causes adverse impacts to a public or private water supply source, the permittee shall address the restoration or replacement of the impacted water supply and mitigate and/or remediate any pollution resulting from the project in accordance with applicable legal requirements.

C. At least 72 hours in advance of  beginning construction of a pipeline stream crossing, the permittee shall notify all identified users of private water supply wells within 150-ft of pipeline construction.

D. If the Department determines that the project adversely affects a public or private water supply, the permittee shall restore or replace the affected water supply with an alternate source of water adequate in quantity or quality for the purposes served by the supply.

E. At least 72 hours in advance of beginning construction of a pipeline stream crossing, the permittee shall notify all users of surface water intakes within one mile downstream of the crossing.  These include but are not limited to, drinking water users, industrial, and commercial users that may be impacted by turbidity or water quality changes.

F. The permittee shall notify such downstream water users immediately of any pollution event or incident at its site that may endanger downstream users.  The permittee shall also immediately implement its approved contingency plan to prevent further adverse impacts and remediate all adverse impacts as a result of the pollution event or incident.

G. If a public or private drinking water source not previously identified by the permittee is discovered by the permittee during construction, the permittee shall immediately notify the Department of the identified water source and shall notify that source of the permittee's construction activities.

**Historic, Cultural, or Archaeological Resources:**

H. The permittee and its agents shall visually inspect for historic, cultural, and archaeological resources that may be encountered during construction of the project and shall immediately cease earth disturbance activities in the vicinity of the archaeological artifacts upon encountering such potential artifacts.



I.  If potential historic, cultural, or archaeological resources are discovered, the permittee shall immediately notify the Pennsylvania Historical and Museum Commission (PHMC) at P.O. Box 1026, Harrisburg, PA  17120-1026, telephone 717.783.8947, and shall concurrently notify the Department.

J.  The permittee shall not adversely impact any historic, cultural, and archaeological resources that are identified by the latest published version of the Pennsylvania Inventory of Historical Places and the National Register of Historical Places.

**Submerged Lands License Agreements:**

K.  The permittee shall comply with all terms and conditions of the Submerged Lands License Agreement entered into between the Department and the permittee for the natural gas pipeline crossing of the Susquehanna River, which is incorporated herein by reference.

**Temporary Road Crossings:**

L.  All temporary road crossings of streams and wetlands must meet all of the following conditions:

1.  The permittee shall restore and stabilize all temporary crossing sites immediately after termination of its permitted use.

2.  The permittee shall ensure that all culverts associated with temporary stream crossings provide a waterway area sufficient to adequately discharge the normal flow of the watercourse or stream, and that culverts are of sufficient length to extend beyond the toe of the clean rock fill.

3.  The permittee shall ensure that culverts are installed in such manner that overtopping of the roadway will occur within the stream channel.  This can be accomplished by providing a depressed roadway embankment.

4.  The permittee shall minimize excessive fill and excavation of stream banks by utilizing culverts with as large a diameter as possible.  The minimum diameter size of a culvert to be used shall be no less than 12 inches.

5.  Road and causeway embankments shall only consist of clean rock material to prevent stream channel sedimentation during placement, removal, and periods of overtopping.

6.  Bridges must be structurally stable and shall be single span from top of bank to top of bank, unless approved by the Department.

7.  Approach roads to temporary road crossings shall utilize original grades.  However, clean rock material or gravel to a depth of six inches above original grade can be utilized for approaches, as necessary.



**PERMIT NO. E4083221-006**

8.  The waterway opening of the temporary road crossings shall be kept open and functioning at all times by maintaining the crossings free of debris and other obstructions.

9.  The permittee shall promptly repair any damage resulting from increased backwater caused by a temporary road crossing.  When warranted, in advance of major storms, the permittee shall remove temporary road crossings in the event of high waters to prevent increased backwater.

10.  All wetland crossing sites shall be stabilized by appropriate means, including, but not limited to, using removable, temporary mats, pads, or other similar devices to ensure minimization of impact on the ecology of the wetland.

11.  The permittee shall remove all or any portion of a temporary road crossing upon written notification to the permittee from the Department in the event the project is causing an adverse impact on public health, safety, or the environment or in any other manner violates the requirements of the Pennsylvania Clean Streams Law, the Pennsylvania Dam Safety and Encroachments Act, and/or  25 Pa. Code Chapter 105.

**Site Field Verification, Restoration, and Monitoring:**

M.  All wetlands within the project area shall be appropriately demarcated per the approved plans prior to the start of construction activities and shall remain demarcated until earth disturbance activities are completed, and the site has been stabilized.  An acceptable means of demarcation of wetlands includes, but not limited to, the use of an orange construction safety fence and/or flags.

N.  The permittee shall prepare and maintain a detailed record of pre-construction and post-construction conditions of each stream and wetland crossing, which shall include sufficient photographs to compare pre-construction and post-construction conditions.  The permittee shall submit this documentation to the Department within ninety (90) days after completion of work under the respective permit.

O.  Excess fill from disturbed areas and construction activities shall be located outside of the floodway, floodplain, or other bodies of water.  The permittee is responsible for stabilizing any excess materials spoiled onsite or offsite, whether the permittee owns the site or others own the site.

P.  Wetland excavation shall include the segregation of the soil horizons, unless written approval is received from the Department.  Soil horizons shall be replaced to match pre-construction conditions.  In areas where bore pits are proposed in or adjacent to wetlands, or if a restrictive layer, including but not limited to clay or fragipans, is encountered during the trench excavation, the permittee shall have knowledgeable personnel with appropriate technical expertise on-site to oversee backfilling of the trench and installation of trench plugs, to ensure that wetland hydrology is maintained.

Q.  Backfilled trenches shall not create the formation of a permanent ridge in a streambed or wetland.

R.  Rock riprap shall only be used in the stream bed when written approval is received from the Department.

S.  Upon completion of final earthmoving activities, the permittee shall restore all disturbed wetland areas to original contours and replant with indigenous wetland vegetation in accordance with the restoration plans as presented in the permit application .

T.  Wetland disturbances shall be minimized and stabilized within four (4) calendar days of final earthmoving activities.

U.  Streambank disturbance shall be minimized and stabilized with indigenous vegetation immediately upon completion of final earthmoving activities.

V.  Stream pipeline crossings shall be restored and properly stabilized upon completion of work.  Restored streams shall use a minimum of six (6) inches of native stream bed material.  For streams where riprap is necessary to prevent scour, the riprap shall be depressed sufficiently to allow six (6) inches of native stream bed material over the riprap. The restored streambed elevation shall not exceed the pre-existing streambed elevation.

W.  All Palustrine Scrub-Shrub (PSS) and Palustrine Forested (PFO) wetlands within the temporary right-of-way (ROW) shall be replanted with woody species that are similar to those species present in the wetland prior to the permittee conducting construction activities.

X.  The Permittee shall ensure at least an eighty-five percent (85%) survival rate of wetland plantings during the five (5) year monitoring period.  Additional wetland plantings and/or reports in subsequent years beyond the initial five (5) years may be required if an eighty-five percent (85%) survivability of planted species is not achieved.

Y.  For a period of up to five (5) years following construction, the permittee shall monitor the stream and wetlands in the project area.  Monitoring reports shall be submitted to the Department in the spring (May 15) and fall (November 15) for the first two (2) calendar years following construction and annually (November 15) for three (3) years thereafter.

1.  All wetland monitoring reports shall contain information describing the wetland sites at the time of inspection, documented indicators of wetland hydrology, hydric soils, an inventory of the plant species and percent aerial coverage, and photographs of the wetland sites with plans showing the location and orientation of each of the photographs.  The monitoring reports shall demonstrate that the existing wetlands on-site are maintaining pre-construction wetland conditions and delineated acreages.  If the wetlands on-site are not maintaining pre-construction wetland conditions and delineated acreages, a written plan shall be submitted to correct any deficiencies identified during the monitoring phase.

2. All stream monitoring reports shall contain information describing the stream at the time of inspection and demonstrating that the existing streams on-site are maintaining pre-construction conditions and hydrology.

3. Monitoring may be terminated or extended by the Department upon written request by the permittee.

Z. For a period of up to five (5) years following construction, the permittee shall monitor for secondary impacts to hydrology, i.e., the loss of hydrology, to all watercourses with a drainage area of less than 100 acres, including those watercourses that originate within the project ROW.  Reports shall be submitted to the Department in the spring and fall for the first two (2) calendar years following construction and annually for three (3) years thereafter.

1. The monitoring reports shall contain information describing the presence or absence of hydrology at the time of inspection, a narrative comparison to hydrology present in the watercourse during pre-permitting field investigation(s), and photographs of the watercourse.

