**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| TRANSCONTINENTAL GAS PIPE LINE COMPANY, LLC, | : | CIVIL ACTION NO. 1:23-CV-463 |
| | : | |
| | : | (Judge Conner) |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| PENNSYLVANIA ENVIRONMENTAL HEARING BOARD, *et al.*, | : | |
| | : | |
| | : | |
| Defendants | : | |

**MEMORANDUM**

Plaintiff Transcontinental Gas Pipe Line Company, LLC ("Transco"), moves the court to preliminarily enjoin an administrative appeal now proceeding before the Pennsylvania Environmental Hearing Board ("PAEHB").  Transco posits that although the Natural Gas Act ("NGA" or "Act"), 15 U.S.C. § 717 *et seq.*, provides limited authority for the Pennsylvania Department of Environmental Protection ("PADEP") to participate in environmental regulation by issuing certain pipeline-related permits, the Act otherwise forecloses the Commonwealth's administrative review process and vests exclusive jurisdiction to review PADEP-issued permits with the Third Circuit Court of Appeals.  For the reasons that follow, we will deny Transco's motion.

**I.   Procedural History**

Transco commenced the above-captioned action with the filing of a two-count complaint on March 16, 2023.  Transco names as defendants the PAEHB and its judges, as well as the appellants in the PAEHB appeal underlying the instant

lawsuit (Citizens for Pennsylvania's Future, the Delaware Riverkeeper Network, and Delaware Riverkeeper Maya K. van Rossum).[1]  Transco seeks a declaratory judgment that the Third Circuit Court of Appeals has original and exclusive jurisdiction over review of the pipeline-related permits at issue in the PAEHB appeal (Count I) and that the NGA otherwise preempts PAEHB review of those permits (Count II).

Transco filed the instant motion for preliminary injunction one week after filing its complaint, and we scheduled a telephonic conference call concerning the motion for March 27, 2023.  In the interim, the PADEP moved for leave to intervene, and the court granted that motion.  Counsel for all parties agreed during the March 27 call that an evidentiary hearing is unnecessary and the motion can be resolved on the papers.  The motion is now fully briefed and ripe for disposition.[2]

---

[1] During a telephonic scheduling conference on March 27, 2023, counsel for the PAEHB and its judges expressed they take no position on the instant motion. We refer to defendants who oppose the motion—Citizens for Pennsylvania's Future, Delaware Riverkeeper Network, and the Delaware Riverkeeper—as "the PAEHB Appellants" herein.

[2] Our briefing order instructed the parties to note in their respective briefs whether they request oral argument.  (See Doc. 18 ¶ 3).  The PAEHB Appellants' and PADEP's briefs are silent with respect to oral argument, and Transco explicitly states it is not requesting argument on its motion.  (See Doc. 25 at 21).  The court concludes oral argument is unnecessary on the question of whether preliminary injunctive relief is appropriate but reserves the right to schedule argument on the merits of this case at a later juncture.

II.     __Factual and Statutory Background[3]__

The Federal Energy Regulatory Commission ("FERC") has exclusive authority under the Natural Gas Act to regulate the construction and operation of interstate natural gas sales and transportation.  See Del. Riverkeeper Network v. Sec'y Pa. Dep't of Env't Prot., 833 F.3d 360, 367 (3d Cir. 2016);[4] see also 15 U.S.C. § 717 *et seq.*  Before a natural-gas company may construct or operate facilities which transport natural gas (*e.g.*, pipelines), it must obtain from FERC a "certificate of public convenience and necessity."  See Riverkeeper I, 833 F.3d at 367 (citing 15 U.S.C. § 717f(c)).  Issuance of such certificates is conditioned upon the company's receipt of various state and federal authorizations required for the project.  See id. (citation omitted).

Transco is a "natural-gas company" as that term is defined in the NGA. (See Doc. 1 ¶ 1); see also 15 U.S.C. § 717a(6).  On March 26, 2021, Transco filed an application with FERC requesting authorization to construct and to operate the Regional Energy Access Expansion Project ("REAE Project"), a pipeline expansion and upgrade project impacting Pennsylvania, New Jersey, and Maryland.  (See Doc.

---

[3] The background that follows derives largely from Transco's complaint, exhibits attached thereto, and applicable statutes.