2. If the monitoring identifies a diminution or complete loss of hydrology, the permittee shall evaluate whether the activities authorized by this Permit caused the loss of hydrology and submit this evaluation to the Department for review.

3. If the Department determines that the activities authorized by this Permit are contributing to the loss of hydrology, the permittee shall prepare a written plan to correct the loss of hydrology to the watercourse.  Within thirty (30) days of the Department informing permittee about its determination that authorized activities contributed to the loss of hydrology, the permittee shall submit a plan to address the loss of hydrology to the Department for review and approval.  If the Department identifies any deficiencies with permittee's plan, then the permittee shall provide the Department a written response to address the stated deficiencies within fifteen (15) days of receiving written notice of the Department-identified deficiencies, unless the Department extends that timeframe in writing.

4. The permittee shall implement the Department-approved plan within ninety (90) days of receiving written approval from the Department, unless the Department extends that timeframe in writing.

5. In the event that loss of hydrology from activities conducted under this Permit cannot be restored, the permittee shall submit a mitigation plan to the Department that sets forth the manner in which full loss of hydrology and associated water will be compensated for.  If the Department identifies any deficiencies with the permittee's mitigation plan, then the permittee shall provide the Department a written response to address the stated deficiencies within fifteen (15) days of receiving written notice of the Department-identified deficiencies, unless the Department extends that timeframe in writing.  The permittee shall implement the Department-approved mitigation plan

E-FILED
03/14/2023

**PERMIT NO. E4083221-006**

within ninety (90) days of receiving written approval from the Department, unless the Department extends that timeframe in writing.

6. Based upon the monitoring results, the Department may terminate monitoring upon written request by the permittee and may extend the monitoring period by providing written notice to the permittee.

**Compensatory Mitigation and Monitoring:**

AA. The permittee shall provide copies of the recorded deed restrictions or conservation easements for the compensatory mitigation sites to the Department within sixty (60) days after permit issuance.

BB. In accordance with Requirement L-5, Environmental Assessment, Module 4, Appendix S4-3 Compensatory Offsite Wetland Mitigation Plan, the following compensatory mitigation shall commence prior to or concurrently with wetland impacts requiring compensation as authorized by this permit and be completed within one (1) growing season thereafter:

1. The permittee is required to compensate for the functional conversion of Palustrine Forested (PFO) and Palustrine Scrub-Shrub (PSS) wetlands associated with the proposed project impacts by providing 6.73 acres of successful compensatory wetland mitigation (Permittee-Responsible Mitigation) through wetland enhancement at the Grajweski Property Mitigation Site in Huntington Township, Luzerne County and at the Perin Property Mitigation Site in Plainfield Township, Northampton County (collectively, "Compensatory Mitigation Sites").

CC. For at least five (5) years after the Compensatory Mitigation Sites restoration activities are completed, the permittee shall monitor the Compensatory Mitigation Sites. Within sixty (60) days of completing the Compensatory Mitigation Sites, permittee shall submit as-built drawings to the Department for the Compensatory Mitigation Sites. Monitoring reports shall be submitted to the Department at a frequency of every six (6) months for the first two (2) years after mitigation site construction and annually for three (3) years thereafter.

1. The monitoring reports shall contain information describing the success of the Compensatory Mitigation Sites at the time of inspection, an inventory of the surviving plant species and percent aerial coverage, photographs of each site with plans showing the location and orientation of each of the photographs, and a written plan to correct any deficiencies identified during the monitoring phase.

2. If the Compensatory Mitigation Sites have not achieved design objectives within the monitoring period, the permittee will undertake remedial work to assure establishment of functional wetland habitats.

3. Based upon the monitoring results, the Department may terminate monitoring upon written request by the permittee and may extend the monitoring period by providing written notice to the permittee.



DD. For at least five (5) years after the on-site wetland restoration and riparian reforestation activities are completed, the permittee shall monitor the activities. Within sixty (60) days of completing wetland restoration and riparian reforestation activities, permittee shall submit as-built drawings to the Department for the activities. Monitoring reports shall be submitted to the Department at a frequency of every six (6) months for the first three (3) years after mitigation site construction and annually for two (2) years thereafter.

1. The monitoring reports shall contain information describing the success of the on-site wetland restoration and riparian reforestation activities at the time of inspection, an inventory of the surviving plant species and percent aerial coverage, photographs of each site with plans showing the location and orientation of each of the photographs, and a written plan to correct any deficiencies identified during the monitoring phase.

2. If the on-site wetland restoration and riparian reforestation activities have not achieved design objectives within the monitoring period, the permittee will undertake remedial work to assure establishment of functional wetland habitats.

3. Based upon the monitoring results, the Department may terminate monitoring upon written request by the permittee and may extend the monitoring period by providing written notice to the permittee.

**Trenchless Technology (TT) Aquatic Resource Crossings:**

EE. This Permit does not authorize the removal of woody vegetation for the purposes of operation and maintenance of the pipeline in wetland and riparian areas that are proposed to be crossed using trenchless methodology.

FF. The permittee shall construct and operate the TT crossings at wetlands, streams, and floodways in a manner to prevent a release of drilling fluid to "waters of the Commonwealth," as that term is defined in Section 1 of The Clean Streams Law, 35 P.S. § 691.1. The permittee shall immediately notify the Department in the event of an Inadvertent Return and immediately activate and implement the Pollution Prevention Control Plans (PPC Plans) including the Inadvertent Returns (IR) and the Geological Hazard Assessment and Mitigation Plan to prevent any impacts to waters of the Commonwealth and other natural resources.

GG. In accordance with the PPC Plan, the permittee shall take measures to avoid drilling activities in the vicinity of mine voids and utilities.

HH. In accordance with the PPC Plan, the permittee shall visually monitor the ground surface and waters of the Commonwealth that are located within the vicinity of the TT while drilling operations are occurring. This monitoring shall include walking, wading, and use of a boat, as necessary, to effectively observe and monitor for the return of materials associated with TT activities to the surface or to waters of the Commonwealth. If loss of circulation of drilling fluid occurs or drilling fluid pressure is lost, the permittee shall immediately investigate the drilling pathway and surrounding area for an inadvertent return. If an inadvertent return is discovered, drilling shall immediately cease.



II.   If an inadvertent return occurs within regulated waters of the Commonwealth, the TT shall only resume after:

1.   A Registered Professional Geologist or Registered Professional Engineer inspects and evaluates the site for the likelihood of another inadvertent return; and

2.   The permittee consults with and receives written approval from the Department.

JJ.   For those TT sites that experience an inadvertent return and do not have an approved contingency crossing method, the permittee shall submit a permit modification to the Department for review and approval prior to commencing an alternate crossing method.

KK. Inadvertent returns that impact or discharge to streams, floodways, or wetlands during the TT operations shall be remediated in compliance with the PPC Plan.  If clean-up operations differ from the submitted plans, prior approval from the Department will be necessary for any modifications to the TT Plan for additional mitigation.

LL.   TT additives which are certified for conformance with ANSI/NSF Standard 60 (Drinking Water Treatment Chemicals - Health Effects) are deemed acceptable to the Department, when used in the manner indicated in the certification of the additive.  All conditions included as part of the additive's certification should be followed.  A current listing of certified drilling fluids is maintained by NSF at http://www.nsf.org/Certified/PwsChemicals/Listings.asp?ProductFunction=Drilling+Fluid &.  Use of drilling additives certified for conformance with ANSI/NSF Standard 60 does not relieve operators from the requirement to obtain the necessary permits to conduct TT operations.  Use of certified additives does not relieve the operator of liability should an inadvertent return or other pollution of the waters of the Commonwealth occur as a result of drilling operations.

MM. To prevent impacts to water quality from TT operations, it is recommended that: 1) an environmental inspector be on site for the duration of the crossing operation, and 2) a vac truck be available within three (3) hours to respond to inadvertent returns/releases.  In the event of an inadvertent return or release of sediment into a body of water, PFBC Bureau of Law Enforcement Regional Office must be notified within 24 hours.

**Open Trench Aquatic Resource Crossings:**

NN. The permittee shall construct open trench pipeline crossings of streams in dry conditions by constructing during periods of no water flow and/or by installing stream flow bypass systems (flumed or pumped) through the affected area. Bypass systems must stay in use until streambeds and banks are adequately stabilized. Downstream flow must be maintained during the construction.

OO. Each stream crossing shall be conducted in an uninterrupted process in the shortest period of time possible.  Impacts to waters of the Commonwealth shall be avoided, to the extent



**PERMIT NO. E4083221-006**

practicable, and if not practicable, then minimized in accordance with the permittee's approved plans.