[4] The Riverkeeper series features prominently in the parties' briefing.  We refer to these cases as Riverkeeper I through Riverkeeper V.  See Del. Riverkeeper Network v. Sec'y of Pa. Dep't of Env't Prot., 833 F.3d 360 (3d Cir. 2016) ("Riverkeeper I"); Del. Riverkeeper Network v. Sec'y of Pa. Dep't of Env't Prot., 870 F.3d 171 (3d Cir. 2017) ("Riverkeeper II"); Del. Riverkeeper Network v. Sec'y Pa. Dep't of Env't Prot., 903 F.3d 65 (3d Cir. 2018) ("Riverkeeper III"); Del. Riverkeeper Network v. Sec'y Pa. Dep't of Env't Prot., 751 F. App'x 169 (3d Cir. 2018) (nonprecedential) ("Riverkeeper IV"); Del. Riverkeeper Network v. Sec'y Pa. Dep't of Env't Prot., 783 F. App'x 124 (3d Cir. 2019) (nonprecedential) ("Riverkeeper V").

8-2, Ex. A at 1 ¶ 1;⁵ see also Doc. 1 ¶¶ 28-30).  On January 11, 2023, FERC issued to

Transco an Order Issuing Certificate and Approving Abandonment ("Certificate

Order"), a type of certificate of public convenience and necessity.  (See Doc. 1 ¶ 2;

see also Doc. 8-2, Ex. A).  The Certificate Order authorizes Transco to construct and

to operate the REAE Project, subject to Transco obtaining certain requisite federal

authorizations.  (See Doc. 1 ¶ 3; see also Doc. 8-2, Ex. A. at 30 ¶ (A), (C)(3)).  One such

authorization is a Water Quality Certification under Section 401 of the Clean Water

Act, 33 U.S.C. § 1341, which in turn is conditioned on Transco obtaining the permits

at issue in this case, specifically, an Erosion and Sediment Control Permit and

Water Obstruction and Encroachment Permits ("REAE Permits"), from the

PADEP.  (See Doc. 1 ¶ 4; see also Doc. 1-5 at 6).

The PADEP issued the REAE Permits on February 3, 2023.  (See Doc. 1-3).

On March 14, 2023, the PAEHB Appellants appealed the REAE Permits to the

PAEHB.  (See Doc. 1 ¶ 14).  Transco commenced this suit two days later, seeking to

enjoin the PAEHB appeal.  The PAEHB has since issued a prehearing order setting

discovery and other deadlines, but it has not taken any substantive action on the

appeal.  (See Doc. 8-2, Ex. B).

## III.   Legal Standard

A preliminary injunction is an extraordinary remedy and should issue

only in limited circumstances.  See Issa v. Sch. Dist. of Lancaster, 847 F.3d 121, 131

(3d Cir. 2017) (citing Ferring Pharm., Inc. v. Watson Pharm., Inc., 765 F.3d 205, 210

---

⁵ For ease of reference, we utilize the ECF header pagination in addition to
any internal paragraph numbering when citing to the parties' exhibits.

(3d Cir. 2014)).  We apply a familiar four-factor test in determining the propriety of preliminary injunctive relief.  The movant must, as a threshold matter, establish the two "most critical" factors: likelihood of success on the merits and irreparable harm.  Reilly v. City of Harrisburg, 858 F.3d 173, 179 (3d Cir. 2017).  Under the first factor, the movant must show that "it can win on the merits."  Id.  This showing must be "significantly better than negligible but not necessarily more likely than not."  Id.  The second factor carries a slightly enhanced burden: the movant must establish that it is "more likely than not" to suffer irreparable harm absent the requested relief.  Id.  Only if these "gateway factors" are satisfied may the court consider the third and fourth factors: the potential for harm to others if relief is granted, and whether the public interest favors injunctive relief.  Id. at 176, 179. The court must then balance all four factors to determine, in its discretion, whether the circumstances favor injunctive relief.  Id. at 179.