PP. The permittee may cross dry channels, dry swales, and dry intermittent streams without the use of stream flow bypass systems if the channel has no flow and the stream crossing and stabilization can be completed in dry conditions and within twenty-four (24) hours, unless approved in writing by the Department. Standby sandbag dams and pumps shall be located on-site and installed in the event of precipitation resulting in channel flow.

QQ. The permittee shall implement procedures that take into account the weather forecast and current conditions prior to commencing stream crossing installations to ensure that weather and stream conditions will not result in a pollution event. Such procedures could include a sign-off sheet documenting that the Environmental Inspector, Foreman, and any other responsible individual agree that the crossing can be constructed during that specific time.

**Habitat Conservation Plans and Threatened and Endangered Species Protection:**

RR. Prior to conducting any future maintenance activities on the pipeline or right of way which involves disturbance, the permittee shall conduct a current Pennsylvania Natural Diversity Inventory search, shall obtain clearance(s) for any species or resource where a potential impact is identified, provide the avoidance and mitigation plan to the Department prior to initiating such maintenance work and shall implement, and adhere to all avoidance measures outlined in such clearance(s).

SS. The permittee shall comply with and implement all Avoidance Measures, Conservation Measures, and other recommendations identified by the jurisdictional resource agencies for the protection of any federal or state threatened or endangered species or species of special concern, including:

1. Restrictions and voluntary conservation measures approved by United States Fish & Wildlife Service (USFWS) for the protection of the *Myotis sodalist* (Indiana Bat) and *Myotis septentrionalis* (Northern Long-Eared Bat);

2. Restrictions approved by Pennsylvania Game Commission (PGC) and those found within the most recent Bat Restriction Summary Table for the protection of the *Myotis lucifugus* (Little Brown Bat), *Perimyotis subflavus* (Tri-Colored Bat), and *Myotis leibii* (Eastern Small-footed Bat);

3. Requested measures set forth by the Department of Conservation and Natural Recourses (DCNR) for the protection of the *Galium latifolium* (Purple Bedstraw) populations;

4. Precautions set forth by and Mitigation Measures approved by the Pennsylvania Fish and Boat Commission (PFBC) for the protection of the Timber Rattlesnake *Crotalus horridus* (Timber Rattlesnake).

**Seasonal Restrictions:**



TT. The permittee shall not perform any in-stream work in waters listed by the Pennsylvania Fish and Boat Commission as **Class A wild trout fishery streams** and their tributaries between October 1 and April 1 without the prior written approval of the Pennsylvania Fish & Boat Commission's Division of Environmental Services, 450 Robinson Lane, Bellefonte, PA  16823-9620; telephone 814.359.5147.  This applies to the watersheds of Shades Creek and Mill Creek.

UU. The permittee shall not perform any in-stream work in waters listed by the Pennsylvania Fish and Boat Commission as **other wild trout streams** or their tributaries between October 1 and December 31 without the prior written approval of the Pennsylvania Fish and Boat Commission's Division of Environmental Services, 450 Robinson Lane, Bellefonte, PA  16823-9620; telephone 814.359.5147.  This applies to all streams except Gardner Creek and its Unnamed Tributaries, Abrahams Creek (downstream of Shoemaker Ave.), and the North Branch Susquehanna River.

VV. If construction or blasting occurs between April 15 and October 15, the permittee shall comply with all protocols set forth by the Pennsylvania Fish and Boat Commission (PFBC) for protection of the Timber Rattlesnake *Crotalus horridus* (Timber Rattlesnake).

WW. To minimize the potential for impact to state or federally listed bat species, the permittee shall conduct pipeline construction activities involving ground disturbance (i.e., trenching, grading, mechanized tree felling, and pipeline installation) between April 1 and November 15 within the specified buffers as described in Transco's August 19, 2022 Bat Restriction Summary Table.

XX. To minimize the potential for impact to state or federally listed bat species, the permittee shall conduct tree cutting between November 16 and March 31 within the specified buffers as described in Transco's August 19, 2022 Bat Restriction Summary Table.

**Miscellaneous:**

YY. Pollution of any waterway with harmful chemicals, fuels, oils, greases, bituminous material, acid, or other harmful or polluting materials, is prohibited.

ZZ. Herbicide spraying of wetlands is not authorized by this Permit.  Additionally, with the exception of a 10-foot wide area centered over the pipeline, maintenance mowing of wetlands is not authorized by this Permit.  The permittee shall place and maintain signs or other demarcation around the boundary of each wetland to clearly delineate the areas where this maintenance is not authorized.  The permittee shall place the signs or other demarcations when all restoration work is completed and prior to permit termination.

AAA. This permit does not convey any real property rights or interests or authorization to trespass on privately-owned riparian land.  By accepting this Permit, the permittee certifies that he/she holds title, easement, right, or other real interest in the riparian land.  Any dispute over property ownership and/or right of legal access is solely a matter for private litigation.



BBB. Riprap and stone used throughout the project, including the construction of causeways and coffer dams, shall be free of fines and silts, or other non-erodible material.

CCC. All temporary water withdrawal intake structures and all appurtenant works shall be removed from the watercourse, body of water, floodway, and floodplains as prescribed within the permit application. Deviations from the approved permit application shall require prior written approval from the Department.

DDD. In accordance with the Erosion and Sediment Control Plan, trench plugs shall be placed at each of the following locations:

1. At ten (10) feet from the top of each bank of a stream
2. At fifty (50) feet from the top of each bank of a stream
3. At ten (10) feet from the edge of a wetland
4. At fifty (50) feet from the edge of a wetland

EEE. Place a minimum of one (1) trench plug at a maximum spacing of 100 feet between trench plugs within a wetland. Wetland crossings less than fifty (50) feet do not require an internal trench plug.

FFF. If the permittee encounters a groundwater seep during excavation, the permittee shall place a trench plug at ten (10) feet from each side of the seep.

GGG. Any french drains installed as part of temporary de-watering for construction activities shall be removed or otherwise rendered inoperable prior to final site restoration.

HHH. Water pumped from any construction area shall be directed through a sediment trap, basin, or a filter bag discharging into an appropriate vegetated filter area to prevent a discharge of sediment into any waters of the Commonwealth.

III. The permittee shall implement the approved Aids to Navigation (ATON) Plan as received under the Fish and Boat Code, 30 Pa C.S. §§ 5121-5124, and 58 Pa. Code § 113.1 *et seq.*

JJJ. This permit authorizes only those impacts to waters of the Commonwealth that were specifically described in the approved permit application(s) and revisions. Any additional impacts to waters of the Commonwealth from water obstruction or encroachment activities including, but not limited to, temporary access roads, lay-down areas, staging areas, or temporary work spaces, that have not been specifically identified in the approved permit application are not authorized. Any proposed changes regarding the specific impacts will require a permit amendment.

KKK. No deviation in the construction methodology or project design shown on the approved drawings is authorized unless approved through an amendment of this Permit by the Department in writing. If the specific resource crossing has pre-approved primary, secondary, or tertiary methods, the permittee shall send a written notification to the Department and the respective county conservation district prior to the change in method.



**PERMIT NO. E4083221-006**

03/14/2023

LLL. This permit does not relieve the permittee of the obligation of complying with all Federal, interstate compact, State laws, regulations and standards, and local ordinances applicable to the construction, operation or maintenance of the water obstruction or encroachment.

MMM. The permittee shall follow the measures specified in the Preparedness, Prevention, and Contingency (PPC) Plan during construction.  The permittee shall maintain a copy of the PPC Plan on-site at all times during construction, train all staff to use and implement this plan, and have this plan available to provide at the request of any Department inspector.

NNN. In accordance with the Erosion and Sediment Control Plan, all synthetic erosion control features (e.g. silt fencing, netting, mats), which are intended for temporary use during construction, will be completely removed and properly disposed in a timely manner.  Only natural fiber materials which will degrade over time will be used as permanent erosion control measures, or if used temporarily, may be abandoned in place.

OOO. A copy of the Permit, Acknowledgment of Apprisal of Permit Conditions, the Erosion and Sediment Control Plans, and any other applicable plans or State and Federal authorizations, must be maintained on site during construction and available at the work site for inspection upon request by any officer or agent of the Department or any other Federal, State, County or Municipal agency.