## IV.    Discussion

Transco[6] asks this court to preliminarily enjoin the appeal of the REAE permits currently proceeding before the PAEHB.  Transco claims the Natural Gas Act preempts Pennsylvania's administrative review processes, installing the Third Circuit Court of Appeals where the PAEHB ordinarily sits in the Commonwealth's administrative scheme and stripping the PAEHB of its jurisdiction to review the

---

[6] The PADEP concurs in Transco's request for injunctive relief, and it largely echoes Transco's arguments in its own briefing.  (See generally Doc. 23).  For ease of reference, we cite primarily to Transco's briefing and argumentation.

REAE permits.  Because we are unconvinced, at least at this preliminary stage, that

our court of appeals would share Transco's view, we will deny Transco's motion.

### A.    Likelihood of Success[7]

A party seeking preliminary injunctive relief must establish a reasonable

likelihood of success on the merits of their claim.  See Reilly, 858 F.3d at 179.  Our

court of appeals has explained that this showing must be "significantly better than

negligible but not necessarily more likely than not."  See id.  The requisite strength

of a claim on the merits depends ultimately on the balance of the harms: "the more

net harm an injunction can prevent, the weaker the plaintiff's claim on the merits

can be while still supporting some preliminary relief."  See id.

The NGA grants FERC exclusive authority to regulate construction and

operation of interstate natural gas pipelines.  See Riverkeeper I, 833 F.3d at 367;

see also 15 U.S.C. § 717 et seq.  The United States Supreme Court has held that in

enacting the NGA, Congress "occupied the field of matters relating to wholesale

sales and transportation of natural gas in interstate commerce."  See Schneidewind

---

[7] The EHB Appellants raise a cursory argument in their opposition brief
suggesting Transco has failed to establish a basis for this court to exercise subject
matter jurisdiction.  (See Doc. 24 at 32-33).  The argument appears to be premised
on a mistaken understanding of the relief Transco seeks; the EHB Appellants aver
this court has "no role in the review of permits issued for interstate natural gas
facilities subject to the NGA" and therefore cannot issue an injunction "in aid of
its NGA jurisdiction."  (See id. at 33).  Transco, however, is not asking this court
to review the REAE permits; Transco appropriately invokes our federal question
jurisdiction under 28 U.S.C. § 1331, and asks us to declare its rights under federal
law (viz., the NGA) pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201.
(See Doc. 1 ¶ 26; Doc. 25 at 20).  The EHB Appellants do not renew this argument in
their later-filed motion to dismiss and supporting brief, (see Docs. 27, 28), and we
deem it to have been abandoned.

v. ANR Pipeline Co., 485 U.S. 293, 305 (1988).  Congress has, however, carved out some room for state involvement in the otherwise "exclusively federal domain," see id., of interstate pipeline regulation.  Specifically, the NGA "allows states to participate in environmental regulation of [interstate natural gas] facilities under three federal statutes: the Clean Air Act, the Coastal Zone Management Act, and the Clean Water Act."  Riverkeeper I, 833 F.3d at 368 (citing 15 U.S.C. § 717b(d)).

Transco concedes the REAE permits are required under Section 401 of the Clean Water Act and thus fall within the NGA's express statutory carveout for state participation.  But Transco claims the NGA subsumes the Commonwealth's ordinary administrative review process after that point—including the pending quasi-judicial appeal before the PAEHB—and requires any request for review of those permits be made to the Third Circuit Court of Appeals.  (See Doc. 10 at 2). Transco's argument is twofold.  It first claims the PAEHB appeal is proceeding in contravention of the NGA's judicial-review provision—15 U.S.C. § 717r(d)(1)—which Transco says vests original and exclusive jurisdiction "over the review of PADEP-issued permits," like the REAE permits, with the Third Circuit.  (See Doc. 10 at 12-17).  And it argues in the alternative that the NGA otherwise preempts all state administrative review beyond the PADEP's issuance of the required permits.  (See id. at 18-24).  Despite Transco's asseverations to the contrary, the existing decisional law favors the EHB Appellants.

As a preliminary matter, Transco has no recourse in the NGA's judicial-review provision, 15 U.S.C. § 717r(d)(1).  That statute reads, in pertinent part, as follows:

> The United States Court of Appeals for the circuit in which a facility subject to section 717b of this title or section 717f of this title is proposed to be constructed, expanded, or operated shall have original and exclusive jurisdiction over any civil action for the review of an order or action of a . . . State administrative agency acting pursuant to Federal law to issue, condition, or deny any permit, license, concurrence, or approval . . . required under Federal law . . . .