DEPARTMENT OF ENVIRONMENTAL PROTECTION

02/03/2023

Domenic Rocco, P.E.                                             Issue Date
Director
Regional Permit Coordination Office



Permit No. E4083221-006

## ACKNOWLEDGMENT OF APPRISAL OF PERMIT CONDITIONS

I, _____

(Permittee name)

and _____

(Name address and telephone of individual responsible for supervision of work)

_____

acknowledge and accept the general and special conditions of Permit No. E4083221-006, issued to

**Transcontinental Gas Pipe Line Company, LLC**
**2800 Post Oak Blvd**
**Level 11**
**Houston, TX 77056**

which authorizes the permittee to:

**construct, operate and maintain water obstructions and encroachments associated with the Luzerne County portion of the Regional Energy Access Expansion Project. The Luzerne County portion consists of 22.2 miles of 30-inch diameter pipeline and associated appurtenant structures.  The proposed impacts in Luzerne County include 2,418 feet of temporary impacts and 2,803 feet of permanent impacts to tributaries to Shades Creek (HQ-CWF, MF), Shades Creek (HQ-CWF, MF), Little Shades Creek (HQ-CWF, MF), tributary to Meadow Run (HQ-CWF, MF), Meadow Run (HQ-CWF, MF), tributaries to Bear Creek (HQ-CWF, MF), Bear Creek (HQ-CWF, MF), tributaries to Little Bear Creek (HQ-CWF, MF), tributaries to Mill Creek (HQ-CWF, MF), Mill Creek (HQ-CWF, MF), tributary to Gardner Creek (CWF, MF), Gardner Creek (CWF, MF), tributaries to Susquehanna River (WWF, MF), Susquehanna River (WWF, MF), Abrahams Creek (CWF, MF), tributaries to Abrahams Creek (CWF, MF), tributaries to Toby Creek (CWF, MF), tributaries to Trout Brook (CWF, MF), Trout Brook (CWF, MF); 13.41 acres of temporary impacts and 6.72 acres of permanent impacts to floodway; 5.25 acres of temporary impacts and 8.07 acres of permanent impacts to Palustrine Emergent (PEM), Palustrine Scrub-Shrub (PSS), Palustrine Forested (PFO), and Palustrine Open Water (POW).  5.20 acres of permanent wetlands impacts are to exceptional value wetlands.**

**The permittee is required to compensate for the functional conversion of PFO and PSS wetlands associated with the proposed project impacts by providing 6.73 acres of successful compensatory wetland mitigation (Permittee-Responsible Mitigation) through wetland enhancement at the Grajweski Property Mitigation Site (Latitude: 41° 11' 42"; Longitude: -76° 12' 30") in Huntington Township, Luzerne County and**



**at the Perin Property Mitigation Site (Latitude: 40° 50' 41"; Longitude: -75° 14' 11") in Plainfield Township, Northampton County.**

**The Luzerne County portion of the proposed project starts at the existing Compressor Station 515, approximately 0.20 mile northeast of State Route 0115 (Latitude: 41° 10' 24"; Longitude: -75° 40' 18") in Buck Township and extends to the existing Hildebrandt Interconnect in Dallas Township, approximately 0.23 miles southeast of Hildebrandt Road (Latitude: 41° 20' 49"; Longitude: -75° 56' 47"). The Regional Energy Lateral is located in Buck Township, Bear Creek Township, Plains Township, Jenkins Township, Laflin Borough, Wyoming Borough, West Wyoming Borough, Kingston Township and Dallas Township, Luzerne County.**

_____          _____

(Permittee signature)                                              (Date)


_____          _____

(Signature of individual responsible                        (Date)
  for supervision of work)

Return To:

Department of Environmental Protection
Regional Permit Coordination Office
Rachel Carson State Office Building
P.O. Box 69206
Harrisburg, PA 17105
RA-EPREGIONALPERMIT@pa.gov



**Permit No. E4083221-006**

## WATER OBSTRUCTION AND ENCROACHMENT PERMIT
## COMPLETION REPORT

Project Location:

County _____

Municipality _____

I (We) hereby certify that the _____ work authorized by the above referenced permit _____

_____

_____

_____

was completed on _____ in accordance with the plans approved and that all
(Date)

unauthorized obstructions have been removed.

Name: _____
(Typed or printed)

Signature: _____

Title: _____

Firm: _____

Date: _____

Return To:

Department of Environmental Protection
Regional Permit Coordination Office
Rachel Carson State Office Building
P.O. Box 69206
Harrisburg, PA 17105
RA-EPREGIONALPERMIT@pa.gov

PERMIT NO. E4583221-002

E-FILED
03/14/2023

# COMMONWEALTH OF PENNSYLVANIA
## DEPARTMENT OF ENVIRONMENTAL PROTECTION
### REGIONAL PERMIT COORDINATION OFFICE

## WATER OBSTRUCTION AND ENCROACHMENT PERMIT

The Department of Environmental Protection "Department", established by the Act of December 3, 1970, P.L. 834 (71 P.S. §§ 510.1 *et seq.*) and empowered to exercise certain powers and perform certain duties under and by virtue of the Act of November 26, 1978, P.L. 1375, as amended by the Act of October 23, 1979, P.L. 204 (32 P.S. §§ 693.1 *et seq.*) known as the "Dam Safety and Encroachments Act"; Act of October 4, 1978, P.L. 851, (32 P.S. §§ 679.101 *et seq.*) known as the "Flood Plain Management Act"; Act of June 22, 1937, P.L. 1987, (35 P.S. §§ 691.1 *et seq.*), known as "The Clean Streams Law"; and the Administrative Code, Act of April 9, 1929, P.L. 177, as amended, which empowers the Department to exercise certain powers and perform certain duties by law vested in and imposed upon the Water Supply Commission of Pennsylvania and the Water and Power Resources Board, hereby issues this permit to:

**Transcontinental Gas Pipe Line Company, LLC**
**2800 Post Oak Blvd**
**Level 11**
**Houston, TX 77056**

giving its consent to:

**construct, operate and maintain water obstructions and encroachments associated with the Monroe County portion of the Regional Energy Access Expansion Project. The Monroe County portion consists of 13.8 miles of 42-inch diameter pipeline and associated appurtenant structures. The proposed impacts in Monroe County include 205 feet of temporary impacts and 226 feet of permanent impacts to tributary to Pohopoco Creek (HQ-CWF, MF), Sugar Hollow Creek (HQ-CWF, MF), tributaries to McMichael Creek (HQ-CWF, MF), tributaries to Poplar Creek (EV, MF), tributaries to Tunkhannock Creek (HQ-CWF, MF), and tributary to Mud Run (HQ-CWF, MF); 0.69 acres of temporary impacts and 0.82 acres of permanent impacts to floodway; 1.21 acres of temporary impacts and 1.62 acres of permanent impacts to Palustrine Emergent (PEM), Palustrine Scrub-Shrub (PSS), Palustrine Forested (PFO), and Palustrine Open Water (POW). 1.58 acres of permanent wetlands impacts are to exceptional value wetlands.**

**The permittee is required to compensate for the functional conversion of PFO and PSS wetlands associated with the proposed project impacts by providing 1.17 acres of successful compensatory wetland mitigation (Permittee-Responsible Mitigation) through wetland enhancement at the Perin Property Mitigation Site (Latitude: 40° 50' 41"; Longitude: -75° 14' 11") in Plainfield Township, Northampton County.**

**The Monroe County portion of the proposed project starts approximately 0.27 mile north of Rolling Hills Road (T-378) ( Latitude: 40° 53' 48"; Longitude: -75° 22' 14") in Ross Township and extends to Long Pond Road (State Route 4002) ( Latitude:**

E-FILED
03/14/2023

**PERMIT NO. E4583221-002**

**41° 03' 12"; Longitude: -75° 31' 34") in Tunkhannock Township.  The Effort Loop is located in Ross Township, Chestnuthill Township, and Tunkhannock Township, Monroe County.**

If this work authorized by this permit is not completed on or before **December 31, 2027**, this permit, if not previously revoked or specifically extended by the Department in writing, shall become void without further notification.

This permit is issued in response to an application filed with the Department of Environmental Protection on **April 9, 2021** , and with the understanding that the work shall be performed in accordance with the maps, plans, profiles and specifications filed with and made a part of the application on **March 7, 2022, August 11, 2022, September 1, 2022 and October 28, 2022** subject to the provisions of the Dam Safety and Encroachments Act, the Flood Plain Management Act, the Clean Streams Law, the Administrative Code, the rules and regulations promulgated thereunder and the following conditions and restrictions:

1. The permittee shall sign the Acknowledgement of Apprisal of Permit Conditions thereby expressly certifying the permittee's acceptance of, and agreement to comply with, the terms and conditions of this permit.  The permittee shall return a signed copy of the Acknowledgement of Apprisal of Permit Conditions to the Department.  Unless the Acknowledgement of Apprisal of Permit Conditions form is completed and filed with the Department, this permit is void.