15 U.S.C. § 717r(d)(1).  Section 717r(d)(1) on its face speaks only to where a "*civil action* for the review of" certain state administrative actions must be filed; it says nothing of a state's ordinary administrative processes or the various levels of review those processes typically entail.  See id. (emphasis added).  Our court of appeals has interpreted "civil action" as used in the NGA to encompass only judicial proceedings.  See Township of Bordentown v. FERC, 903 F.3d 234, 266-68 (3d Cir. 2018).  In concluding that Section 717r(d)(1) did not bar an administrative appeal of certain pipeline-related permits within New Jersey's Department of Environmental Protection ("NJDEP"), the court held in no uncertain terms that "a 'civil action' refers only to cases brought in courts of law or equity and *does not* refer to hearings or other quasi-judicial proceedings before administrative agencies."  See id. at 267 (emphasis added).

Transco spills much ink attempting to distinguish Bordentown on its facts. Transco notes (correctly) that New Jersey's administrative structure is different than its Pennsylvania counterpart: in New Jersey, appeals of permitting actions are

kept "in house" within the singular entity of the NJDEP, whereas Pennsylvania's General Assembly outsourced appeals of PADEP actions to the PAEHB. (See Doc. 25 at 7-9); see also 35 PA. STAT. AND CONS. STAT. ANN. § 7513(a) (establishing PAEHB as "independent quasi-judicial agency"). That factual distinction is one without a legal difference for purposes of determining whether a PAEHB appeal is a "civil action" filed elsewhere than the Third Circuit Court of Appeals, in contravention of the NGA's judicial-review provision. Transco does not and cannot dispute that a PAEHB appeal is a quasi-judicial proceeding before an administrative agency—not a judicial proceeding brought in a court of law or equity—and it therefore is not a "civil action" for purposes of Section 717r(d)(1). See Bordentown, 903 F.3d at 266-68. Accordingly, Transco has not established a likelihood of success on the merits of its claim for "enforcement" of Section 717r(d)(1).

Transco's preemption claim rests on a similarly flawed attempt to differentiate Bordentown as well as its misapprehension of the Riverkeeper cases. Understanding Transco's argument—and why it is unpersuasive—requires a brief exploration of the Riverkeeper cases.

In Riverkeeper I, our court of appeals considered its jurisdiction under Section 717r(d)(1) over certain certifications issued by the PADEP and NJDEP. See Riverkeeper I, 833 F.3d at 371. The question before the court was whether those certifications had been issued "pursuant to Federal law" as contemplated by the NGA. See id. The court held that they were, hence the civil action for their review was appropriately filed with the Third Circuit under Section 717r(d)(1). See id. at 371-73. In Riverkeeper II, the court was asked whether PADEP permitting

decisions were "final" and ripe for judicial review, even though they had not been reviewed by the PAEHB—which ordinarily would be the next step in the Commonwealth's administrative process. See Riverkeeper II, 870 F.3d at 176. The court concluded the PADEP action at issue in that case *was* final because there had been no timely appeal to the PAEHB, making the PADEP's decision "final" under state law; the court left for another day the broader question whether "the Natural Gas Act requires finality and how such a requirement would interact with Pennsylvania's administrative scheme." See id. at 177-78.

The court issued Riverkeeper III one year later and answered the question it had left open in Riverkeeper II, specifically, "whether the availability of further state administrative review" in the form of an appeal to the PAEHB "would render [PADEP's] decision non-final." See Riverkeeper III, 903 F.3d at 71-72. The court examined the Commonwealth's administrative processes, emphasizing in particular that the PADEP and PAEHB are independent agencies and that by operation of Pennsylvania law, PADEP orders are effective upon issuance. See id. at 72-75. The court concluded that "[n]otwithstanding the availability of an appeal to the EHB," the PADEP's decision bore all of the "traditional hallmarks of final agency action" and, accordingly, the court of appeals had "exclusive jurisdiction to hear any 'civil action for the review of' such a decision." See id. The last two cases in the series, Riverkeeper IV and Riverkeeper V, then apply Riverkeeper III to summarily reject finality-based jurisdictional arguments and reaffirm the Third Circuit's jurisdiction to hear civil actions for review of final PADEP decisions under Section 717r(d)(1). See Riverkeeper IV, 751 F. App'x at 172-73; Riverkeeper V, 783 F. App'x at 127.