2. **Work may not commence until a signed copy of the Acknowledgement of Apprisal of Permit Conditions is received by the Department.**  Any work authorized by this permit conducted prior to the Department's receipt of a signed copy of the Acknowledgement of Apprisal of Permit Conditions is a violation of the Dam Safety and Encroachments Act and the Clean Streams Law, and you may be subject to fines and penalties pursuant to those Acts.

3. The Department, in issuing this permit, has relied on the information and data which the permittee has provided in connection with this permit application.  If, subsequent to the issuance of this permit, such information and data prove to be false, incomplete or inaccurate, this permit may be modified, suspended, or revoked, in whole or in part, and the Department may, in addition, institute appropriate legal proceedings.

4. This permit does not give any property rights, either in real estate or material, nor any exclusive privileges, nor shall it be construed to grant or confer any right, title, easement, or interest in, to, or over any land belonging to the Commonwealth of Pennsylvania; neither does it authorize any injury to private property or invasion of private rights, nor any infringement of Federal, State, or Local laws or regulations; nor does it obviate the necessity of obtaining Federal assent when necessary.

5. The work shall at all times be subject to supervision and inspection by representatives of the Department, and no changes in the maps, plans, profiles, and specifications as approved shall be made except with the written consent of the Department.  The Department,

**PERMIT NO. E4583221-00**

however, reserves the right to require such changes or modifications in the maps, plans, profiles, and specifications as may be considered necessary. The Department further reserves the right to suspend or revoke this permit if in its opinion the best interest of the Commonwealth will be subserved thereby.

6. This permit authorizes the construction, operation, maintenance and normal repair of the permitted structures conducted within the original specifications for the water obstruction or encroachment, and in accordance with the regulations of the Department and terms and conditions of this permit. Any repairs or maintenance involving modifications of the water obstruction or encroachment from its original specifications, and any repairs or reconstruction involving a substantial portion of the structure as defined by regulations of the Department shall require the prior written approval and permit of the Department.

7. All construction debris, excavated material, brush, rocks, and refuse incidental to this work shall be removed entirely from the stream channel and placed either on shore above the influence of flood waters, or at such dumping ground as may be approved by the Department.

8. There shall be no unreasonable interference with the free discharge of the river or stream or navigation during construction.

9. If future operations by the Commonwealth of Pennsylvania require modification of the structure or work, or if, in the opinion of the Department, the structure or work shall cause unreasonable obstruction to the free passage of floodwaters or navigation, the permittee shall, upon due notice remove or alter the structures, work or obstructions caused thereby, without expense to the Commonwealth of Pennsylvania, so as to increase the flood carrying capacity of the channel or render navigation reasonably free, easy, and unobstructed, in such manner as the Department may require. No claim shall be made against the Commonwealth of Pennsylvania on account of any such removal or alteration.

10. The permittee shall notify the Department, in writing, of the proposed time for commencement of work at least 15 days prior to the commencement of construction.

11. If construction work has not been completed within the time specified in this permit and the time limit specified in this permit has not been extended in writing by the Department or if this permit has been revoked for any reason, the permittee shall, at his own expense and in a manner that the Department may prescribe, remove all or any portion of the work as the Department requires and restore the watercourse and floodplain to their former condition.

12. The permittee shall fully inform the engineer or contractor, responsible for the supervision and conduct of the work, of the terms, conditions, restrictions and covenants of this permit. Prior to the commencement of construction, the permittee shall file with the Department in writing, on a form provided by the Department, a statement signed by the permittee and an individual responsible for the supervision or conduct of the work acknowledging and accepting the general and special conditions contained in this permit. Unless the acknowledgment and acceptance have been filed, this permit is void. A copy of this permit and the acknowledgment shall be available at the work site for inspection upon request by

E-FILED
03/14/2023

an officer or agent of the Department or another Federal, State, County or Municipal Agency.

13. The permittee shall operate and maintain the structure or work authorized herein in a safe condition in accordance with the permit terms and conditions and the approved maps, plans, profiles and specifications.

14. This permit may not be transferred without prior written approval from the Department, such approval being considered upon receipt of the properly executed "Application for Transfer of Permit" form.

15. If and when the permittee desires to discontinue use or abandon the activity authorized herein, the permittee must remove all or part of the structure or work authorized and take other actions as are necessary to protect safety and the environment in accordance with a permit issued by the Department.

16. If the use of explosives in any waterways is required, the permittee shall secure the prior written permit from the Pennsylvania Fish and Boat Commission, pursuant to the Pennsylvania Fish and Boat Code, Act 1980-175 Title 30 Pennsylvania Consolidated Statutes, Section 2906. Requests should be directed to the Pennsylvania Fish and Boat Commission, Division of Environmental Services, 595 East Rolling Ridge Drive, Bellefonte, PA 16823-9685, telephone 814.359.5250.

17. Permittee shall implement and monitor an Erosion and Sedimentation Control Plan prepared in accordance with 25 Pa. Code Chapter 102 so as to minimize erosion and prevent excessive sedimentation into the receiving watercourse or body of water.

18. The project site shall at all times be available for inspection by authorized officers and employees of the Pennsylvania Fish and Boat Commission. Prior to commencement and upon completion of the work authorized by this permit, the permittee shall notify the Pennsylvania Fish and Boat Commission's Northeast Regional Office, 5566 Main Road, Sweet Valley, PA 18656, Telephone: (570) 477-5717.

19. The project site shall at all times be available for inspection by authorized officers and employees of the County Conservation District. Prior to commencement and upon completion of the work authorized by this permit, the permittee shall notify the, Monroe County Conservation District, 8050 Running Valley Road, Stroudsburg, PA 18360, 570-629-3060.

20. **SPECIAL CONDITIONS:** Permittee shall be responsible for compliance with each of the following special conditions.

**Water Supplies:**

A. If the project results in a pollution event or other adverse impact to any public or private water supplies, the permittee shall immediately notify the Department and the potentially affected public or private water supplies of the pollution event.



PERMIT NO. E4583221-00

B.  In the event that the permittee's work related to this authorization causes adverse impacts to a public or private water supply source, the permittee shall address the restoration or replacement of the impacted water supply and mitigate and/or remediate any pollution resulting from the project in accordance with applicable legal requirements.

C.  At least 72 hours in advance of beginning construction of a pipeline stream crossing, the permittee shall notify all identified users of private water supply wells within 150-ft of pipeline construction.

D.  If the Department determines that the project adversely affects a public or private water supply, the permittee shall restore or replace the affected water supply with an alternate source of water adequate in quantity or quality for the purposes served by the supply.

E.  At least 72 hours in advance of beginning construction of a pipeline stream crossing, the permittee shall notify all users of surface water intakes within one mile downstream of the crossing.  These include but are not limited to, drinking water users, industrial, and commercial users that may be impacted by turbidity or water quality changes.

F.  The permittee shall notify such downstream water users immediately of any pollution event or incident at its site that may endanger downstream users.  The permittee shall also immediately implement its approved contingency plan to prevent further adverse impacts and remediate all adverse impacts as a result of the pollution event or incident.

G.  If a public or private drinking water source not previously identified by the permittee is discovered by the permittee during construction, the permittee shall immediately notify the Department of the identified water source and shall notify that source of the permittee's construction activities.

**Historic, Cultural, or Archaeological Resources:**

H.  The permittee and its agents shall visually inspect for historic, cultural, and archaeological resources that may be encountered during construction of the project and shall immediately cease earth disturbance activities in the vicinity of the archaeological artifacts upon encountering such potential artifacts.

I.  If potential historic, cultural, or archaeological resources are discovered, the permittee shall immediately notify the Pennsylvania Historical and Museum Commission (PHMC) at P.O. Box 1026, Harrisburg, PA  17120-1026, telephone 717.783.8947, and shall concurrently notify the Department.

J.  The permittee shall not adversely impact any historic, cultural, and archaeological resources that are identified by the latest published version of the Pennsylvania Inventory of Historical Places and the National Register of Historical Places.

**Temporary Road Crossings:**



**PERMIT NO. E4583221-002**

K.  All temporary road crossings of streams and wetlands must meet all of the following conditions:

1.  The permittee shall restore and stabilize all temporary crossing sites immediately after termination of its permitted use.

2.  The permittee shall ensure that all culverts associated with temporary stream crossings provide a waterway area sufficient to adequately discharge the normal flow of the watercourse or stream, and that culverts are of sufficient length to extend beyond the toe of the clean rock fill.