This summary is notable for what it lacks, which is any discussion of preemption.  The reason for this is uncomplicated: the Riverkeeper cases were not preemption cases.[8]  The decisions speak only to the point at which our court of appeals obtains jurisdiction under Section 717r(d)(1) to entertain a civil action for review of state administrative action.  In not one of those decisions did the court suggest or even imply that ripening of a civil action for purposes of *judicial review* under Section 717r(d)(1) simultaneously divests the PAEHB of its ability to conduct *administrative review* otherwise available under Pennsylvania law.  Rather, the cases "proceeded based on the understanding—express or implicit—that state administrative review"—namely, an appeal to PAEHB—"*was available if desired.*" See Bordentown, 903 F.3d at 269 (emphasis added) (citing Riverkeeper II, 870 F.3d at 177, and noting court "assumed that the petitioners could have sought an appeal to the [PAEHB] if they had done so within the time period provided in the Pennsylvania statute," and Riverkeeper III, 903 F.3d at 74, and noting court found order to be final and appealable to the Third Circuit "[n]otwithstanding the availability of an appeal to the EHB" (alteration in original)).

Bordentown, however, *is* a preemption case, and it strongly suggests that our court of appeals views the relationship between the NGA and state administrative schemes differently than Transco.  In Bordentown, the court considered whether

---

[8] Indeed, only Riverkeeper I even mentions preemption, and it is in the context of explaining that while the NGA "preempts state environmental regulation of interstate natural gas facilities," it "allows states to participate in environmental regulation of these facilities" under the Clean Air Act, Coastal Zone Management Act, and Clean Water Act.  See Riverkeeper I, 833 F.3d at 368.

the NJDEP erred in concluding, in reliance on Riverkeeper I, that the NGA
stripped the NJDEP of its jurisdiction under state law to grant adjudicatory
hearings from pipeline-related permitting decisions.  See Bordentown, 903 F.3d
at 266.  In holding the NJDEP did err, the court made plain what the Riverkeeper
decisions implied: "Because . . . the NGA explicitly permits states 'to participate in
environmental regulation of [interstate natural gas] facilities' under the [Clean
Water Act], . . . and only removes from the states the right for *their courts* to hear
civil actions seeking review of interstate pipeline-related state agency orders made
pursuant thereto, the NGA leaves untouched the state's internal administrative
review process, *which may continue to operate as it would in the ordinary course
under state law.*"  See id. at 268 (emphasis added) (first alteration in original).  And
in the ordinary course under Pennsylvania law, the next step in the administrative
review of the PADEP permits is an appeal to the PAEHB.  See 35 PA. STAT. AND
CONS. STAT. ANN. § 7514.

Transco underscores the structural difference between the New Jersey
administrative process reviewed in Bordentown and the Pennsylvania process at
issue here, claiming it was the "intra-agency" nature of New Jersey's administrative
process that allowed the NJDEP adjudicatory hearing to survive NGA preemption.
(See Doc. 25 at 7-9).  The court did describe New Jersey's administrative structure
and the "intra-agency" nature of the review in its opinion, but never so much as
implied that structure was dispositive or that its preemption analysis was unique to
New Jersey's unitary system.  *Per contra*, the court acknowledged administrative
processes "vary widely" from state to state and postulated that, recognizing this

diversity, Congress drafted Section 717r(d)(1) to preempt state judicial review only, while leaving administrative review to the states and their various devices.  See Bordentown, 903 F.3d at 268.  The court's ultimate conclusion bears none of the nuance Transco seeks to inject.  Its holding is clear and unequivocal: the NGA "does not preempt state administrative review of interstate pipeline permitting decisions."  See id. at 269.