3.  The permittee shall ensure that culverts are installed in such manner that overtopping of the roadway will occur within the stream channel.  This can be accomplished by providing a depressed roadway embankment.

4.  The permittee shall minimize excessive fill and excavation of stream banks by utilizing culverts with as large a diameter as possible.  The minimum diameter size of a culvert to be used shall be no less than 12 inches.

5.  Road and causeway embankments shall only consist of clean rock material to prevent stream channel sedimentation during placement, removal, and periods of overtopping.

6.  Bridges must be structurally stable and shall be single span from top of bank to top of bank, unless approved by the Department.

7.  Approach roads to temporary road crossings shall utilize original grades.  However, clean rock material or gravel to a depth of six inches above original grade can be utilized for approaches, as necessary.

8.  The waterway opening of the temporary road crossings shall be kept open and functioning at all times by maintaining the crossings free of debris and other obstructions.

9.  The permittee shall promptly repair any damage resulting from increased backwater caused by a temporary road crossing.  When warranted, in advance of major storms, the permittee shall remove temporary road crossings in the event of high waters to prevent increased backwater.

10. All wetland crossing sites shall be stabilized by appropriate means, including, but not limited to, using removable, temporary mats, pads, or other similar devices to ensure minimization of impact on the ecology of the wetland.

11. The permittee shall remove all or any portion of a temporary road crossing upon written notification to the permittee from the Department in the event the project is causing an adverse impact on public health, safety, or the environment or in any other manner violates the requirements of the Pennsylvania Clean Streams Law, the Pennsylvania Dam Safety and Encroachment Act, and/or 25 Pa. Code Chapter 105.

**E-FILED**
03/14/2023

**Site Field Verification, Restoration, and Monitoring:**

L. All wetlands within the project area shall be appropriately demarcated per the approved plans prior to the start of construction activities and shall remain demarcated until earth disturbance activities are completed, and the site has been stabilized. An acceptable means of demarcation of wetlands includes, but not limited to, the use of an orange construction safety fence and/or flags.

M. The permittee shall prepare and maintain a detailed record of pre-construction and post-construction conditions of each stream and wetland crossing, which shall include sufficient photographs to compare pre-construction and post-construction conditions. The permittee shall submit this documentation to the Department within ninety (90) days after completion of work under the respective permit.

N. Excess fill from disturbed areas and construction activities shall be located outside of the floodway, floodplain, or other bodies of water. The permittee is responsible for stabilizing any excess materials spoiled onsite or offsite, whether the permittee owns the site or others own the site.

O. Wetland excavation shall include the segregation of the soil horizons, unless written approval is received from the Department. Soil horizons shall be replaced to match pre-construction conditions. In areas where bore pits are proposed in or adjacent to wetlands, or if a restrictive layer, including but not limited to clay or fragipans, is encountered during the trench excavation, the permittee shall have knowledgeable personnel with appropriate technical expertise on-site to oversee backfilling of the trench and installation of trench plugs, to ensure that wetland hydrology is maintained.

P. Backfilled trenches shall not create the formation of a permanent ridge in a streambed or wetland.

Q. Rock riprap shall only be used in the stream bed when written approval is received from the Department.

R. Upon completion of final earthmoving activities, the permittee shall restore all disturbed wetland areas to original contours and replant with indigenous wetland vegetation in accordance with the restoration plans as presented in the permit.

S. Wetland disturbances shall be minimized and stabilized within four (4) calendar days of final earthmoving activities.

T. Streambank disturbance shall be minimized and stabilized with indigenous vegetation immediately upon completion of final earthmoving activities.

U. Stream pipeline crossings shall be restored and properly stabilized upon completion of work. Restored streams shall use a minimum of six (6) inches of native stream bed material. For streams where riprap is necessary to prevent scour, the riprap shall be



depressed sufficiently to allow six (6) inches of native stream bed material over the riprap. The restored streambed elevation shall not exceed the pre-existing streambed elevation.

V. All Palustrine Scrub-Shrub (PSS) and Palustrine Forested (PFO) wetlands within the temporary right-of-way (ROW) shall be replanted with woody species that are similar to those species present in the wetland prior to the permittee conducting construction activities.

W. The Permittee shall ensure at least an eighty-five percent (85%) survival rate of wetland plantings during the five (5) year monitoring period. Additional wetland plantings and/or reports in subsequent years beyond the initial five (5) years may be required if an eighty-five percent (85%) survivability of planted species is not achieved.

X. For a period of up to five (5) years following construction, the permittee shall monitor the stream and wetlands in the project area. Monitoring reports shall be submitted to the Department in the spring (May 15) and fall (November 15) for the first two (2) calendar years following construction and annually (November 15) for three (3) years thereafter.

1. All wetland monitoring reports shall contain information describing the wetland sites at the time of inspection, documented indicators of wetland hydrology, hydric soils, an inventory of the plant species and percent aerial coverage, and photographs of the wetland sites with plans showing the location and orientation of each of the photographs. The monitoring reports shall demonstrate that the existing wetlands on-site are maintaining pre-construction wetland conditions and delineated acreages. If the wetlands on-site are not maintaining pre-construction wetland conditions and delineated acreages, a written plan shall be submitted to correct any deficiencies identified during the monitoring phase.

2. All stream monitoring reports shall contain information describing the stream at the time of inspection and demonstrating that the existing streams on-site are maintaining pre-construction conditions and hydrology.

3. Monitoring may be terminated or extended by the Department upon written request by the permittee.

Y. For a period of up to five (5) years following construction, the permittee shall monitor for secondary impacts to hydrology, i.e., the loss of hydrology, to all watercourses with a drainage area of less than 100 acres, including those watercourses that originate within the project ROW. Reports shall be submitted to the Department in the spring and fall for the first two (2) calendar years following construction and annually for three (3) years thereafter.

1. The monitoring reports shall contain information describing the presence or absence of hydrology at the time of inspection, a narrative comparison to hydrology present in the watercourse during pre-permitting field investigation(s), and photographs of the watercourse.

2. If the monitoring identifies a diminution or complete loss of hydrology, the permittee shall evaluate whether the activities authorized by this Permit caused the loss of hydrology and submit this evaluation to the Department for review.

3. If the Department determines that the activities authorized by this Permit are contributing to the loss of hydrology, the permittee shall prepare a written plan to correct the loss of hydrology to the watercourse.  Within thirty (30) days of the Department informing permittee about its determination that authorized activities contributed to the loss of hydrology, the permittee shall submit a plan to address the loss of hydrology to the Department for review and approval.  If the Department identifies any deficiencies with permittee's plan, then the permittee shall provide the Department a written response to address the stated deficiencies within fifteen (15) days of receiving written notice of the Department-identified deficiencies, unless the Department extends that timeframe in writing.

4. The permittee shall implement the Department-approved plan within ninety (90) days of receiving written approval from the Department, unless the Department extends that timeframe in writing.

5. In the event that loss of hydrology from activities conducted under this Permit cannot be restored, the permittee shall submit a mitigation plan to the Department that sets forth the manner in which full loss of hydrology and associated water will be compensated for.  If the Department identifies any deficiencies with the permittee's mitigation plan, then the permittee shall provide the Department a written response to address the stated deficiencies within fifteen (15) days of receiving written notice of the Department-identified deficiencies, unless the Department extends that timeframe in writing.  The permittee shall implement the Department-approved mitigation plan within ninety (90) days of receiving written approval from the Department, unless the Department extends that timeframe in writing.

6. Based upon the monitoring results, the Department may terminate monitoring upon written request by the permittee and may extend the monitoring period by providing written notice to the permittee.

**Compensatory Mitigation and Monitoring:**

Z. The permittee shall provide copies of the recorded deed restrictions or conservation easements for the compensatory mitigation sites to the Department within sixty (60) days after permit issuance.

AA. In accordance with Requirement L-5, Environmental Assessment Module 4, Appendix S4-3 Compensatory Offsite Wetland Mitigation Plan, the following compensatory mitigation shall commence prior to or concurrently with wetland impacts requiring compensation as authorized by this permit and be completed within one (1) growing season thereafter:

1. The permittee is required to compensate for the functional conversion of Palustrine Forested (PFO) and Palustrine Scrub-Shrub (PSS) wetlands associated with the

PERMIT NO. E4583221-00?

E-FILED
03/14/2023

proposed project impacts by providing 1.17 acres of successful compensatory wetland mitigation (Permittee-Responsible Mitigation) through wetland enhancement at the Perin Property Mitigation Site in Plainfield Township, Northampton County.