Transco's remaining arguments against this result fail to persuade us that preliminary injunctive relief is warranted—and again are answered either directly or by implication in Bordentown.  Transco posits any adjudication by the PAEHB technically would not be a decision "to issue, condition, or deny" the REAE permits, and therefore Transco would be without any path to appeal an adverse decision of the PAEHB to the Third Circuit.  (See Doc. 25 at 16-19).  But the same argument would apply to a final decision by the NJDEP; the initial agency action is a decision to issue, condition, or deny a permit, but the final step, a ruling from the NJDEP's commissioner after the adjudicatory hearing, would be a decision to "affirm, reject, or modify" the initial decision.  See N.J. STAT. ANN. § 13:9B-20.  The court of appeals apparently did not deem that distinction a bar to allowing the NJDEP adjudicatory hearing to proceed.

The decisional law also refutes Transco's claim that allowing administrative appeals to the PAEHB would create an "unworkable" dual-jurisdiction system and defeat the NGA's purpose to "streamline the review of state decisions taken under federally delegated authority."  (See Doc. 25 at 5, 13-14).  The Bordentown court considered precisely the same argument—raised there by Transco as intervenor, as

well as the NJDEP—and was unconvinced.  See Bordentown, 903 F.3d at 271-72.

The court acknowledged that, if the NJDEP's permitting decision was final when

issued (as argued there by Transco and the NJDEP), it may well be that an objector

has two avenues of relief: an administrative hearing before the NJDEP, *or* a

collateral civil action filed with the Third Circuit.  See id.  Confirming that the

Riverkeeper cases are not preemption cases, the court of appeals clarified the

finality rule developed therein reflects "a constraint on our own jurisdiction, *not* a

determination that we are the only forum available to consider final orders."  See

id. (emphasis added).  The court explained: "The language of the statute merely

requires that *judicial challenges* to the outcome of the administrative process come

straight to us.  If, however, a state allows for an internal administrative review of a

permitting process, such a process does not contravene the NGA."  See id. at 272;

see also id. at 271 n.25 (observing "even though a petitioner might have the right

immediately to commence a civil action in this Court, this does not necessarily

extinguish his or her right instead to seek redress via the available administrative

avenues before filing that civil action").[9]

_____

[9] Transco also leans heavily on Tennessee Gas Pipeline Co. v. Delaware
Riverkeeper Network, 921 F. Supp. 2d 381 (M.D. Pa. 2013), rejected in part by
Riverkeeper III, 903 F.3d at 71.  The court in Tennessee Gas granted the natural
gas company's motion for preliminary injunction and enjoined ongoing PAEHB
proceedings, finding Section 717r(d)(1) required that appeals challenging PADEP-
issued permits—even nonfinal permits—be filed with the Third Circuit and thus
preempted PAEHB review.  See Tenn. Gas., 921 F. Supp. 2d at 388-95.  The case
predates (and is rejected in part by) the Riverkeeper cases, and the district court
did not have the benefit of the court of appeals' view, expressed five years later in
Bordentown, that Section 717r(d)(1) establishes an exclusive forum for *judicial*
review—when desired—of state administrative action, but does not preempt
otherwise-available state administrative appeals processes.

Finally, we note that the Commonwealth Court of Pennsylvania has adopted a similar reading of Bordentown.  In Cole v. Pennsylvania Department of Environmental Protection, 257 A.3d 805 (Pa. Commw. Ct. 2021), the court addressed precisely the question presented here and read Bordentown and the Riverkeeper cases the same way.  The court concluded there are two paths for those seeking to challenge a permitting decision by the PADEP: they may exercise their right, in