BB.  For at least five (5) years after the Compensatory Mitigation Site restoration activities are completed, the permittee shall monitor the Compensatory Mitigation Site.  Within sixty (60) days of completing the planting plan, the permittee shall submit revised plans to the Department if as-built conditions are significantly different from the original approved plans.  Monitoring reports shall be submitted to the Department at a frequency of every six (6) months for the first two (2) years after mitigation site construction and annually for three (3) years thereafter.

    1.  The monitoring reports shall contain information describing the success of the Compensatory Mitigation Site at the time of inspection, an inventory of the surviving plant species and percent aerial coverage, photographs of each site with plans showing the location and orientation of each of the photographs, and a written plan to correct any deficiencies identified during the monitoring phase.

    2.  If the Compensatory Mitigation Sites have not achieved design objectives within the monitoring period, the permittee will undertake remedial work to assure establishment of functional wetland habitats.

    3.  Based upon the monitoring results, the Department may terminate monitoring upon written request by the permittee and may extend the monitoring period by providing written notice to the permittee.

CC.  For at least five (5) years after the on-site wetland restoration and riparian reforestation activities are completed, the permittee shall monitor the activities.  Within sixty (60) days of completing wetland restoration and riparian reforestation activities, permittee shall submit as-built drawings to the Department for the activities.  Monitoring reports shall be submitted to the Department at a frequency of every six (6) months for the first three (3) years after mitigation site construction and annually for two (2) years thereafter.

    1.  The monitoring reports shall contain information describing the success of the on-site wetland restoration and riparian reforestation activities at the time of inspection, an inventory of the surviving plant species and percent aerial coverage, photographs of each site with plans showing the location and orientation of each of the photographs, and a written plan to correct any deficiencies identified during the monitoring phase.

    2.  If the on-site wetland restoration and riparian reforestation activities have not achieved design objectives within the monitoring period, the permittee will undertake remedial work to assure establishment of functional wetland habitats.

    3.  Based upon the monitoring results, the Department may terminate monitoring upon written request by the permittee and may extend the monitoring period by providing written notice to the permittee.

**Trenchless Technology (TT) Aquatic Resource Crossings:**

DD.  This Permit does not authorize the removal of woody vegetation for the purposes of operation and maintenance of the pipeline in wetland and riparian areas that are proposed to be crossed using trenchless methodology.

EE.  The permittee shall construct and operate the TT crossings at wetlands, streams, and floodways in a manner to prevent a release of drilling fluid to "waters of the Commonwealth," as that term is defined in Section 1 of The Clean Streams Law, 35 P.S. § 691.1.  The permittee shall immediately notify the Department in the event of an Inadvertent Return and immediately activate and implement the Pollution Prevention Control Plans (PPC Plans) including the Inadvertent Returns (IR) and the Geological Hazard Assessment and Mitigation Plan to prevent any impacts to waters of the Commonwealth and other natural resources.

FF.  In accordance with the PPC Plan, the permittee shall take measures to avoid drilling activities in the vicinity of mine voids and utilities.

GG.  In accordance with the PPC Plan, the permittee shall visually monitor the ground surface and waters of the Commonwealth that are located within the vicinity of the TT while drilling operations are occurring.  This monitoring shall include walking, wading, and use of a boat, as necessary, to effectively observe and monitor for the return of materials associated with TT activities to the surface or to waters of the Commonwealth.  If loss of circulation of drilling fluid occurs or drilling fluid pressure is lost, the permittee shall immediately investigate the drilling pathway and surrounding area for an inadvertent return.  If an inadvertent return is discovered, drilling shall immediately cease.

HH.  If an inadvertent return occurs within regulated waters of the Commonwealth, the TT shall only resume after:

1.  A Registered Professional Geologist or Registered Professional Engineer inspects and evaluates the site for the likelihood of another inadvertent return; and

2.  The permittee consults with and receives written approval from the Department.

II.  For those TT sites that experience an inadvertent return and do not have an approved contingency crossing method, the permittee shall submit a permit modification to the Department for review and approval prior to commencing an alternate crossing method.

JJ.  Inadvertent returns that impact or discharge to streams, floodways, or wetlands during the TT operations shall be remediated in compliance with the PPC Plan.  If clean-up operations differ from the submitted plans, prior approval from the Department will be necessary for any modifications to the TT Plan for additional mitigation.

KK.  TT additives which are certified for conformance with ANSI/NSF Standard 60 (Drinking Water Treatment Chemicals - Health Effects) are deemed acceptable to the Department, when used in the manner indicated in the certification of the additive.  All conditions

E-FILED
03/14/2023

included as part of the additive's certification should be followed.  A current listing of certified drilling fluids is maintained by NSF at http://www.nsf.org/Certified/PwsChemicals/Listings.asp?ProductFunction=Drilling+Fluid &.  Use of drilling additives certified for conformance with ANSI/NSF Standard 60 does not relieve operators from the requirement to obtain the necessary permits to conduct TT operations.  Use of certified additives does not relieve the operator of liability should an inadvertent return or other pollution of the waters of the Commonwealth occur as a result of drilling operations.

LL. To prevent impacts to water quality from TT operations, it is recommended that: 1) an environmental inspector be on site for the duration of the crossing operation, and 2) a vac truck be available within three (3) hours to respond to inadvertent returns/releases.  In the event of an inadvertent return or release of sediment into a body of water, PFBC Bureau of Law Enforcement Regional Office must be notified within 24 hours.

**Open Trench Aquatic Resource Crossings:**

MM. The permittee shall construct open trench pipeline crossings of streams in dry conditions by constructing during periods of no water flow and/or by installing stream flow bypass systems (flumed or pumped) through the affected area.  Bypass systems must stay in use until streambeds and banks are adequately stabilized.  Downstream flow must be maintained during the construction.

NN. Each stream crossing shall be conducted in an uninterrupted process in the shortest period of time possible.  Impacts to waters of the Commonwealth shall be avoided, to the extent practicable, and if not practicable, then minimized in accordance with the permittee's approved plans.

OO. The permittee may cross dry channels, dry swales, and dry intermittent streams without the use of stream flow bypass systems if the channel has no flow and the stream crossing and stabilization can be completed in dry conditions and within twenty-four (24) hours, unless approved in writing by the Department.  Standby sandbag dams and pumps shall be located on-site and installed in the event of precipitation resulting in channel flow.

PP. The permittee shall implement procedures that take into account the weather forecast and current conditions prior to commencing stream crossing installations to ensure that weather and stream conditions will not result in a pollution event.  Such procedures could include a sign-off sheet documenting that the Environmental Inspector, Foreman, and any other responsible individual agree that the crossing can be constructed during that specific time.

**Habitat Conservation Plans and Threatened and Endangered Species Protection:**

QQ. Prior to conducting any future maintenance activities on the pipeline or right of way which involves disturbance, the permittee shall conduct a current Pennsylvania Natural Diversity Inventory search, shall obtain clearance(s) for any species or resource where a potential impact is identified, provide the avoidance and mitigation plan to the Department prior to



initiating such maintenance work and shall implement, and adhere to all avoidance measures outlined in such clearance(s).

RR. The permittee shall comply with and implement all Avoidance Measures, Conservation Measures, and other recommendations identified by the jurisdictional resource agencies for the protection of any federal or state threatened or endangered species or species of special concern, including:

1.  Restrictions and voluntary conservation measures approved by United States Fish & Wildlife Service (USFWS) for the protection of the *Myotis sodalist* (Indiana Bat) and *Myotis septentrionalis* (Northern Long-Eared Bat);

2.  Restrictions approved by Pennsylvania Game Commission (PGC) and those found within the most recent Bat Restriction Summary Table for the protection of the *Myotis lucifugus* (Little Brown Bat) and *Perimyotis subflavus* (Tri-Colored Bat);

3.  Requested measures set forth by the Department of Conservation and Natural Recourses (DCNR) for the protection of the *Glyceria obtusa* (Blunt Manna-grass), *Solidago speciosa* (Showy Goldenrod), and *Platanthera blephariglottis* (White Fringed Orchid) populations;

**Seasonal Restrictions:**

SS.  The permittee shall not perform any in-stream work in waters listed by the Pennsylvania Fish and Boat Commission as **Class A wild trout fishery streams** and their tributaries between October 1 and April 1 without the prior written approval of the Pennsylvania Fish & Boat Commission's Division of Environmental Services, 450 Robinson Lane, Bellefonte, PA 16823-9620; telephone 814.359.5147. This applies to Pohopoco Creek (Poplar Creek through linkage), Sugar Hollow Creek, and UNT to Pohopoco Creek (RM 22.92), and their watersheds.