---

NE Hub Partners, L.P. v. CNG Transmission Corp., 239 F.3d 333 (3d Cir. 2001), on which Transco also relies, is inapposite.  The natural gas company there (NE Hub) received a certificate order from FERC conditioned in part on receipt of permits from the PADEP.  See NE Hub, 239 F.3d at 339.  The PADEP issued permits to NE Hub, and two competitor companies appealed the permits to the PAEHB, seeking to relitigate 30 issues all of which had been raised before and addressed by FERC.  See id.  NE Hub filed suit in this court, seeking declaratory judgment that the PAEHB could not revisit FERC's various technical, safety, or environmental determinations.  See id. at 339-40.  The district court dismissed the suit on ripeness (among other) grounds, determining that participating in a state regulatory review process the result of which may ultimately be preempted is not itself a cognizable harm.  See id. at 340.  The Third Circuit reversed, finding the process itself could be a burden and thus the suit in district court was ripe.  See id. at 344; see also id. at 348-49.  Transco claims NE HUB "strongly suggested that collateral attacks via state environmental review processes are field preempted by the NGA and conflict preempted to the extent they contradict the FERC's orders." (See Doc. 10 at 22).  We disagree with Transco as to NE Hub's application here. First, as with the Riverkeeper cases, NE Hub is at bottom a ripeness decision, not a preemption decision.  Second, the court did not view its decision as one of sweeping preemption; rather, it understood NE Hub's concern to be limited to relitigating the 30 issues already decided by FERC and observed "NE Hub does not suggest that federal preemption precludes E.H.B. from considering other issues."  See id. at 345. Third, even if NE Hub had erected a complete preemption bar prohibiting all state regulatory involvement in review of pipeline-related permits, the decision predates 2005 amendments to the NGA expressly authorizing states to participate in environmental regulation under the Clean Water Act.  See Energy Policy Act of 2005, P.L. No. 109-58, 119 Stat. 594, § 311(c)(2) (codified at 15 U.S.C. § 717f(d)).  NE Hub thus provides little insight on the question of whether PAEHB review of the REAE permits—issued pursuant to the Commonwealth's explicitly preserved authority under Section 717b(d)—is preempted.

accordance with Pennsylvania law, to file an administrative appeal to the PAEHB,

or they may file a collateral civil action in the Third Circuit Court of Appeals under

Section 717r(d)(1).  See Cole, 257 A.3d at 820-21.  Petitions for allowance of appeal

are pending, but the Cole decision in our view is a straightforward application, and

is the logical result, of Bordentown's preemption analysis.

At this preliminary stage, Transco has failed to persuade us the NGA strips

the PAEHB of its ability to review the REAE permits, for the simple reason that our

court of appeals' precedent does not say what Transco wants it to.  The Riverkeeper

decisions do not divest the PAEHB of jurisdiction; they define the limitations of the

*court of appeals'* jurisdiction.  And Bordentown states clearly what was unstated in

the Riverkeeper quintet: state administrative review may proceed unimpeded even

after the state permitting decision has technically ripened for purposes of judicial

review.  In other words, Section 717r(d)(1) does not mandate the filing of a civil

action in lieu of exhausting administrative remedies; it provides only that *if* a civil

action is filed, it must be filed with the Third Circuit.  See Bordentown, 903 F.3d

at 271-72.  We therefore conclude Transco has not established a likelihood of

success on the merits of its claim that the NGA preempts the pending PAEHB

appeal.

## B.    Irreparable Harm

A plaintiff seeking a temporary restraining order or preliminary injunction

must also establish irreparable harm.  Irreparable harm is an injury of such an

irreversible character that prospective judgment would be "inadequate" to make

the moving party whole.  See Anderson v. Davila, 125 F.3d 148, 163 (3d Cir. 1997);

<u>Instant Air Freight Co. v. C.F. Air Freight, Inc.</u>, 882 F.2d 797, 801 (3d Cir. 1989).

Mere risk of injury is not sufficient to meet this standard. Rather, the moving party

must establish that the harm is imminent and probable. <u>Anderson</u>, 125 F.3d at 164.

Harm that may be contained effectively only through immediate injunctive relief is

properly deemed "irreparable." <u>Instant Air Freight</u>, 882 F.2d at 801. Availability of

money damages will typically "preclude a finding of irreparable harm." <u>Id.</u> at 177

(citing <u>Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.</u>, 847 F.2d 100, 102 n.3 (3d

Cir. 1988)).

The required showings on irreparable harm and likelihood of success are

correlative: that is, the weaker a plaintiff's merits showing, the more is required in

the way of irreparable harm, and vice versa. <u>See</u> <u>Reilly</u>, 858 F.3d at 179 (quoting

<u>Hoosier Energy Rural Elec. Coop., Inc. v. John Hancock Life Ins. Co.</u>, 582 F.3d 721,

725 (7th Cir. 2009) (Easterbrook, J.)). This is particularly problematic for Transco,

as its irreparable harm argument is in lockstep with its argument on the merits:

Transco contends the harm *is* that, without an injunction, it will "be forced to

participate in onerous, time-consuming proceedings before the EHB . . . that are

contrary to the NGA, preempted by federal law[,] and which could undermine the

[REAE] Project." (<u>See</u> Doc. 10 at 24-25). Its principal irreparable harm argument

thus rises and falls with its merits argument, and we have already found Transco

has not made the requisite preliminary showing the PAEHB lacks jurisdiction to review the REAE permits.[10]