TT.  The permittee shall not perform any in-stream work in waters listed by the Pennsylvania Fish and Boat Commission as **other wild trout streams** or their tributaries between October 1 and December 31 without the prior written approval of the Pennsylvania Fish and Boat Commission's Division of Environmental Services, 450 Robinson Lane, Bellefonte, PA 16823-9620; telephone 814.359.5147. This applies to all impacted streams in Monroe county.

UU.  To minimize the potential for impact to state or federally listed bat species, the permittee shall conduct pipeline construction activities involving ground disturbance (i.e., trenching, grading, mechanized tree felling, and pipeline installation) between April 1 and November 15 within the specified buffers as described in Transco's August 19, 2022 Bat Restriction Summary Table.

VV.  To minimize the potential for impact to state or federally listed bat species, the permittee shall conduct tree cutting between November 16 and March 31 within the specified buffers as described in Transco's August 19, 2022 Bat Restriction Summary Table.

E-FILED
03/14/2023

PERMIT NO. E4583221-00?

**Miscellaneous:**

WW. Pollution of any waterway with harmful chemicals, fuels, oils, greases, bituminous material, acid, or other harmful or polluting materials, is prohibited.

XX. Herbicide spraying of wetlands is not authorized by this Permit. Additionally, with the exception of a 10-foot wide area centered over the pipeline, maintenance mowing of wetlands is not authorized by this Permit. The permittee shall place and maintain signs or other demarcation around the boundary of each wetland to clearly delineate the areas where this maintenance is not authorized. The permittee shall place the signs or other demarcations when all restoration work is completed and prior to permit termination.

YY. This permit does not convey any real property rights or interests or authorization to trespass on privately-owned riparian land. By accepting this Permit, the permittee certifies that he/she holds title, easement, right, or other real interest in the riparian land. Any dispute over property ownership and/or right of legal access is solely a matter for private litigation.

ZZ. Riprap and stone used throughout the project, including the construction of causeways and coffer dams, shall be free of fines and silts, or other non-erodible material.

AAA. All temporary water withdrawal intake structures and all appurtenant works shall be removed from the watercourse, body of water, floodway, and floodplains as prescribed within the permit application. Deviations from the approved permit application shall require prior written approval from the Department.

BBB. In accordance with the Erosion and Sediment Control Plan, trench plugs shall be placed at each of the following locations:

1. At ten (10) feet from the top of each bank of a stream
2. At fifty (50) feet from the top of each bank of a stream
3. At ten (10) feet from the edge of a wetland
4. At fifty (50) feet from the edge of a wetland

CCC. Place a minimum of one (1) trench plug at a maximum spacing of 100 feet between trench plugs within a wetland. Wetland crossings less than fifty (50) feet do not require an internal trench plug.

DDD. If the permittee encounters a groundwater seep during excavation, the permittee shall place a trench plug at ten (10) feet from each side of the seep.

EEE. Any french drains installed as part of temporary de-watering for construction activities shall be removed or otherwise rendered inoperable prior to final site restoration.



PERMIT NO. E4583221-00

FFF. Water pumped from any construction area shall be directed through a sediment trap, basin, or a filter bag discharging into an appropriate vegetated filter area to prevent a discharge of sediment into any waters of the Commonwealth.

GGG. This permit authorizes only those impacts to waters of the Commonwealth that were specifically described in the approved permit application(s) and revisions. Any additional impacts to waters of the Commonwealth from water obstruction or encroachment activities including, but not limited to, temporary access roads, lay-down areas, staging areas, or temporary work spaces, that have not been specifically identified in the approved permit application are not authorized. Any proposed changes regarding the specific impacts will require a permit amendment.

HHH. No deviation in the construction methodology or project design shown on the approved drawings is authorized unless approved through an amendment of this Permit by the Department in writing. If the specific resource crossing has pre-approved primary, secondary, or tertiary methods, the permittee shall send a written notification to the Department and the respective county conservation district prior to the change in method.

III. This permit does not relieve the permittee of the obligation of complying with all Federal, interstate compact, State laws, regulations and standards, and local ordinances applicable to the construction, operation or maintenance of the water obstruction or encroachment.

JJJ. The permittee shall follow the measures specified in the Preparedness, Prevention, and Contingency (PPC) Plan during construction. The permittee shall maintain a copy of the PPC Plan on-site at all times during construction, train all staff to use and implement this plan, and have this plan available to provide at the request of any Department inspector.

KKK. In accordance with the Erosion and Sediment Control Plan, all synthetic erosion control features (e.g. silt fencing, netting, mats), which are intended for temporary use during construction, will be completely removed and properly disposed in a timely manner. Only natural fiber materials which will degrade over time will be used as permanent erosion control measures, or if used temporarily, may be abandoned in place.

LLL. A copy of the Permit, Acknowledgment of Apprisal of Permit Conditions, the Erosion and Sediment Control Plans, and any other applicable plans or State and Federal authorizations, must be maintained on site during construction and available at the work site for inspection upon request by any officer or agent of the Department or any other Federal, State, County or Municipal agency.

DEPARTMENT OF ENVIRONMENTAL PROTECTION

02/03/2023

Domenic Rocco, P.E.                                                    Issue Date
Director
Regional Permit Coordination Office



E-FILED
03/14/2023

Permit No. E4583221-002

## ACKNOWLEDGMENT OF APPRISAL OF PERMIT CONDITIONS

I, _____

(Permittee name)

and _____

(Name address and telephone of individual responsible for supervision of work)

_____

acknowledge and accept the general and special conditions of Permit No. 4583221-002, issued to

**Transcontinental Gas Pipe Line Company, LLC
2800 Post Oak Blvd
Level 11
Houston, TX 77056**

which authorizes the permittee to:

**construct, operate and maintain water obstructions and encroachments associated with the Monroe County portion of the Regional Energy Access Expansion Project.  The Monroe County portion consists of 13.8 miles of 42-inch diameter pipeline and associated appurtenant structures. The proposed impacts in Monroe County include 205 feet of temporary impacts and 226 feet of permanent impacts to tributary to Pohopoco Creek (HQ-CWF, MF), Sugar Hollow Creek (HQ-CWF, MF), tributaries to McMichael Creek (HQ-CWF, MF), tributaries to Poplar Creek (EV, MF), tributaries to Tunkhannock Creek (HQ-CWF, MF), and tributary to Mud Run (HQ-CWF, MF); 0.69 acres of temporary impacts and 0.82 acres of permanent impacts to floodway; 1.21 acres of temporary impacts and 1.62 acres of permanent impacts to Palustrine Emergent (PEM), Palustrine Scrub-Shrub (PSS), Palustrine Forested (PFO), and Palustrine Open Water (POW). 1.58 acres of permanent wetlands impacts are to exceptional value wetlands.**

**The permittee is required to compensate for the functional conversion of PFO and PSS wetlands associated with the proposed project impacts by providing 1.17 acres of successful compensatory wetland mitigation (Permittee-Responsible Mitigation) through wetland enhancement at the Perin Property Mitigation Site (Latitude: 40° 50' 41"; Longitude: -75° 14' 11") in Plainfield Township, Northampton County.**

**The Monroe County portion of the proposed project starts approximately 0.27 mile north of Rolling Hills Road (T-378) ( Latitude: 40° 53' 48"; Longitude: -75° 22' 14") in Ross Township and extends to Long Pond Road (State Route 4002) ( Latitude: 41° 03' 12"; Longitude: -75° 31' 34") in Tunkhannock Township.  The Effort Loop is located in Ross Township, Chestnuthill Township, and Tunkhannock Township, Monroe County.**



_____          _____
(Permittee signature)                                (Date)


_____          _____
(Signature of individual responsible                  (Date)
  for supervision of work)

Return To:

Department of Environmental Protection
Regional Permit Coordination Office
Rachel Carson State Office Building
P.O. Box 69206
Harrisburg, PA 17105
RA-EPREGIONALPERMIT@pa.gov



**Permit No. 4583221-002**

**WATER OBSTRUCTION AND ENCROACHMENT PERMIT
COMPLETION REPORT**

Project Location:

County    _____

Municipality    _____

I (We) hereby certify that the _____ work authorized by the above referenced permit _____

_____

_____

_____

was completed on _____ in accordance with the plans approved and that all
                     (Date)

unauthorized obstructions have been removed.

Name:    _____
               (Typed or printed)

Signature:    _____

Title:    _____

Firm:    _____

Date:    _____

Return To:

Department of Environmental Protection
Regional Permit Coordination Office
Rachel Carson State Office Building
P.O. Box 69206
Harrisburg, PA 17105
RA-EPREGIONALPERMIT@pa.gov