Transco's additional irreparable-harm assertions are likewise unavailing. Transco avers it will suffer financial injury if the PAEHB were to delay construction by staying the REAE permits. (See Doc. 10 at 27 (citing Doc. 8-2, Ex. C at 50-51, 56-57 ¶¶ 15-18, 34-38)).  To support this assertion, Transco cites a declaration of one of its project managers submitted in separate litigation in the United States Court of Appeals for the District of Columbia Circuit earlier this year. (See Doc. 8-2, Ex. C). That lawsuit involved a petition for review of FERC's certificate order under Section 717r(b), and the cited paragraphs of the declaration speak primarily to costs associated with delay of certain tree-felling activities. (See id. at 50-51, 56-57 ¶¶ 15-18, 34-38).  Even if we assume *arguendo* that all of those estimated costs would carry over to this case, the claimed harms are purely economic in nature and thus would be compensable by remedy at law.  See Instant Air Freight, 882 F.2d at 801 (citing Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp., 847 F.2d 100, 102 n.3 (3d Cir. 1988); *In re* Arthur Treacher's Franchise Litig., 689 F.2d 1137, 1145 (3d Cir. 1982)).

---

[10] Transco relies on NE Hub here as well, for its statement that "the need to participate in a state regulatory process in conflict with federal policy has been recognized as a hardship." (See Doc. 10 at 25 (quoting NE Hub, 239 F.3d at 346)). As a threshold matter, that observation assumes the state regulatory process is or may be preempted by federal law; when a lawful process is not preempted, being required to participate in it cannot be claimed as hardship.  In any event, Transco divorces the observation from its context.  The court in NE Hub was measuring ripeness—not irreparable harm.  The ripeness analysis tasked the court to consider the practical utility of the declaratory judgment sought, and one aspect of practical utility is "the hardship to the parties of withholding judgment." See NE Hub, 239 F.3d at 344-45 (citation omitted).  The decision does not establish a *per se* rule of irreparable harm in regulatory preemption cases.

As for Transco's second contention about delay, namely "the importance of placing the Project in service by the 2023-2024 heating season," Transco again points primarily to "financial consequences" and lost revenue, (see Doc. 8-2, Ex. C at 56-57 ¶ 35), in addition to speculating about the loss of shipper confidence it "may suffer" and the impact delay "may have" on Transco's reputation, (see id. ¶ 34). Particularly in light of the dubious merit of Transco's claims, we find Transco has not carried its burden of showing it will suffer irreparable harm if the PAEHB appeal is not enjoined.[11]

### C.   Remaining Factors

Transco has failed to demonstrate the first two "gateway" factors for preliminary injunctive relief.  See Reilly, 858 F.3d at 176, 179.  Accordingly, we need not address whether the EHB Appellants would suffer greater harm than that alleged by Transco if injunctive relief is granted, or whether the public interest favors the requested relief.  See id.

---

[11] PADEP cites a separate potential harm in its briefing, namely, a concern that absent "clear direction regarding the proper forum, there is a real risk that parties would appeal PADEP permitting actions on FERC regulated pipeline projects under the Natural Gas Act to the EHB, or the Third Circuit, or both."  (See Doc. 23 at 13 (citing Cole, 257 A.3d at 821)).  As we have noted, the court of appeals in Bordentown contemplated and expressed no concern with the possibility that there may be alternative forums—one administrative and one judicial—in which an aggrieved party may pursue its remedies.  See Bordentown, 903 F.3d at 271-72.

**V.**     **<u>Conclusion</u>**

Transco has not shown that the extraordinary remedy of a preliminary

injunction is warranted in this case.  <u>See</u> <u>Issa</u>, 847 F.3d at 131 (citing <u>Ferring</u>

<u>Pharm., Inc.</u>, 765 F.3d at 210).  Accordingly, we will deny Transco's motion.  An

appropriate order shall issue.


<u>/S/ C<span style="font-variant:small-caps">HRISTOPHER</span> C. C<span style="font-variant:small-caps">ONNER</span></u>
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:         June 5, 2023